IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

            Plaintiff,

   vs.                                    CIVIL NO.   11-1132 RB/LFG

BOK FINANCIAL CORPORATION
dba Bank of Albuquerque,

            Defendant.

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANT'S MOTION TO COMPEL DISCOVERY

THIS MATTER is before the Court on Defendant's[1] [hereinafter referred to as "BAQ"],

Motion to Compel Discovery Pursuant to its First Combined Discovery Requests." [Doc. 75]. The

Court considered the motion, EEOC's Response in opposition [Doc. 100], BAQ's Reply [Doc. 116],

and all exhibits to pleadings. Oral argument is not necessary. The Court grants the motion in part

and denies it in part, as explained below. In addition, the Court awards reasonable attorney fees to

BAQ.

### Background

EEOC brings this action alleging unlawful employment discrimination on behalf of three

individuals, Betty Brewer ("Brewer"), Yolanda Fernandez ("Fernandez"), and Elizabeth Morantes

---

[1] BOK Financial Corp. continues to argue that it is an improper party to the instant litigation and should be dismissed. [Doc. 75, n.1.] BOKF, National Association states that it was formerly Bank of Albuquerque, National Association. Defendant refers to itself in this briefing as Bank of Albuquerque or BAQ. The Court does not decide the issue of who the proper parties are but refers to Defendant in this opinion as BAQ.

("Morantes").[2]  In a motion to amend [Doc. 27], EEOC seeks to broaden the present lawsuit to

encompass an undefined "class of women."[3]

BAQ served interrogatories, document requests, and requests for admission relevant to the

parties' claims and defenses under Fed. R. Civ. P. 26. [Doc. 75, Ex. 1; Doc. 33.]  EEOC objected

and responded in part to the requests.  The parties met and conferred in attempts to resolve the

discovery disputes.[4]  BAQ asked EEOC to supplement its document production and/or answers to

interrogatories.  BAQ also sought to have EEOC withdraw objections to its written discovery

requests, but EEOC declined.  BAQ contends that EEOC's privilege log (or "<u>Vaughn</u> index") is

---

[2]The following summary of background information is taken from these or other pleadings and exhibits.  The factual summary is not necessarily comprised of undisputed facts but is provided for purposes of background.

Brewer was employed with BAQ from 1998 until November 2008.  Her most recent position was as a branch manager.  She injured herself while on a personal vacation in May 2008, and went on short-term, followed by long-term, disability.  She never returned to work following her injury.  Brewer did not pursue in-house remedies to resolve employment disputes and did not file any administrative charge or complaint with EEOC.  There never was administrative exhaustion on any complaint.

Fernandez was employed with BAQ from 2003 to 2008, and held the position of branch manager.  She filed a charge of discrimination against BAQ on May 7, 2008. [Doc. 75, Ex. 10.]  She was represented by counsel.  EEOC dismissed her charge in November 2009, and send Fernandez a right-to-sue letter on November 9, 2009.  After conferring with her attorney, she did not file suit within the 90 days, and believed her case was over.

Morantes, an employee of BAQ, was fired for allegedly misusing and manipulating the Bank's Sales Assurances Inventive policy.  She filed a claim of discrimination with EEOC on April 16, 2008. [Doc. 75, Ex. 8.]  EEOC accepted the charged and investigated this claims over a two-year period.  During the investigation, EEOC interviewed upwards of 15 witnesses and had personnel files of 29 employees.  EEOC interviewed BAQ's Senior Human Resource Manager and the Branch Manager where Morantes worked.  EEOC issued a "predetermination" of the charge in August 2009, and a "cause" determination in October 2009, which was subsequently withdrawn in November 2009.  A conciliation was conducted, but there was no resolution.

EEOC then filed suit on behalf of Brewer, Fernandez and Morantes on December 27, 2011, years after the alleged discriminatory conduct.

[3]The undersigned Magistrate Judge issued a Report and Recommendation [Doc. 76] proposing that the motion to amend be denied with respect to adding an undefined class of women.  EEOC objected [Doc. 99], BAQ filed a response in opposition to the objections [Doc. 120], and EEOC filed a reply [Doc. 138].

[4]The Court is not persuaded by EEOC's position that BAQ failed make good-faith efforts to resolve these discovery disputes prior to filing the motion to compel.

"riddled with undated and unidentified documents" and that EEOC has no authority to withhold some of the documents it claims are protected.  According to BAQ's reply, EEOC provided some supplementation.  However, BAQ contends that EEOC failed to properly provide all of the responsive information.  Thus, BAQ filed the present motion to compel.[5]

Because EEOC supplemented some of the discovery responses subsequent to BAQ filing the motion to compel, BAQ argues that it is entitled to its attorneys' fees and costs in pursuing its motion. [Doc. 116, at 4.]

**Discussion of Privileges Asserted by EEOC**

The Court first addresses general privileges raised by EEOC in response to various discovery requests.  Second, the Court analyzes specific discovery requests and other objections, along with additional specific requests for information.  To the extent that the Court addresses a specific discovery request that the parties already resolved, no further action need be taken.[6]

Unless otherwise noted, the Court overrules EEOC's objections to producing materials based on the attorney-client privilege as it relates to investigator D'Ontae Sylvertooth ("Sylvertooth"), work product doctrine, and the governmental deliberative privilege.  (*See* discussion *infra*.)

**A.    Attorney-Client Privilege and D'Ontae Sylvertooth**

Sylvertooth was the investigator relating to Morantes' charge of discrimination, from about 2008 through October 13, 2009, and also relating to Fernandez's charge of discrimination, in

---

[5]In its reply, BAQ notes that while EEOC produced some documents in response to the motion to compel, the EEOC's responses to discovery requests continue to be inadequate. [Doc. 116, at 2.]

[6]The parties' extensive briefing of this motion, along with many pages of exhibits, and the use of very small fonts in multiple tables made it difficult to ascertain which discovery disputes remain unresolved at this point.

approximately 2008-2010. [*See* Doc. 75, Ex. 12.]  Brewer did not file an administrative complaint, and, therefore, there was no investigation into possible complaints she had. [Doc. 100, at 16.]

It is undisputed that Sylvertooth was not EEOC's lawyer during the investigation of the two charging parties' complaints, and that he did not participate in any capacity as a lawyer and/or part of EEOC's legal staff until late July 2012.  [*See* Doc. 26].  Yet, when BAQ sought information concerning statements made by charging parties to Sylvertooth during the course of his investigations, EEOC refused to produce the requested information, purportedly relying, in part, on attorney-client privilege.

In its response to the motion, EEOC cites cases that stand for the proposition that the attorney-client privilege is long recognized so as to "encourage full and frank communication between attorneys and their clients  and thereby promote broader public interests in the observance of law and [the] administration of justice."  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981), and "the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys."  United States v. Jicarilla Apache Nation, 131 S. Ct. 2313, 2321 (2011) (citation omitted).

The Court agrees that these cases stand for the propositions cited.  Indeed, the attorney-client privilege allows a client to refuse to disclose and to prevent others from disclosing confidential communications made to facilitate the rendition of professional legal services to the client. Handgards, Inc. v. Johnson & Johnson, 413 F. Supp. 926, 929 (N.D. Cal. 1976); *see also* Discovery Proceedings in Federal Court, § 2801, at pp. 244-45 (3d ed. 1995).  However, the attorney-client privilege's "purpose is to encourage full and frank communications between *attorneys* and their clients."  Upjohn Co. , 449 U.S. at 389 (emphasis added).

The prerequisites for the assertion of attorney-client privilege are as follows.

4

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar of a court, or his subordinate and in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client without the presence of strangers for the purpose of securing primarily either an opinion on law or legal services or assistance in some legal proceeding, and not for the purpose of committing a crime or tort; and (4) the privilege has been claimed and not waived by the client.

Discovery Proceedings in Federal Court, § 28.02, at p. 245 (citations omitted).  *See, e.g.*, Fisher v. United States, 425 U.S. 391, 403 (1976); In re Qwest Commc'ns Int'l Inc., 450 F.3d 1179, 1185 (10th Cir.), *cert. denied,* 549 U.S. 1031 (2006); Blann v. Rogers, 2012 WL 4596180, *2 (D. Kan. Oct. 2, 2012) (unpublished) (noting that elements of attorney-client privilege are well established in the Tenth Circuit, that party opposing discovery must make "clear showing" that privilege applies; that privilege is strictly construed and narrowly applied; that privilege attaches "to shield from discovery those communications between a client and an attorney, made in confidence, under 'circumstances from which it may reasonably be assumed that the communication will remain in confidence.'") (citations omitted).

Here, EEOC asserts the privilege, but the assertion is without any discussion of the requisite elements.  First, EEOC makes no mention of a dispositive factor – during the investigative process, Sylvertooth was not an attorney and could not have been operating as such at that time.  Sylvertooth was an EEOC investigator and did not become an attorney until subsequent to completion of the investigations.  He did not enter an appearance as an attorney in this case until late July 2012. [Doc. 26.]  Thus, the communications made by the charging parties to Sylvertooth were not to a member of a bar of a court, but to an investigator.  The fact that Sylvertooth met the qualifications for bar

membership, subsequent to the investigations, does not serve to retroactively confer attorney-client privilege on investigations he conducted before becoming an attorney.

Next, the communications between the charging parties and Sylvertooth were not for the purpose of securing legal advice, an opinion, or assistance in a legal proceeding. As Sylvertooth was not an attorney, it would have been improper for him to give legal advice. Rather, it is likely the communications related to claims asserted by the women and/or statements and evidence related to the investigation of their charges and complaints, all of which are discoverable.[7]

In Discovery Proceedings in Federal Court, § 28.03, at p. 246, the authors write:

> The claim of attorney-client privilege will fail unless one party to the relationship is in fact functioning as an attorney. The possession of a law degree and admission to the bar, while required, are not sufficient to establish a person as an attorney for purposes of determining whether the privilege applies. For the privilege to exist, not only must the lawyer be functioning as an advisor, but the advice given must be predominantly legal, as opposed to business in nature.

(citations omitted). Under the circumstances of the EEOC's investigations into charges, Sylvertooth was not functioning as an attorney and could not have been providing legal advice.

In addition, even if the privilege applied, the privilege does not protect facts. "The privilege only protects against disclosure of communications. It does not protect disclosures of underlying facts by those who communicated with the attorney." Discovery Proceedings in Federal Court,

---

[7]EEOC provides somewhat inconsistent explanations concerning its relationship with the three women it represents. In its Complaint, EEOC asserts it is bringing this action on behalf of these women. [Doc. 1, ¶ 1]. ("This is an action under Title VII . . . to correct unlawful employment practices . . . and to provide appropriate relief to Elizabeth Morantes, Yolanda Fernandez and Betty Brewer . . . .") In subsequent proceedings, it states that it is not counsel for the women, but for the "public." For example, in its response for Request for Production No. 6, EEOC states, "that it is the only plaintiff in this case and did not file this litigation on behalf of any private citizen. Instead, the EEOC filed this litigation in its own name in the public interest." [Doc. 100-4, Ex. D, at 7]. At times, when it is convenient for EEOC to assert that it is representing these women, it does so; but, at other times, it seeks to avoid the conclusion that it is serving as counsel for the three individuals.

§28.02, at p. 245.  To the extent BAQ seeks to obtain the who, what, when, where or why, no privilege exists to protect EEOC from disclosing such information.  BAQ is entitled to the facts, even in the face of claimed privilege.  Id.

The Court rejects EEOC's claim of attorney-client privilege, as it is inapplicable to any communication between Sylvertooth as an investigator and the women EEOC purports to represent and others involved in its investigation.  Thus, to the extent that EEOC raises this privilege in relation to Sylvertooth's role as investigator in response to the discovery requests addressed more specifically below, the Court overrules the objection.

**B.**    **Work Product Doctrine**

EEOC improperly conflates the attorney-client privilege with attorney work product.  The work product doctrine provides an independent source of immunity from discovery.  "The doctrine is aimed at protecting the effectiveness of a lawyer's trial preparation and assures that the lawyer's private file will not be opened to intrusion by opposing counsel in the absence of special circumstances."  Discovery Proceedings in Federal Court, § 26.01, at p. 206.

The United States Supreme Court set out the framework for the work product doctrine in the seminal case, Hickman v. Taylor, 329 U.S. 495 (1947).  There, the Court described the work product doctrine as follows:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his client.  In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.  That is the historical and necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their

7

clients' interests.  This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways– aptly though roughly termed by the Circuit Court of Appeals in this case [] as the 'Work product of the lawyer.  Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten.  An attorney's thoughts, heretofore inviolate, would not be his own.  Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial.  The effect on the legal profession would be demoralizing.  And the interests of the client and the cause of justice would be poorly served.

Id., 329 U.S. 495 at 510-511.

Similar to the attorney-client privilege, "[t]he party asserting work product privilege has the burden of showing the applicability of the doctrine."  In re Grand Jury Proceedings, 616 F.3d 1172, 1184-85 (10th Cir. 2010).  As the party asserting work product protection, EEOC must show that: "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."  S.E.C. v. McNaul, 271 F.R.D. 661, 665 (D. Kan. 2010).  *See also* Fed. R. Civ. P. 26(b)(3) (requiring the party asserting the work-product doctrine to show that the documents or materials were prepared in anticipation of litigation by or for a party or that party's representative), *rev. denied,* 277 F.R.D. 439 (D. Kan. 2011).

EEOC is hard-pressed to convince the Court that at the time it opens any investigation on a claim of discrimination, it is conducting its interviews "in anticipation of litigation or for trial."  Indeed, at that stage of the proceeding, EEOC is merely seeking to ascertain the facts relevant to a charge and to evaluate the pros and cons of bringing potential charges of discrimination.  The documents would have been created regardless of whether EEOC anticipated the cases would be litigated.

8

Stated differently, "[i]t is not enough to trigger work product protection that the *subject matter* of a document relates to a subject that might conceivably be litigated." United States v. Textron Inc. & Subsidiaries, 577 F.3d 21, 29 (1st Cir. 2009), *cert. denied,* 130 S.Ct. 3320 (2010) (emphasis in original).  "It is only work done in anticipation of or for trial that is protected." Id. at 30.  *See* U.S. E.E.O.C. v. Hotspur Resorts Nevada, Ltd., 2012 WL 2415541, *2 n.1 (D. Nev. June 26, 2012) (unpublished) ("[d]uring initial investigations the EEOC is a neutral third party, thus the investigations are not conducted in anticipation of litigation."  "Accordingly, the work-product doctrine in Fed. R. Civ. P. 26(b)(3) does not apply to documents that were prepared during this phase.") (internal citations omitted). *See also* Johnson v. Bd. of Pensions of the Evangelical Luthern Church, 2012 WL 5985600, *5 (D. Minn. Sep. 5, 2012) (unpublished) (noting that, ultimately, the documents at issue would have been created regardless of whether litigation was anticipated because they evaluated the pros and cons of potential changes to a plan's benefits), *aff'd,* 2012 WL 5985607 (D. Minn. 2012).

To accept EEOC's contention would result in the exception swallowing the rule.  EEOC could protect everything and anything it does at any stage of the proceedings under the claim that it was preparing for litigation.  EEOC neither intends to litigate every complaint of discrimination it receives, nor does it do so.  It makes both a quantitative and a qualitative decision on which cases should receive a cause determination and which cases it should prosecute "on behalf of the public."  To conclude otherwise would protect, by way of unintended privilege, everything EEOC does in its processing of administrative complaints.  Such an unreasonable result defies logic.

In addition, the work product privilege exists for a very special and unique purpose.

> Fed. R. Civ. P. 26(b)(3) specifically requires the court to protect against disclosure of mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party

9

> concerning the litigation when ordering discovery of materials prepared in anticipation of litigation or for trial as to which the required showing has been made.

*See* Fed. R. Civ. P. Advisory Comments to Committee Note; *see also* <u>Discovery Proceedings</u> <u>Handbook</u>, § 26.07.  BAQ does not request the mental impressions, conclusions, opinions or legal theories of counsel, or to the extent it does, such documents would be privileged or protected.  Thus, to the extent that EEOC raises work product in protect its investigative information against disclosure, in response to specific discovery requests, the Court overrules that objection.

**C.**    **<u>Governmental Deliberative Privilege</u>**

EEOC also asserts that the governmental deliberative process privilege shields its internal workings from outside scrutiny even after litigation ensures. [Doc. 100, at 23.] EEOC argues that the governmental deliberative process "forecloses questioning about the government's pre-determination 'deliberative' and 'decision-making processes.'" [<u>Id.</u>]

In a companion ruling in this case, the Court acknowledged the existence of a governmental immunity privilege, but rejected it because EEOC failed to properly invoke the privilege by filing a declaration from the Chair of the Commission.  [Doc. 114].[8]  EEOC argues that such a declaration is not required because there is no specific document or inquiry at issue. [Doc. 100, at 23.] The Court is not persuaded.  Indeed, EEOC lists documents on a privilege log that it withheld under this privilege. [Doc. 100, Ex. E.]

The Court joins New Mexico Magistrate Judge William Lynch in <u>EEOC v. Fisher Sand &</u> <u>Gravel Co.</u>, CIV 09-309 WFD/WPL (D.N.M. Oct. 26, 2009) [Doc. 34] in concluding that EEOC did not file the appropriate declaration for the privilege.  Consequently, the Court rejects EEOC's

---

[8]The Court's analysis in Doc. 114, pp. 4-8, are incorporated herein with the same conclusion.

request that information be protected by the governmental deliberative privilege. Thus, to the extent that EEOC raises the deliberative process privilege in response to any of the discovery requests, addressed below, the Court overrules the objection.

**D.      Specific Interrogatories**[9]

In Interrogatory No. 1, BAQ sought the identity of each person answering the interrogatories. EEOC asserted various objections and then supplied the names of various individuals who answered the interrogatories. [Doc. 75, Ex. 2.]  This process of objecting and then answering leaves the reader and the Court with the uncertainty of whether information is being withheld based on the objection or being provided based on the response. Indeed, EEOC's initial response to Interrogatory No. 1 is virtually incomprehensible, notwithstanding EEOC's accusation that BAQ's interrogatory was unreasonable or incomprehensible.

EEOC's blanket objections serve no useful purpose. Moreover, blanket objections like these are criticized by courts. *See, e.g.*, Mancia v. Mayflower Textile Servs., 253 F.R.D. 354, 358 (D. Md. 2008) ("Rule 26(a) was enacted over twenty-five years ago to bring an end to the equally abusive practice of objecting to discovery requests reflexibly–but not reflectively–and without a factual basis.")

In its response to the motion to compel [Doc. 100, at 9], EEOC purports to supplement earlier responses by saying, for example, "Attorney Sylvertooth is the individual at EEOC who

---

[9]Again, the Court attempts to address the discovery requests that remain in dispute. In doing so, it refers to the pleadings and to BAQ's Ex. 6 [Doc. 75], setting forth a summary of requests and responses. However, it is not clear based on other tables within the pleadings what requests still are in dispute. For example, Ex. 6 discusses Interrogatory No. 1 and notes that EEOC refused to identify person at EEOC responding to discovery requests, but BAQ's tables in the motion and reply do not specifically discuss Interrogatory No. 1. To the extent that some of these discovery disputes already are resolved to the parties' satisfaction, no further action need be taken. If the matters are still in dispute, even after these rulings, the parties may specifically raise such issues before the Court in a clear and succinct pleading.

responded to the discovery."  It is unclear why EEOC initially did not respond with this answer.
Moreover, while this response may be accurate, it is not in keeping with a party's responsibilities
under Rule 33(b)(1)(3) in that this supplemental answer made in a response brief is not under oath.
Thus, the supplemented answer is insufficient until properly verified.  The Court determines that
EEOC improperly failed to fully respond to Interrogatory No. 1 and requires a full, complete, and
comprehensible response within ten days, including proper verification.

 In Interrogatory No. 2, BAQ asks EEOC as follows:

> Identify by EEOC charge number and the name of the person filing
> the EEOC charge, the EEOC charge upon which you are respectively
> relying to establish the jurisdictional pre-requisite and/or the required
> exhaustion of administrative remedies and/or the timely filing of suit
> on behalf of each individual.  A simple table has been provided for
> your convenience.

 The sample table contains a simple matrix, with the first column showing the individual on
whose behalf the instant litigation was filed.  The second column has EEOC's charge number upon
which the respective individual is relying, and the third is the name of the person filing the
respective charge.  Under the three headings are the names of the three individuals, Betty Brewer,
Yolanda Fernandez and Elizabeth Morantes. [Doc. 75, Ex. 2, at 6.]

 EEOC objected to the Interrogatory "as being incomprehensible."  [Doc. 100, at 6].  It
further objected, contending that "you" required individual responses from Brewer, Fernandez or
Morantes, and that EEOC is the only plaintiff.  After stating those objections, EEOC stated:

> Ms. Brewer's, Ms. Fernandez's and Ms. Morantes' allegations of
> discrimination were properly within the scope of EEOC's
> investigation, reasonable cause finding, and conciliation in respect to
> Charges of Discrimination, number 543-2008-00760, filed by
> Elizabeth Morantes and 543-2008-00890 filed by Yolanda
> Fernandez.

[Doc. 75, Ex. 2, at 6-7.]

EEOC partially responded by identifying the charge numbers for Fernandez and Morantes, but failed to make any response as to Brewer. This is improper, and the Court requires EEOC to fully answer Interrogatory No. 2 within ten days.

Interrogatory No. 3 requires EEOC to identify the employer against whom it is seeking recovery by way of time periods. As before, it provided a matrix with three columns identifying the individual on whose behalf the litigation was filed in column one, the name of the employer during the applicable time period, and the dates of employment. Because claims of discrimination under Title VII are only against employers, Haynes v. Williams, 88 F.3d 898 (10th Cir. 1996), it is appropriate for BAQ to determine if EEOC sued the proper party.[10]

EEOC contends that this Interrogatory is "vague, ambiguous and duplicative." [Doc. 100, at 7]. The Court examined the Interrogatory and finds nothing vague or ambiguous. EEOC also protests that it is "unclear exactly what the Defendant is asking . . . ." [Id.]. The Court disagrees. It is clear that BAQ wants to know who the employer was at various relevant times, since there are three separate individuals on whose behalf the claims are being prosecuted, they worked at various times, and the employers changed over those respective times.

EEOC cannot simply assert that the women on whose behalf the case was filed worked for one or the other of the banking entities. BAQ is entitled to have EEOC identify which individual worked with which bank and disclose when that employer/employee relationship occurred.

The Court rejects EEOC's "vague, ambiguous and duplicative" objections. They do nothing more than establish unnecessary roadblocks in the ascertainment of facts. EEOC is compelled to fully and correctly answer this Interrogatory within ten days.

---

[10]Indeed, in numerous pleadings, BAQ alerted EEOC that it improperly named certain Defendants, and requested that the pleadings be amended.

13

In Interrogatory Nos. 7-9, BAQ seeks information concerning medical expenses. For example, Interrogatory No. 7 states:

> Identify each and every medical bill-invoice, including but not limited to: medical provider name/entity, date of service, charges for service, insurance coverage, etc., you have received for medical treatment you have sought during the respective applicable time period. A sample table has been provided for your convenience.

As before, BAQ provides a simple matrix with four columns: (a) the medical provider/entity, (2) date of service, (3) charges for service, and (4) whether there is insurance coverage. [Doc. 75, Ex. 2, at 15.] Interrogatory No. 8 asks EEOC to identify any and all sources and method of payment for each medical bill/invoice listed in response to Interrogatory No. 7. Interrogatory No. 9 asks EEOC to identify any and all proof of payment for each of the medical bills/invoices listed in the response to Interrogatory No. 7. [Doc. 75, Ex. 2, at 16-17.]

EEOC submits nearly a half page of objections to Interrogatory Nos. 7 and 8. [Doc. 75, Ex. 2, at 15-17.] First, it asserts that it provided medical releases to BAQ, and that the medical expenses are "irrelevant and not reasonably calculated to lead to admissible evidence" because "EEOC is not requesting payment for out-of-pocket medical expenses" for any aggrieved individual. The argument is belied by the pleadings. It is clear that EEOC seeks medical expenses. For example, EEOC requests the "Employer to make whole Ms. Morantes, Ms. Fernandez, and Ms. Brewer, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraph 7 and 11 above, including job search expenses, *medical expenses*, and other pecuniary losses, in amounts to be determined at trial." [Doc. 1, at 6, ¶ D] [emphasis added].

Moreover, while EEOC filed a motion to amend its Complaint, its proposed First Amended Complaint requests the same relief, including "medical expenses." [*See* Doc. 27-1, at 12, ¶ D].

14

Thus, after specifically invoking the Court's jurisdiction and requesting compensation, including medical expenses on behalf of the three women, EEOC's response is nonsensical where it says, "[t]hese medical expenses are irrelevant" and that "EEOC is not requesting payment for out-of-pocket medical expenses."

EEOC also argues that the "aggrieved women should not have to spend time sorting through years of medical records, in order to produce to Defendants the very same records" Defendant obtained through medical providers. [Doc. 100, at 10.] First, it has not been established that the women are aggrieved. That is an allegation at this stage of the litigation. Second, it does not appear that the Interrogatory requires the women to sort through "years of medical records" when it is limited to the applicable time period.

EEOC wrongfully objected to these Interrogatories, and the objections are specious and in bad faith. The requested information about medical expenses is relevant, not privileged and discoverable. Thus, the Court requires full and complete responses to Interrogatory Nos. 7, 8 and 9 within ten days.

While EEOC must produce medical records in its possession or control, it is not required to obtain those records from healthcare providers. D.N.M. LR-Civ. 26(d)(3). However, if not done already, EEOC must disclose the healthcare providers by name, address, and telephone number and provide HIPAA compliant physical/psychological releases for each of the three women. Id.

In Interrogatory No. 11, BAQ asks EEOC to:

> Identify and describe any and all damages pertaining to benefits that you plainly lost as a result of the termination of your employment, the manner in which such damages have been calculated and the specific basis and support for the damages, and identify all documents relating to the alleged damages.

15

EEOC objected, claiming that the information is privileged under attorney-client communications or work product, and that BAQ is asking EEOC to "prove its entire case in this interrogatory," and, thus, the request is overly broad.  These objections are specious.  EEOC is making substantial claims for damages as noted in its complaint and in its response to the interrogatory.  For example, in its *ad damnum* clause, EEOC specifically requests substantial damages on behalf of each of the three women.  EEOC asks the Court to order Defendant "to make whole Ms. Morantes and Ms. Fernandez by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial . . . , including reinstatement or front pay in lieu of reinstatement."  [Doc. 1, at 6, ¶ C].  The Court earlier quoted parts of EEOC's Complaint showing some of the losses claimed.  [Doc. 1, at 6, ¶ D].  So, too, in the proposed First Amended Complaint, EEOC seeks the same categories of damages that include not only lost pay, but all "other pecuniary loses."

In response to the Interrogatory, EEOC specified back pay for Morantes and Fernandez, including damages for loss of benefits.  EEOC estimated Fernandez's back pay as $161,628.51, a figure that includes mitigated earnings of $95,988.06, and loss of benefits in the amount of $6,985. and $8,873.29 in interest. [Doc. 75, at 19.] EEOC estimated Morantes' back pay at $148,825.81, including mitigated earnings of $174,947.09, benefits in the amount of $6,985.00, and $13,890.20 in interest.  EEOC also argues that because that BAQ's alleged discriminatory conduct, including hostile work environment, caused loss of income, benefits, training, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation for all three women.  EEOC further alleges that BAQ's actions were made with malice or reckless indifference.  Thus, EEOC states it will seek the "maximum amount of compensatory, punitive and liquidated damages . . . ." [Doc. 75, at 20.]

16

As for the identification of documents supporting such claimed damages, EEOC directs BAQ "to its own compensation records . . . ." [Id.] This is insufficient.

As EEOC makes claims for financial losses in an amount to be determined at trial, it is appropriate for BAQ to obtain this information in advance of trial.  BAQ is entitled to know the evidence supporting or refuting EEOC's damage claims.  Moreover, BAQ should not have had to ask for this information.  Rule 26(a)(1)(A)(iii) mandates that a plaintiff automatically submit its damage calculations showing how it arrived at whatever figure it seeks or, alternatively, demonstrate the categories of damages.  Each party also must produce the non-privileged documents supporting that computation, including documents bearing on the nature and extent of injuries suffered.  Fed. R. Civ. P. 26(a)(1)(A)(iii).  Thus, EEOC should have automatically provided this information to BAQ.

It is mandatory that EEOC supply the requested information, to the extent that it failed to completely do so already.  Moreover, EEOC is not being asked to "prove its entire case."  BAQ asks for the evidence that supports the damage claims EEOC made.  The Court overrules EEOC's objections and directs it to fully respond to Interrogatory No. 11 within ten days and to produce the related documentation and calculations as part of its mandatory disclosures.

In Interrogatory No. 12, BAQ asks EEOC to identify each and every employee of the bank who, after Morantes left the employ of Bank of Albuquerque, reviewed a Bank of Albuquerque client account and conveyed information regarding the client account.  Interrogatory No. 13 asks EEOC to identify each employee of BAQ, who conveyed information to Morantes regarding another BAQ employee after Morantes left the employ of BAQ.

EEOC objected, contending that the Interrogatory is overly broad and that EEOC doesn't know what is meant by "Bank of Albuquerque client account."  It is clear BAQ seeks to obtain

information relevant to one of its defenses.  BAQ claims that after Morantes left the bank's employ, she contacted someone at the bank to research and provide other private bank client information to her.  That information, purportedly, was made available to EEOC.

Notwithstanding its objections, EEOC responded to Interrogatory No. 12, by identifying the names of three individuals who "provided information to Ms. Morantes." [Doc. 75, Ex. 2, at 21-22.] If these are three individuals who provided Morantes with confidential bank-client account information after Morantes was not employed by BAQ, then EEOC answered No. 12.  If not, EEOC is directed to supply the complete and accurate answers to Interrogatory No. 12.

In response to No. 13, EEOC eventually supplied the names five individuals who provided "information to Morantes." [Doc. 75, at 21.] If these are the individuals who provided Morantes with information about another employee, EEOC answered No. 13.  If not, EEOC is directed to supply complete and accurate answers to No. 13.  Thus, the Court overrules EEOC's objections and requires full responses within ten days.

Interrogatory No. 14 requires comparator information.  EEOC contends that each of the charging parties was treated differently than similarly situated, younger and male employees, but EEOC declined to identify the individuals who stand as comparators.  To assist the EEOC in providing information, BAQ again provided a straight forward matrix containing six columns.  The first column requires identification of the comparator; the second column is the individual upon whose behalf the instant litigation was filed to whom the comparator is being compaired; the third requires the position of the comparator at the time; the fourth requires the date of the act or omission by the comparator; the fifth requires the act or omission by the comparator; and the last requires a description of the discipline EEOC believes the comparator should have received.  Without such information, BAQ is left to guess as to who is being used as a comparator.

Again, EEOC contends that the "long and meandering" Interrogatory is "completely incomprehensible and unintelligible." [Doc. 75, Ex. 2, at 22.]  The Court had no difficulty understanding the matrix and questions, and does not find that the question is unintelligible.  Rather, EEOC may not wish to disclose the individuals it is using to compare to the women on whose behalf the action is being prosecuted.  BAQ argues that EEOC does not want to disclose this information because EEOC has no similarly situated comparator.

The federal rules contemplate that parties are provided broad discovery and learn, in advance of trial, the existence of evidence relevant to the parties' claims and defenses.  Federal discovery is designed to "make a trial less a game of blind man's buff [sic] and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Procter & Gamble, Co., 356 U.S. 677, 682 (1958).

In addition, the Court observes that this and several following interrogatories are similar to "contention interrogatories."

> Contention interrogatories ask a party:  to state what it contends; to state whether it makes a specified contention; to state all facts upon which it bases its contention; to take a position and explain or defend that position with respect t how the law applies to facts; or to state the legal or theoretical basis for a contention.

Discovery Proceedings in Federal Court, 16.04, at p. 283 (citations omitted).  The purpose of contention interrogatories is to narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut and answer parties' position. *See, e.g.,* Riley v. U.S., 2012 WL 1231830, *6 (D. Kan. Apr. 12, 2012) (unpublished) ("contention interrogatories that call for the application of law to fact 'can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery.'") (internal citation omitted); DIRECTV, Inc. v. Pallesen, 2005 WL

19

1176124, *4 (D. Kan. May 12, 2005) (unpublished) (purpose of contention interrogatories is to determine the proof required to rebut the respondent's position.).

Moreover, Rule 33(a)(2) explicitly states that an interrogatory is not objectionable because it seeks an opinion or contention that relates to facts or the application of law to facts.  It is appropriate with the use of these interrogatories to require EEOC to produce information upon which it bases it contentions.  *See* Fed. R. Civ. P. 33, Advisory Committee Notes (1970 amendments).  With respect to contention-style interrogatories, the question is not whether the respondent will answer them, but when they must answer them.  Kartman v. State Farm Mut. Auto. Ins. Co., 247 F.R.D. 561, 566 (S.D. Ind. 2007).  In other words, courts sometimes wait until much or all discovery has been completed before requiring responses to contention interrogatories.  Huthnance v. Dist. of Columbia, 255 F.R.D. 297, 298, n.2 (D.D.C. 2008).  Here, discovery is closed.  Therefore, contention interrogatories should be answered.

To the extent that EEOC claims the information sought is protected by a privilege, the Court disagrees.  In the complaint, EEOC specifically alleged that younger and male employees were treated more favorable than the three individuals. [Doc. 1.]  If there is evidence demonstrating that the women on whose behalf the suit is filed were treated differently than similarly situated males or younger employees, it is incumbent on EEOC to produce the evidence upon which it relies.

Further, EEOC feigns ignorance by saying it is without a complete list of all bank employees and yet, EEOC listed the names, dates of birth and discipline for infractions given to various males.

It is unclear, however, if these are comparators.[11]  If a charging party asserts that a particular individual was given preferential treatment, the EEOC must identify the comparator, how the treatment given was preferential, and how these positions were comparable.  EEOC may not assert a broad charge and then deny its opponent the evidence to support or refute the charge.  With discovery having closed, EEOC either has the evidence to support its claims or doesn't.  If it has the evidence, it is compelled to disclose it.  If it doesn't have the evidence, it is compelled to dismiss its claims.

The Court overrules EEOC's objections and requires full and complete responses to Interrogatory No. 14 within ten days.  If the 12 persons listed are the comparators EEOC intends to rely on, EEOC must disclose how or why those individuals are similarly situated to the three women on whose behalf the lawsuit is prosecuted.

Interrogatory No. 15 is a simple, one-sentence request.  "Set forth in detail each and every reason why you believe Fernandez should recover damages for time periods after Fernandez ceased working after December 2009."  EEOC contends the Interrogatory is overly broad and burdensome, and if EEOC is required to "articulate the specific factual basis for its damages," it is being compelled to "prove its entire case in this interrogatory." [Doc. 75, Ex. 2, at 24.] EEOC also argues that the request, on its face, improperly asks EEOC to provide its attorneys' analysis or theories for seeking back pay for Fernandez after a certain date, and that no further response can be provided without violating the work produce doctrine. [Doc. 100, at 13.]

---

[11]The Court also observes that attached to a different pleading is a letter, dated January 22, 2009, in which Defendant's human resources' officer wrote Sylvertooth stating she was producing a "list of employees in similar positions as Ms. Morantes who received counseling for sales violations and corresponding counseling documentation with Gender, Birth date and Address for non managers, as well as other lists of employees in response to requests from EEOC. [Doc. 32, Ex. 7.] Thus, it appears EEOC may have had some of the alleged comparator information to the extent it exists.

The Court overrules the objections.  Any work product or attorney-client privileged materials should be explicitly described in a privilege log.  Otherwise, as noted above, this is a proper contention interrogatory authorized by Rule 33.  EEOC seeks substantial damages.  Moreover, EEOC demanded an award of damages in time periods after Fernandez ceased working in December 2009.  Each woman is obligated to mitigate her damages.  Thus, it is proper for EEOC to explain why it believes those damages are appropriate and to provide the calculations for such damages.

The Court directs EEOC to fully respond to Interrogatory No. 15 within 10 days.

Interrogatory No. 16 asks EEOC to identify prior cases in which Brewer, Fernandez and Morantes testified or intend to testify.  EEOC objects, saying that the request is overly broad in that there is no time limit and that it is confused over the phrase "intends to give" and doesn't know what BAQ means when it asks for the "substance of interview, deposition, and/or testimony." [Doc. 75, Ex. 2, at 25.] EEOC provided some information concerning Brewer although Brewer did not recall the number of the case in which she was deposed.

The Court sustains the objection in part and overrules it in part.  The Court will require disclosure of prior civil or criminal cases in which the three women have testified or are being asked to testify, to the extent any such information was not already disclosed.  Disclosure of the caption, the court and the case number, as well as the substance, at least in general terms, of the testimony in prior or proposed depositions, is required.  The Court will impose a three-year limit for prior cases and, if put on notice of proposed depositions or trials in the next two years, will require those disclosures as well.

The Court further observes that in the context of employment discrimination cases, courts have held that discovery of information before and after the liability period may be relevant. Horizon Holdings, LLC v. Genmar Holdings, Inc., 209 F.R.D. 208, 212 (D. Kan. 2002); *see also*

22

James v. Newspaper Agency Corp., 591 F.2d 579, 582 (10th Cir. 1979) (four years prior to period of liability is reasonable); EEOC v. Kansas City S. R.R., 195 F.R.D. 678, 679-680 (D. Kan. 2000) (three years prior to period of liability, one year after period is reasonable); Lyoch v. Anheuser-Busch, 164 F.R.D. 62, 67 (D. Mo. 1995) (four years prior to liability is reasonable). EEOC must provide the information in response to Interrogatory No. 16 within ten days.

In Interrogatory No. 17, BAQ asks EEOC for a detailed explanation of those Requests for Admission it denied or partially denied. EEOC objects, saying that it already responded to the Requests for Admission. The Court finds EEOC's responses insufficient and overrules the objections. A request for admission is not a discovery device. Discovery Proceedings in Federal Court, § 19.02, at 355. A request for admission is designed to reduce trial time rather than to accomplish discovery. Id. (citations omitted). See, e.g., Am. Charities for Reasonable Fundraising Regulation, Inc. v. Gundersen, 2011 WL 652477, *3-4 (D. Utah Feb. 15, 2011) (unpublished) (Rule 36 requests for admission are not intended to elicit discovery information; rather, a party has other tools, e.g., interrogatories, to elicit facts or obtain information).

The Advisory Committee Commentaries to Rule 36 make clear that the purpose of a request is to facilitate proof with respect to issues that cannot be eliminated from the case, and, secondly, to narrow the issues by eliminating those that can be eliminated. Here, to the extent EEOC denied the request for admission, BAQ is entitled to ask why, by way of separate interrogatory. Thus, the Court requires EEOC to fully respond to Interrogatory No. 17 within ten days.

E.      **Requests for Admission**

BAQ submitted a number of Requests for Admission, of which, answers to four appear to be in dispute. [Doc. 75, Ex. 6, at 3-4.] When a request is made, the answering party should admit

or deny the request, or explain why it cannot answer.  In its responses to Requests for Admission, EEOC parses the question and answers questions that were not asked.

For example, In Request for Admission No. 1, BAQ asks EEOC to admit that the Bank of Albuquerque, National Association was the employer during the time of the employment that is the subject of the litigation.

This is a straight-forward request for EEOC to either admit or deny, or explain why it cannot do either.  Instead, EEOC denied the Request and goes on to answer questions that were not asked, including identifying other employees who were employed by BOK Financial. [Doc. 75, Ex. 2, at 43.]

So, too, with Request for Admission No. 9, that states, "Admit that after Morantes left the employ of Bank of Albuquerque, Morantes had Bank of Albuquerque employee(s) looked [sic] up information regarding a client account on behalf of Morantes."  Rather than admitting, denying or explaining why it could do neither, EEOC evades the question that is asked and, instead, answers some other question.  For example, EEOC first denies the request, then states Morantes was no longer employed with any of Defendant's entities after April 10, 2008, and that because she had no supervisory authority over any person with those entities after April 10, 2008, she was without authority to "mandate"that  any employee looking up client information for Morantes.  [Doc. 75, Ex. 2, at 45-46.]

This is an improper response to a Request for Admission.  BAQ never asked if Morantes had authority to "require, mandate or authorize any Bank of Albuquerque employee to look up" information.  Rather, the question was direct.  Did Morantes request any bank employee to obtain bank client information after April 10, 2008?  EEOC is not permitted to only answer questions it chooses and avoid those it does not want to answer.

24

The Court determines that EEOC must either admit or deny, or else explain why it cannot do either as to Request for Admission Nos. 1 and 9.  There is no need to answer questions not asked or to explain those it has admitted or denied in response to the Request for Admission.  An explanation is only necessary when a party states it cannot either admit or deny.  *See* Fed. R. Civ. P. 36 (if matter is not admitted, answer must specifically deny it or state in detail why answering party cannot truthfully admit or deny).  However, a party can still use interrogatories to inquire into the bases for denial of requests for admissions, as BAQ did here.  With respect to Request for Admission Nos. 5 and 8,[12] if they are resolved, no further action need be taken.

**F.     Requests for Production**

BAQ also served requests for production on EEOC, a number of which were in dispute at the time BAQ filed the motion to compel, including Nos. 1-11, 14-25. [Doc. 75, Ex. 6.] According to the table [Ex. 6] attached to BAQ's reply, some or all of Request for Production Nos. 4-6, 8-11, 14-15, 17-18, 20-21, 23-25 remain in dispute.

EEOC asserts that BAQ's Exhibit 6 appears to object to almost every response to the document requests and that BAQ "capsulizes its arguments into eight discrete arguments that do not necessarily refer to any particular request for production and are often repetitive and non-inclusive." [Doc. 100, at 15.] The Court agrees that the table and reply addressing what information should have been produced are confusing.

The Court attempts to sort out which document requests BAQ contends were not fully answered and what other types of information BAQ argues should have been produced.  But, it is

_____

[12]The Court does not find these Requests for Admission included in the table [Ex. 6] attached to BAQ's reply [Doc. 116], that reflects documents or information that EEOC purportedly continues to withhold.

not clear whether some of the information addressed in BAQ's reply, e.g., the Luttrell emails, were the subject of a specific document request, something the parties conferred about in a deposition, or documents listed in a privilege log.

The Court attempts to address each dispute below.

Request for Production No. 4 asks for documents containing and/or regarding communications between EEOC personnel and each charging party. EEOC objected on grounds that the request is vague, ambiguous, overly broad, and unduly burdensome. It argues that certain "omnibus" words are over broad, *e.g.,* "containing," "regarding," and "pertaining." [Doc. 75, Ex. 2, at 28-29.] EEOC also contends that some of the requested documents are protected under an attorney-client privilege and others are confidential as they relate to conciliation efforts. (*See* discussion *infra* regarding conciliation materials). EEOC again is inconsistent in stating who it represents in this matter. In response to this document request, EEOC states that it "did not file this litigation on behalf of any individual." [Doc. 75, Ex. 2, at 29.] EEOC agreed to produce some documents, but BAQ argues that not all responsive documents were produced.

The Court overrules the objections in part and sustains them in part. Conciliation materials need not be produced as is discussed below. However, if EEOC withheld documents based on attorney-client privilege or another privilege that the Court rejected in its discussion *supra*, those documents must be produced. The Court directs EEOC to produce unprivileged communications, not already produced, between its personnel and the charging parties within ten days.

Request for Production No. 5 asks EEOC to produce all documents containing and/or regarding communications between EEOC personnel and counsel for each charging party upon whose behalf EEOC filed this action. EEOC objects on grounds of attorney-client privilege between EEOC counsel and any privately represented claimant. EEOC argues that the request seeks mental

impressions of EEOC counsel and again, that Rule of Evidence 408 protects conciliation documents against disclosure.

Subject to the objections, EEOC refers BAQ to non-privileged and non-confidential documents produced in response to Document Request No. 1 as well as any documents obtained from the claimants that do not fall within the objections.  BAQ contends that not all documents in response to No. 5 were produced.

The Court rejected the claim of attorney-client privilege as to communications between investigator Sylvertooth and the charging parties.  (*See* discussion *supra*.)  Therefore, all of those communications must be produced within ten days.  EEOC must produce all other non-privileged communications, and if some are withheld under a privilege, a revised Vaughn index should be provided to BAQ with the required specificity to determine if the privilege is appropriate.  If the privilege log already included the documents being withheld, EEOC should identify the privilege log and the documents at issue.

Request for Production No. 6 asks for documents containing or regarding communications between or among the charging parties themselves.  EEOC states it is the only plaintiff in this case and that it filed the litigation in its own name in the public interest. [Doc. 75, Ex. 2, at 30.] It repeats many of the same objections set out above, even if they do not pertain to this specific request. EEOC also argues that it is "unreasonable to expect the EEOC to track down every document that could include two or more of the named claimants' names."  EEOC suggests BAQ review its own records to find these documents.  Subject to the objections, EEOC contends there are no responsive documents of which it is aware.  BAQ continues to argue that the document production is incomplete in response to No. 6.

The Court determines that it is not unreasonable for EEOC to produce documents in its possession and control, should they exist, concerning communications between or among the three women on whose behalf the lawsuit is being prosecuted. The Court overrules the objections and directs EEOC to produce responsive documents within ten days.

Request for Production Nos. 8 and 9 are related. They ask EEOC to produce all documents and communications that evidence, support, or pertain to the "name of each Individual's employer since the Individual left the employ of Bank of Albuquerque, including but not limited to check stubs, account statements, tax forms such as 1099's, W-2's, and the like." [Doc. 75, Ex. 2, at 31.] No. 9 asks for the any similar documents pertaining to each charging party's source of income to the extent it was not the subject of No. 8.

EEOC objects to the broad language used in the request and states it has no duty to decipher the meaning of phrases like "in any way," etc. To the extent BAQ seeks documents used during the conciliation efforts, EEOC objects on grounds of confidentiality. [Id.] EEOC further objects that tax forms, tax returns, 1099s, and account statements are private and confidential, as well as irrelevant. EEOC objects to the extent that the request seeks documentation of unemployment or social security benefits, etc. Because EEOC does not seek loss of income or benefits for Brewer, any of her income documentation is irrelevant and would merely an attempt to harass Brewer. EEOC states that to obtain all of the documents that identify a subsequent employer is duplicative, irrelevant and nothing more than a fishing expedition. EEOC does not agree that the only proper employer is Bank of Albuquerque. Subject to the objections, EEOC stated it would provide BAQ with responsive documents "by the least intrusive means, which identify the subsequent employers of" Fernandez and Morantes. [Doc. 75, Ex. 2, at 32.] BAQ argues EEOC has not fully responded to Request No. 8.

EEOC makes no mention of the fact that when BAQ served subpoenas duces tecum on subsequent employers, EEOC improperly intervened and directed that those employers not comply with legally obtained subpoenas.

EEOC objects to No. 9 on grounds that it is "completely incomprehensible and unintelligible, vague and confusing, overly broad and unduly burdensome." [Doc. 75, Ex. 2, at 32.] EEOC complains that there is no reasonable time limit provided with respect to the request and that it cannot "ascertain the relationship between" Nos. 8 and 9. Because EEOC cannot determine what No. 9 seeks, it stated no responsive documents existed. BAQ continues to argue that EEOC should be compelled to fully respond to No. 9 as well.

EEOC is demanding back pay and front pay for the women on whose behalf the claims are prosecuted. The requested evidence is relevant and not privileged, and, therefore, discoverable, under Rule 26. The Court directs EEOC to produce the responsive documents within ten days.

Request for Production No. 10 asks EEOC to produce all documents pertaining to communications between Morantes and Bank of Albuquerque clients and/or client representatives after April 9, 2008. EEOC objects on grounds that the request is vague and ambiguous, overly broad and unduly burdensome. Subject to the objections, EEOC responds that no documents exist. BAQ argues EEOC has not fully responded to No. 10.

A well-established principle of the law of equity requires one to come before the court with "clean hands." *See, e.g.,* Estate of Bruner v. Bruner, 338 F.3d 1172 (10th Cir. 2003) ("to receive equity, [a person] must do equity.") Should BAQ establish that Morantes secured private account information through some improper process when she was no longer a bank employee, that evidence would be relevant to her own "clean hands," an equitable claim requirement.

The Court overrules the objections.  To the extent responsive documents exist, EEOC must produce them within ten days.

Request for Production No. 11 asks for all Bank of Albuquerque client documents in "your possession and/or control."  EEOC objects on grounds that the request is vague and ambiguous.  To the extent any such documents exists, EEOC will produce them in response to No. 1.  BAQ argues EEOC did not fully respond to No. 11.

The Court overrules the objections.  To the extent such documents exist and are in EEOC's possession and/or control, EEOC must produce them within ten days.

Request for Production Nos. 14 and No. 15 are related.  The requests ask EEOC to produce all documents evidencing insurance coverage "you may or may not have received for medical bill/invoices you have incurred during the respective Applicable Time Period."  They also ask for documents evidencing any method of payment for such bills or invoices during the pertinent time frame.   EEOC objects on grounds that the documents are irrelevant and states it is not requesting payment for out-of-pocket medical expenses for any claimant.  According to EEOC, the request seeks duplicative information as BAQ already possesses medical releases for the charging parties.  EEOC argues it should not be required to "track down every medical bill or invoice any of the claimants ever received over an expansive period of time. . . ." [Doc. 75, Ex. 2, at 35.] EEOC claims BAQ seeks to send EEOC on a "wild goose chase looking for hypothetical situations where an insurance 'may not have' been received by a medical provider."  EEOC refers BAQ to the records it obtains or obtained from medical care providers.  BAQ argues not all documents were produced in response to Nos. 14 and 15.

The Court overrules the objections.  Contrary to EEOC's present representations, it is indeed seeking medical damages.  [*See* Doc. 1 and proposed amended complaint.]  The requested information is relevant not only to determine medical damages, but also to ascertain if a subrogated insurer's claims need to be assessed.  The Court directs EEOC to produce responsive documents within ten days.

Request for Production No. 17 asks for EEOC to produce all intake questionnaires, "partially or wholly completed forms, and related documents, whether or not a charge was pursued, from all persons against Bank of Albuquerque during the applicable time period."  EEOC objects on grounds that the requested documents are "statutorily prohibited from disclosure by Title VII and EEOC's own policies and procedures."  EEOC further argues the request asks for duplicative information. EEOC refers BAQ to documents disclosed in response to No. 1.  BAQ contends that EEOC did not fully respond to No. 17.

EEOC seeks to broaden the scope of this lawsuit to include other individuals.  While the Court's Report and Recommendation proposed denial of that request, the information sought is relevant to those potential claims.  The Court overrules the objections and directs EEOC to produce responsive documents within ten days.

Request for Production No. 18 asks for all documents related to "statistical analysis of comparators and/or statistical analysis of adverse action taken against Bank of Albuquerque employees by Bank of Albuquerque based upon membership in a protected class."  EEOC objects on grounds that the request seeks information protected by attorney-client privilege, work product, and governmental deliberative process privilege.  Subject to the objections, EEOC states there are no responsive documents.  BAQ argues that EEOC failed to fully respond to No. 18.

31

The Court overrules the objections.  To the extent EEOC is relying on a statistical analysis, it is required to show how exactly it arrived at its conclusions.  The Court directs EEOC to supplement its production within ten days.

Request for Production No. 20 asks EEOC to produce all documents related to conciliation of the Morantes' charge, including to correspondence with the individuals, internal communications among EEOC employees and/or EEOC counsel, calculation of alleged damages, and documents supporting calculation of damages.  EEOC objects that the request is facially overbroad, vague, ambiguous and unduly burdensome.  EEOC further asserts that it is prohibited by statute from disclosing conciliation records without express written permission which has not been provided.  Moreover, EEOC contends the request seeks information that is protected by various privileges or confidentiality concerns.  BAQ argues that not all responsive documents have been produced.

EEOC withheld seventy-five pages of documents pertaining to conciliation under deliberative process and confidentiality provisions.  The Court previously rejected the governmental deliberative process privilege, but notes that documents relating to conciliation are usually protected from disclosure.  42 U.S.C. § 2000e-5(b) ("Nothing said or done during and as a part of such informal endeavors [including conciliation] may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned.")  The Court concludes, therefore, that public policy, along with 42 U.S.C. § 2000e-5(b) prevent disclosure of conciliation documents.  The Court sustains the objections and will not require disclosure of materials related to conciliation.

Request for Production No. 21 asks for all documents pertaining to communications and/or notices of the litigation to potential class members and/or witnesses.  EEOC objects but states,

32

subject to the usual objections, that no documents exist.  BAQ claims that EEOC did not fully respond to No. 21.

The Court cannot order production of documents that do not exist.  Thus, the Court does not require production.

Request for Production No. 23 and No. 24 ask for personnel files of James Snyder and Guy Knoller.  EEOC objects and incorporates all objections raised in response to No. 22 that sought Sylvertooth's personnel file.  In its response brief, EEOC stated that in Request Nos. 22-24, BAQ asked for personnel files for two EEOC investigators and former EEOC attorney Knoller.  EEOC claims such information is "private, sensitive, and confidential" and not relevant. [Doc. 100, at 15 n.3.]  EEOC stated it would not produce the requested information.  BAQ contends that EEOC did not fully respond to Request Nos. 23 and 24.

The Court overrules the objections, and notes that EEOC required the production of numerous personnel files from BAQ.  The Court directs EEOC to produce the responsive documents within ten days.[13]

Request for Production No. 25 asks for "copies of all complaints, petitions, deposition notices, subpoenas for depositions or documents, indictments, charges, and/or information, in each Individual's possession and/or control that relate to any civil lawsuit or criminal prosecution in which each Individual has been interviewed, has been deposed, has been a witness and/or intends to be a party or witness."  EEOC objects on grounds that the information sought is irrelevant and not likely to lead to admissible evidence.  It further objects on grounds that the requested

---

[13]The personnel files may be redacted to remove personal identifiers such as birthdates and social security numbers.  So, too, health information may be removed.

information is overly broad, unduly burdensome, and unrestricted in time.  Subject to objections, EEOC contends no such information exists.  BAQ argues EEOC did not fully respond to No. 25.

The Court overrules the objections and requires production of documents, case names, and docket numbers for each of the charging parties, for both civil and criminal cases in the last three years, to the extent there is such information.  EEOC is directed to produce the information within ten days.

**G.     Other Discovery Disputes Argued by Parties**

1.     ***Documents from Charge Files Pertaining to Fernandez and Brewer* [Doc. 75, at 5.]**

According to BAQ, Brewer testified that she completed forms with the EEOC. [Doc. 75, Ex. 11, at 43.] EEOC did not produce any such forms and did not list Brewer's EEOC forms on a privilege log.  Brewer also testified that her "first and only in person meeting with EEOC occurred in the presence of Fernandez and Fernandez's counsel and Morantes and Morantes' counsel."  But, Brewer could not recall the subject matter of the meeting.  BAQ seeks information as to the underlying facts pertaining to the Brewer claim, processing of any claim made by Brewer, and the facts related to the conciliation that Brewer attended. [Doc. 75, at 5-6.]

BAQ also asserts that it requested information relating to Fernandez, although its motion does not specify whether the request was made as part of written discovery.  BAQ states that it specifically requested information concerning whether Fernandez timely instituted litigation.  BAQ claims that EEOC improperly designated the relevant files as privileged, improperly withheld the files, or destroyed the files sometimes after the statute of limitations ran. [Doc. 75, at 6.] BAQ seeks the Fernandez files and the steps taken regarding processing of that charge, or a representation by

EEOC that the files were destroyed before EEOC attempted to include Fernandez in the Morantes'
litigation.

In its response, EEOC states it produced the investigative files for Morantes and Fernandez
except for privileged documents, and further that Brewer has no file. [Doc. 100, at 15.] EEOC's
initial disclosures of investigative files were supplemented several times.  EEOC also supplemented
with a more detailed privilege log in November 2012, addressing these matters.  EEOC continues
to assert that it produced all non-privileged records relating to Fernandez and that BAQ did not
identify any document on the privilege log that it believes was improperly withheld.

Moreover, EEOC states that Brewer testified she "thought" she completed forms at EEOC;
however, according to EEOC, Brewer did not file a charge of discrimination and EEOC has no
investigative file for a non-existent charge.  EEOC further explains that there is information about
Brewer in the Morantes/Fernandez charge files that were produced already.

As best as the Court can determine, in its reply, BAQ does not continue to argue a failure to
produce the above-discussed files or information.  But, to the extent that any materials exist and
were withheld based on a privilege related to Sylvertooth in his investigative role, those responsive
documents should be produced within ten days.  Otherwise, the Court does not direct any further
production by EEOC of Fernandez or Brewer files/charges.

2.   ***Original Notes, Luttrell emails, and/or Audio/Video Recordings***

BAQ argues that EEOC refused to produce its original notes and/or audio/video recordings.
BAQ states that while the EEOC investigator(s) met or communicated with the three women and
several witnesses, any notes of the original communications with Brewer, Fernandez, and/or
Morantes are missing.  "Additionally notably missing are any notes of communications with BAQ's

Senior Human Resources officer Luttrell." [Doc. 75, at 10.] According to BAQ, Luttrell testified that there is an email that apparently was not produced.  In its reply, BAQ asserts that EEOC should never have spoken to BAQ's Senior Human Resources manager Luttrell outside the presence of counsel regarding any matter related to this case.

EEOC provided a privilege log that lists two emails from Luttrell to Sylvertooth in 2009, when Sylvertooth acted as an investigator. [Doc. 100, Ex. A.] As these emails were sent during the time frame when Sylvertooth acted as an investigator and not an attorney, they are not protected under any privilege. The Court directs EEOC to produce those emails within ten days.

In addition, BAQ argues that while some notes pertaining to communications with some witnesses were produced, labeled "Memorandum" or "Call Log," the majority of the notes were drafted by EEOC long after the communications took place and they were redacted.  BAQ also asserts that EEOC failed to produce visitors' logs that are "highly relevant" to the Brewer and Fernandez, "whose claims were long dead before the Conciliation of the Morantes charge." [Doc. 75, at 10.] BAQ specifies that the notes from meetings or communications between EEOC and Fernandez, Morantes, and Luttrell (2008) are missing.  Other communications with Morantes, Brewer, and witnesses took place on specified dates while notes are dated some weeks and months later. [Id.]

BAQ argues that it is prejudiced by not being permitted to see the original notes.  BAQ claims significant prejudice concerning the withholding of original notes or recordings because several EEOC witnesses have "severe memory deficits." [Doc. 75, at 11.] According to BAQ, the only potential source of information pertaining to these facts is the original notes or recordings.

36

EEOC states it already produced complete copies of its investigative files, except for records "properly identified on a privilege log." [Doc. 100, at 16.] EEOC explains that the investigator's notes are typewritten such that the "original" notes in the paper file "have no different appearance than the copies provided . . . ." Production of the original file would cause EEOC burden as it would have to unfasten the original files and manually remove privileged documents. [Doc. 100, at 16.] EEOC further claims that an in-person inspection of the original file would require an EEOC staff member to be present and would waste EEOC's staff resources. There is no need, according to the EEOC, for BAQ to inspect original documents.

The Court disagrees and overrules EEOC's objections. EEOC and BAQ shall arrange for inspection and copying of the original files or documents within ten days.

In addition, EEOC asserts there is no basis for BAQ's claim that EEOC withheld any interview notes. All interview notes were produced with non-privilege documents. [Doc. 100, at 17.] Any interview notes that were withheld would be listed in the privilege log, but no interview notes are included in the privilege log. EEOC rejects BAQ's position that an EEOC investigator "should" have notes of all communications. EEOC further states that it did not redact the interview notes. Sometimes "blanks [on those documents] are just that – blanks." [Doc. 100, at 17.]

The Court sustains EEOC's objection as to interview notes to the extent they already were produced in an unredacted form.

With respect to BAQ's request for EEOC visitor logs, EEOC argues that BAQ did not identify any specific request for production for such logs and made no such request. Moreover, visitor logs at EEOC do not communicate any information about visitors except the name and date.

BAQ claims it requested the visitor logs to "mitigate the effect of (i) the refusal of EEOC investigators to testify, (ii) the refusal of the EEOC to produce the case log and case summaries which the EEOC produced on December 3, 2012, and (iii) the admitted memory deficits of EEOC witnesses."  BAQ seeks the visitor logs to be able to "piece together the steps of the investigation and the purported conciliation." [Doc. 116, at 8.] Essentially, BAQ argues that it is entitled to this information to evaluate whether EEOC conciliated in good faith, whether it filed the complaint in good faith, whether it issued its disclosures appropriately, and to determine when EEOC obtained confidential documents. [Id.]

The Court sustains the objections.  The minimal relevance of the described documents does not outweigh the burden to produce them.  A court is free to employ a balancing test and deny a request altogether, including limiting the conditions, time, place, or topic of discovery.  Fed. R. Civ. P. 26(b)(2)(C)(iii).

Finally, the only audio recording in the EEOC file is from Morantes' unemployment hearing which was already provided to BAQ.  No other audio or video recordings exist. [Doc. 100, at 18.]

The Court sustains EEOC's objection as to production of any audio or video recordings.  It cannot compel production of something that does not exist.

## H.   EEOC Privilege Logs

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection, the party must

> (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed.R.Civ.P. 26(b)(5).

The Court reviewed EEOC privilege logs, attached as Exhibits A and E to EEOC's response. [Doc. 100.] It also examined EEOC's privilege log attached as Ex. 7 to BAQ's motion, which includes some of the entries on EEOC's Ex. E. [Doc. 75, Ex. 7; Doc. 100, Ex. E.]  In accordance with the rulings set out above, the Court provides the following clarification or guidance as to documents listed on EEOC's privilege logs.

In Doc. 100, Ex. E, EEOC's first protected document is listed as "investigator's intake notes and internal analysis for CP Morantes," dated April 11, 2008.  The log notes that Sylvertooth generated the document and that EEOC asserts the governmental deliberative process privilege in withholding it.  That document is subject to production based on the Court's rejection of the privileges asserted by EEOC.  The same is true for the second listed item – a "charge detail inquiry for CP Morantes," dated April 23, 2008, originated by EEOC "intake staff."  EEOC withheld this document under the same privilege of governmental deliberation.  It must be produced, as must the following two documents, dated May 7, 2008.

In contrast, documents originated by EEOC trial attorneys may be withheld.  However, in order to avoid any confusion, EEOC should updated the privilege log to show which EEOC trial attorney generated the document.  If it was Sylvertooth, acting as an investigator, then it would not be protected.

The Court does not go line by line on the privilege log [Ex. E] in advising EEOC which documents must be produced, but the above guidance should be sufficient.  With respect to the second page of Ex. E, the Court observes that almost half of the entries contain either no dates or "various dates."  EEOC should attempt to specify the dates of these items so as to better determine

whether the documents should be produced.  Failure to do so may result in the Court directing EEOC to provide all of the listed items to the Court for an *in camera* inspection.

<u>Conclusion</u>

In sum, the Court overruled EEOC's objections based on the attorney-client privilege and work product protection as they relate to EEOC investigators' information.  The Court also overruled the governmental deliberative privilege, but allowed EEOC to retain documents containing the mental impressions and/or legal analysis of EEOC's attorneys, trial strategy or legal advice.  Those are the only documents EEOC may properly retain under a claim of privilege. However, if not already listed in a privilege log, EEOC must list those documents in a <u>Vaughn</u> index with the required detail.

The Court requires EEOC to review all withheld documents and to supplement disclosure. in accordance with this decision and guidance provided about items listed in the privilege logs. Documents related to conciliation need not be produced as noted.  The Court may, but does not at this time, require production for *in camera* review.  Should EEOC improperly withhold disclosure of documents, sanctions may appropriately be brought against EEOC for violation of the Court's order.  Those sanctions may include dismissal of the case with prejudice.  <u>Ehrenhaus v. Reynolds</u>, 965 F.2d 916, 920 (10th Cir. 1992).

The Court finds that many of EEOC's objections were meritless, asserted in bad faith, and obstructed the discovery process.  Moreover, as noted by BAQ, EEOC produced documents subsequent to BAQ's motion to compel.  The Court will award BAQ its attorney fees in the amount of $4,500, which the Court deems is reasonable reimbursement for this motion.

IT IS THEREFORE ORDERED that Defendant's Motion to Compel is GRANTED in part and DENIED in part as described herein.  EEOC must produce all documents, as directed, within ten days after entry of this opinion.  To the extent, EEOC did not provide an appropriate <u>Vaughn</u> index of materials being withheld, it should do so, also within ten days.  EEOC should submit payment of attorney's fees to counsel for BAQ within ten days after entry of this opinion.


_____
Lorenzo F. Garcia
United States Magistrate Judge