IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

vs.                                        CIVIL NO. 11-1132 RB/LFG

BOK FINANCIAL CORPORATION,
dba Bank of Albuquerque,

        Defendant.

**ORDER ADOPTING
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
THAT ELIZABETH MORANTES'S MOTION TO INTERVENE BE DENIED**

      THIS MATTER is before the Court on Elizabeth Morantes's, "proposed Plaintiff in Intervention" ["Morantes"], objections [Doc. 104] to Magistrate Judge Lorenzo F. Garcia's Report and Recommendation ("R&R") [Doc. 85] proposing that Morantes's motion to intervene [Doc. 45] be denied.[1]  This Court conducted a *de novo* review of those parts of the Magistrate Judge's R&R to which Morantes objects.  Fed. R. Civ. P. 72(b)(3).  In resolving these objections, the Court considered all the pertinent pleadings with exhibits, including the objections, Defendant BOK Financial Corporation's ("BAQ" or "Defendant")[2] response to the objections [Doc. 121], and Morantes's reply [Doc. 141].  There is no need for a hearing.

**Summary of Proceedings**

---

[1] EEOC filed this lawsuit on behalf of Morantes and two other women. [Doc. 1.] EEOC did not file any pleadings with respect to Morantes's objections to the Magistrate Judge's R&R.  Instead, Morantes acts through privately retained counsel in moving to intervene and objecting to the R&R.  In the R&R, Judge Garcia observed that EEOC did not take a position as to Morantes's motion to intervene, but that during a telephonic conference, counsel for EEOC indicated a belief that Morantes had a right to intervene and a right to individual representation. [Doc. 85, at 6 n.6.]

[2] The parties continue to dispute whether Plaintiff named the proper Defendant.  BOK Financial Corporation states that it is an improper party to this litigation.  BOK Financial further states that Bank of Albuquerque, NA (now BOKF, NA) ("BAQ") is a proper party.  The Court refers to Defendant in this Order as BAQ or Defendant.

On December 27, 2011, EEOC filed suit against BAQ, alleging that Defendant discriminated against Morantes, Yolanda Fernandez ("Fernandez"), and Betty Brewer ("Brewer") (or "three individuals"), each of whom worked for BAQ at some time. [Doc. 1.] EEOC asserted that BAQ disciplined and/or terminated the three individuals "because of their sex, female and/or because of their age, and/or because of their age plus their sex." [Doc. 1.] The complaint sets out separate claims of: age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); sex discrimination in violation of Title VII; and "age plus sex" discrimination. The complaint also asserts that the litigation is authorized and instituted under the ADEA and Title VII ("Section 706(f)(1) and (3) and Section 707[3] of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and -6").

On May 9, 2012, Defendant filed an Answer. [Doc. 5.] On June 26, 2012, the parties entered a Joint Status Report ("JSR") and Provisional Discovery Plan. [Doc. 14.] On June 28, 2012, Magistrate Judge Garcia entered a Scheduling Order, setting a discovery deadline of December 3, 2012. The deadline for filing amendments to pleadings and adding parties was August 31, 2012, and the deadline for filing discovery motions was December 24, 2012. [Doc. 17.] On July 2, 2012, this Court scheduled jury selection and a jury trial to begin August 12, 2013 through August 16, 2013 and August 19, 2013. [Doc. 22.]

On October 25, 2012, Morantes, through retained counsel, filed a motion to intervene along with a proposed complaint in intervention. [Doc. 45.] In her proposed complaint, she asserted claims of age and sex discrimination, along with a claim of discrimination on the basis of age plus sex. [Doc. 45, attachment.]

_____

[3] According to EEOC's motion to amend pleadings, EEOC states that it is not alleging any claim under § 707. [Doc. 36.]

These claims are similar to those set out in EEOC's complaint on behalf of the three individuals, although the proposed complaint in intervention contains more detailed factual allegations.[4] [Id.]

EEOC continues to litigate its complaint on behalf of Morantes since the Court had not yet made a final determination on the request for intervention until the present decision. However, Morantes's private counsel participated in a telephonic conference with the Magistrate Judge on September 6, 2012 [Doc. 29-Minutes], during which it was agreed that private counsel could attend the settlement conference with Morantes.

On November 13, 2012, BAQ filed a response in opposition to the intervention motion. [Doc. 62.] On November 15, 2012, this Court referred the motion to intervene to Magistrate Judge Garcia to conduct hearings, if warranted, and to perform legal analysis to recommend an ultimate disposition of the motion. [Doc. 64.] On November 30, 2012, Morantes filed a reply in support of intervention. [Doc. 80.]

During and after the briefing of this motion, discovery proceeded, although it is not clear from the pleadings what role, if any, Morantes's private counsel played during discovery, or whether proposed intervenor's attorney received copies of discovery and responses to discovery. About three weeks after entry of the order of reference, Magistrate Judge Garcia issued a report and recommendation proposing that Morantes's motion to intervene be denied. [Doc. 85.]

In recommending denial of intervention, Judge Garcia observed that EEOC had administrative control of this case for nearly four years, as early as 2008, and that EEOC assisted each of the three women on whose behalf it investigated, attempted conciliation, and represented. Each woman, including Morantes, knew of and initially consented to EEOC's advocacy on her behalf, including and in relation to

---

[4] The prayer for relief in the proposed complaint in intervention states that Morantes "having stated her Complaint for Breach of Contract" prays for damages in several areas. Private counsel may inadvertently have inserted the wrong prayer for relief, as Morantes does not allege breach of contract. Indeed, the body of her proposed complaint appears to seek damages for emotional distress, financial harm, and punitive damages related to alleged discrimination. [Doc. 45, attachment, at p. 13.]

EEOC's complaint, filed December 27, 2011.  In denying the intervention motion, Judge Garcia examined

requirements of Fed. R. Civ. P. 24; after a thorough analysis, the Magistrate Judge determined that

Morantes's motion to intervene was not timely under the circumstances of this case.

The Court reviewed Judge Garcia's reasoning and recommendation, along with the underlying

pleadings and attachments.  However, the Court conducted a *de novo* review of those portions of the R&R

to which Morantes objects.  Stated differently, the Court made an independent determination of whether to

allow intervention.

**Objections**

The initial portion of Morantes's objections addresses the circumstances related to her employment

with BAQ and her termination. [Doc. 104, at 2.] She claims, in part, that a local human resources specialist

encouraged her to go the EEOC to present her concerns of alleged discrimination in the workplace.

According to Morantes, that human resources specialist was subsequently fired as well, along with a

witness who testified related to this matter.  Morantes states the "pattern of retaliation [by BAQ] is

exceptionally troubling, especially as it may undermine the functioning of this Court." [Doc. 104, at 3,

n.2.] The Court disregards these allegations and attachments to Morantes's objections, as they do not relate

to the issue before the Court.

In 2008, Morantes filed a Charge of Discrimination with the EEOC that was "supplemented with

information associated with at least two other Charges of Discrimination, and an extensive investigation by

the [EEOC]." [Doc. 104, at 3.] A full-day conciliation with the EEOC ended when Defendant allegedly

walked out. [Doc. 104, at 3; Doc. 100, Ex. 7, pp. 41-43.] Subsequently, the Magistrate Judge held a

mandatory settlement conference in this litigation that was unsuccessful.

Morantes argues that when she filed the motion to intervene in late October 2012, "initial discovery

. . . was only barely underway."  Morantes asserts that by that date, the parties

provided initial disclosures, served one set of discovery, and had taken no depositions. [Doc. 104, at 4.]

4

In addition, Morantes states that because "virtually no depositions were concluded" as of December 17, 2012, "discovery may still be open, and it appears possible that substantial additional discovery will occur as this case proceeds to trial." [Id.] As noted above, discovery in this case closed on December 3, 2012, with the exception of some matters Judge Garcia allowed the parties to complete outside that deadline. The Court further observes that it recently adopted Judge Garcia's recommendation that EEOC's motion to amend be denied. [Doc. 150.] Thus, it is unlikely, in this Court's estimation that "substantial additional discovery [still] will occur" in this case, other than limited matters that Judge Garcia approved.

Moreover, Morantes's rendition of the procedural history or amount of discovery that occurred before she attempted to intervene in late October 2012, is misleading. For example, on June 14, 2012, EEOC filed a certificate of service indicating it served initial disclosures and an initial set of requests for admission on Defendant. [Doc. 12.] EEOC amended that certificate on June 19, 2012. [Doc. 13.] On June 26, 2012, the parties filed the JSR and Provisional Discovery Plan. [Doc. 14.] The JSR did not indicate any intention on Morantes's part to file a motion to intervene. On June 27, 2012, EEOC filed a certificate of service stating it served first supplemental disclosures. [Doc. 15.] On June 28, 2012, the Magistrate Judge conducted a scheduling conference with counsel and filed the Scheduling Order that same date. [Doc. Nos. 16, 17.] On July 18, 2012, EEOC filed a certificate of service noting it filed second supplemental disclosures. [Doc. 23.] On that same date, BAQ filed a notice that it served responses to EEOC's first requests for admission, along with a notice of BAQ's disclosures and related document productions. [Doc. Nos. 24, 25.]

On September 24, 2012, BAQ filed a notice of service of its first combined discovery requests on EEOC. [Doc. 33.] On October 1, 2012, EEOC filed a notice of service of its first interrogatories and document requests on BAQ. [Doc. 34.] On October 11, 2012, Defendant served a notice of subpoenas duces tecum [Doc. 40] and on October 23, 2012, Defendant served a notice of deposition subpoenas and

5

production of documents [Doc. 41.] On October 23, 2012, EEOC filed a first motion to quash subpoenas

and for protective order. [Doc. 42.] On October 25, 2012, the day Morantes filed her motion to intervene,

Defendant filed another notice of service of issuance of subpoenas. [Doc. 43.]

Moreover, on October 30, 2012, just days after Morantes filed the motion to intervene, the parties

filed additional certificates of service and notices of EEOC having responded to discovery, Defendant's

intent to take depositions, and Defendant's service of a second request for admissions on EEOC. [Doc. 46-

48.] On October 31, 2012, EEOC filed a second motion to quash and for protective order precluding

depositions of EEOC personnel. [Doc. 49.] The parties were conducting extensive discovery both before

Morantes filed her motion and immediately after entry of the motion.  Multiple discovery-related motions

and pleadings were filed at this same time.  [*See, e.g.,* Doc. Nos. 49, 50, 52, 54-56.]

Morantes states that her deposition was scheduled to be taken December 7, 2012, but that

Defendant "unilaterally vacated the deposition and withdrew the subpoena, apparently for tactical

advantage of some form." [Doc. 104, at 4.] Morantes omits mention that on November 5, 2012, she filed a

notice of non-appearance at her deposition initially scheduled on November 29, 2012 [Doc. 60] and her

related opposed motion for protective order, stating in part that her private counsel had scheduling conflicts

on November 29, 2012. [Doc. 61.]

By the time Morantes's motion to intervene was fully briefed on November 30, 2012, numerous

discovery pleadings, notices, and certificates had been filed.  As of that date, discovery was almost

complete.  On December 17, 2012, Magistrate Judge Garcia granted in part and denied in part Morantes's

motion for leave to serve discovery and participate in depositions. [Doc. 101.] Judge Garcia stated:

> Allowing separate discovery at this stage would, of necessity, require the Court to modify
> its case management deadlines, reopen discovery, modify deadlines for dispositive motion
> practice, and likely affect the already scheduled pretrial conference and trial. In addition,
> the Court recommended denial of Morantes'[s] motion for intervention. [Doc. 85.] If the
> Report and Recommendation is adopted, then this entire motion is moot. However, if
> intervention is allowed, the Court will determine if new discovery is authorized.

[Doc. 101, at 2.] Judge Garcia further reasoned:

> Granting Morantes's separate discovery at this present stage would compel the parties to "replow old ground," in that Morantes'[s] requests for discovery could overlap with discovery taken on her behalf by EEOC. Morantes makes no argument that EEOC's discovery was incomplete, inadequate, or in any way lacking. Indeed, her only complaint is that EEOC did not protect her *vis-a-vis* medical record or non-party record production. She advances no argument as to why she should be entitled to separate discovery, when EEOC pursued discovery on her behalf for five months.

[Id.] On December 18, 2012, Judge Garcia denied Morantes's motion for protective order and extended discovery for thirty days so as to schedule and take Morantes's deposition. [Doc. 106.] Morantes's deposition was taken. [*See* Doc. 137.]

With respect to Morantes's objections to the Magistrate Judge's R&R, she argues that she has an unconditional right of intervention. She further contends that Judge Garcia improperly considered judicial economy, efficiency and other policy matters in bolstering his R&R. Moreover, according to Morantes, the Tenth Circuit announced a liberal view towards intervention that Judge Garcia improperly rejected.

More specifically, Morantes sets out the following objections to Judge Garcia's R&R proposing denial of intervention: (1) Magistrate Judge failed to adequately weigh public policy favoring intervention and improperly minimized "the strong public policy favoring an individual right to protect her interests, especially when the EEOC's interests diverge from those of Ms. Morantes" [Doc. 104, at 7-9]; and (2) Magistrate Judge erred in evaluating the timeliness of Morantes's motion to intervene.

Morantes separated her second argument into six subparts: (a) Judge Garcia erred in finding she waived her legal rights to separate counsel by consenting to conciliation and investigation of her charge by EEOC [Doc. 104, at 10-13]; (b) Judge Garcia erred in concluding that the deadline for an intervention motion was the same deadline for amendment [Doc. 104, at 13-17]; (c) Judge Garcia erred in speculating what might occur if Morantes was allowed to intervene and failed to apply standards for intervention consistent with Utah Ass'n of Counties v. Clinton, 255 F.3d 1246 (10th Cir. 2001) ("Clinton") [Doc. 104, at 17-19]; (d) Judge Garcia erred in requiring Morantes to agree not to litigate as a condition of

intervention [Doc. 104, at 19-21]; (e) Judge Garcia erred because his R&R "suggests that there is no division of interests between Ms. Morantes individually, and Ms. Morantes as represented by the EEOC" [Doc. 104, at 21-24]; and (f) Magistrate Judge Garcia's R&R was flawed to the extent it suggested Morantes was required to explain why EEOC should be removed as her counsel. [Doc. 104, at 25.] With respect to her last argument ("f"), Morantes states that EEOC does not represent her individually and could not have moved to amend its complaint to add her as a party.

Regarding Morantes's fifth position ("e"), Morantes urges that her interests in this litigation significantly diverge from those of the EEOC.  For example, she objects to the "mistaken characterization" by Judge Garcia of her "minimal interests in confidentiality," which actually are "substantial, and genuine." [Doc. 104, at 22.] Morantes notes that EEOC ordered her to produce a release consistent with Court-approved HIPAA forms for medical and psychological care, and that despite not being a party to this litigation or under any Rule 26 obligation to supply the information and release, she provided it. [Id.] Morantes argues that she was not tendered a subpoena in this process to which she could object, and that, as a non-party, she could not demand a confidentiality order prohibiting "wrongful dissemination of those records."  Morantes further states, without evidentiary support, that:

> . . . it is believed that confidential records (or requests for confidential records) have been made available without an accounting of the records, or other steps calculated to protect the interests of non-parties such as Ms. Morantes.

[Doc. 104, at 23.] Morantes claims that while EEOC raised the issue of confidentiality concerning some of the pertinent records, it did not specify that such documents had to be returned in the future.

Morantes also asserts that the Magistrate Judge's comment that she would have to produce a release for these same records if permitted to intervene is misguided.  She argues that if she had privately retained counsel and was participating as a party, she could defend her interests directly and that her attorney would demand a protective order as a condition for release of records.

In addition, Morantes points out a "deep divide" between EEOC's interests and her own. For example, Morantes has little interest in "seeking injunctive relief associated with a bank that she will never work for [again]." Instead, her "great and direct" interest is in seeking "fair compensation for the injuries Defendant caused her." She states that "if the EEOC were to settle today, it would inviolably compromise her rights." [Doc. 104, at 24.]

Morantes contends that intervention would allow her "to be certain that her rights are protected and vindicated," it would permit her to know her perspective was heard, and that she received effective advocacy to protect her rights. To disallow her intervention, prejudices her and "misapprehends the role of an individual Plaintiff." [Id.]

In response to the objections, Defendant argues generally that Morantes waited too long to file her motion to intervene, thereby making it untimely. Defendant further asserts that Morantes failed to establish the requisite good cause to "dislodge the applicable [and already expired] deadlines set out" in Judge Garcia's June 28, 2012 Scheduling Order. [Doc. 121, at 2.]

Defendant reviews what it considers to be the relevant background facts as to Morantes's employment at BAQ and the related EEOC investigation into her charge of discrimination. The Court summarizes some of the underlying facts for purposes of providing the timing of EEOC's investigation and Morantes's private attorney's involvement. For example, Morantes met with EEOC to begin her charge of discrimination in about April 2008. EEOC initially did not investigate that charge. Morantes's private attorney worked with or was involved with the EEOC concerning Morantes's charge since about November 2009. After two and one-half years of investigation, EEOC filed the present litigation on behalf of Morantes and two other women. Morantes knew as early as January 4, 2012, that EEOC had filed the complaint on behalf of the three individuals. During the preparation of the JSR in this case, around late June 2012, Morantes executed a release for production of medical records. Neither Morantes nor EEOC

requested a protective order, although the JSR reflects discussion of a disputed protective order.  On June 29, 2012, EEOC produced a release for Morantes's medical records to BAQ.

According to BAQ, Morantes failed to file a motion to intervene by August 31, 2012, "the deadline for intervention and amendments."  On September 5, 2012, EEOC informed the Court and BAQ that Morantes intended to intervene.  On September 6, 2012, Magistrate Judge Garcia held a telephonic conference with counsel, including Morantes's private attorney.  During that conference, Judge Garcia expressed his intention not to allow an extension of time to move to amend.  Judge Garcia also indicated he believed any motion to intervene would be untimely based on case management deadlines. [Doc. 29-Minutes.]

About six weeks after this conference, on October 17, 2012, Morantes's attorney contacted BAQ's attorney to request BAQ's position on Morantes's motion to intervene.  Morantes filed the opposed motion to intervene nearly three years after her private attorney was involved in this matter, ten months after EEOC filed the complaint, seven weeks after expiration of the deadline to amend or add parties, and six weeks after Magistrate Judge advised that he believed it was too late to intervene.

BAQ further states that Morantes seeks to intervene for purposes of prosecuting only one of the three claims asserted by EEOC – the gender claim.  BAQ observes that Morantes concedes she cannot intervene to prosecute the other two claims, which are based on allegations of age discrimination.[5]  "Thus, the granting of Motion to Intervene would lead to the paradoxical situation where the EEOC, on behalf of Morantes, pursues three claims, while Morantes, acting for herself, pursues only one." [Doc. 121, at 5.]

BAQ asserts that this Court should overrule the objections and deny intervention because under Fed. R. Civ. P. 16(b), Morantes did not establish good cause sufficient to overcome pertinent Scheduling Order deadlines.  For example, BAQ notes that "[w]hile devoting twenty-six pages to her Objections,

_____

[5] It is not clear to the Court where, when, or why Morantes conceded she could not intervene to prosecute the other two claims.

10

Morantes never explains why intervention was not sought within the deadlines set forth in the June 29, 2012 Scheduling Order.  Additionally, BAQ contends that it would suffer prejudice if the Court permits intervention.  Not only would Morantes require additional discovery, the Scheduling Order would be revised, trial would be delayed, and BAQ would be exposed to increasing costs, including claims for increasing back pay damages.

Second, BAQ argues that Morantes's motion to intervene under Rule 24(a) is untimely. BAQ asserts that in analyzing timeliness under Rule 24(a), the court considers whether the applicant was in a position to seek intervention at an earlier time in the litigation and that Morantes could have moved to intervene earlier.  Second, BAQ contends that Morantes's claim of divergence of interest between EEOC and Morantes is a non-issue.  BAQ further states that Morantes's concern about controlling her claims in litigation is exaggerated.  According to BAQ, this is particularly true where intervention would only be possible as to one claim.

In Morantes's reply, she contends that Defendant failed to respond to many of her objections. [Doc. 141.] Much of the reply is duplicative of the objections and can be summed up in the paragraph appearing on page 9 of the reply:

> Our courts have counseled, time and time again, that intervention should be allowed 'where no one would be hurt and greater justice could be attained.'" Nothing in the Defendant's arguments suggests that greater justice is given by preventing a victim her day in Court.

[Doc. 141, at 9.]

Morantes again contends that as of October 2012, apparently when she filed the motion to intervene, discovery was "only barely" underway.  The Court previously described why it disagreed with this assertion.  In addition, Morantes argues that Defendant "compounded the Magistrate Judge's error in focusing on prospective activities as some form of retrospective prejudice." [Doc. 141, at 10-11.] Again,

11

Morantes repeats her objection that a district court cannot bolster a denial of intervention by referring to concerns of judicial economy.

## Analysis

The Court overrules Morantes's objections and supports its denial of Morantes's motion to intervene almost exclusively on its determination that Morantes did not file a "timely motion" to intervene "of right" under Rule 24(a).[6]  Morantes's motion for intervention is properly analyzed as a motion for intervention of right under Rule 24(a) because 42 U.S.C. § 2000e-5(f)(1) gives an "aggrieved employee 'the right to intervene' in the EEOC's suit."[7]  Whether filed under Rule 24(a) or (b), a motion to intervene must be timely.  The Court concludes that Morantes's motion to intervene was not timely.  (*See* analysis *infra*.)

---

[6] Denial of a motion to intervene as a matter of right is a final, appealable order.  Coal. of Arizona/New Mexico Counties v. Dep't of the Interior, 100 F.3d 837, 839 (10th Cir. 1996).  Generally, review of a denial of intervention under Rule 24(a) is *de novo* in this circuit.  United States v. Albert Inv. Co., 585 F.3d 1386, 1389-90 (10th Cir. 2009).  However, a number of circuit courts, including this circuit, indicate that the review of a denial of a Rule 24(a) or (b) motion to intervene *on the basis of timeliness alone* is for an abuse of discretion. *See, e.g.*, Oklahoma v. Tyson Foods, Inc., 619 F.3d 1223, 1231-32 (10th Cir. 2010) (review denial of intervention on grounds of timeliness for abuse of discretion); Ute Distrib. Corp. v. Norton, 43 F. App'x 272, 276 (10th Cir. July 25, 2002) (unpublished) ("While we review the denial of intervention of right de novo, we will disturb the district court's determination that the motion is timely only upon an abuse of discretion."); Planned Parenthood of the Heartland v. Heineman, 664 F.3d 716, 718 (8th Cir. 2011) (we review a district court's timeliness determination as to intervention application for abuse of discretion), *cert. denied*, 133 S.Ct. 198 (2012).  If the court, however, makes no findings as to timeliness, the Circuit reviews this factor de novo.  Clinton, 255 F.3d at 1249.  At least one circuit court stated that an initial decision to reject intervention on grounds of lack of timeliness is rarely disturbed on appeal. *See, e.g.*, Negron-Almeda v. Santiago, 528 F.3d 15, 21 (1st Cir. 2008) (abuse of discretion, while not a rubber stamp, is a relatively deferential standard of review).

[7] Even if Morantes's motion were also analyzed under Rule 24(b) ("permissive intervention"), she still must file a timely motion, and for the same reasons explained here, the Court concludes Morantes did not timely move for intervention. *See* Fed. R. Civ. P. 24(b)(1) ("On timely motion, the court may permit [intervention if certain prerequisites are met]").

In addition, the Court briefly addresses Rule 16 requirements for good cause to modify the Court's Scheduling Order. It determines that Morantes did not demonstrate good cause to modify the Scheduling Order and that counsel failed to act with reasonable diligence in bringing the motion to intervene.

## A.    Rule 24(a) Intervention as of Right

### 1.    *Legal Standard:*

The pertinent rule of civil procedure provides that "[on] timely motion, the court must permit anyone to intervene who: [] is given an unconditional right to intervene by a federal statute . . . ." Fed. R. Civ. P. 24(a)(1). As stated above, 42 U.S.C. § 2000e-5(f)(1) gives Morantes an unconditional right to intervene in this litigation initiated on her behalf by the EEOC, ***provided her motion to intervene is timely***. *See* Nat'l Ass'n for Advancement of Colored People (NAACP) v. New York, 413 U.S. 345, 365-66 (1973) (regardless of whether intervention is premised on an unconditional or permissive right, the application must be timely; if untimely, intervention must be denied). *See also* Assoc. Builders & Contractors, Inc. v. Herman, 166 F.3d 1248, 1257 (D.C. Cir. 1999) (if motion for intervention is not timely, court need not address other factors that enter into an intervention analysis).

The editors of Federal Civil Rules Handbook provide the following commentary on Rule 24 intervention. "Notwithstanding the terminology of those two portions of Rule 24, the court enjoys substantial discretion when deciding whether to permit intervention under either Rule 24(a) or Rule 24(b)." Backer-McKee, Janssen, and Corr, Federal Civil Rules Handbook, 2013 ed., p. 707 (emphasis added) and p. 717 ("statutory intervention is still subject to a determination of timeliness, over which the district court enjoys substantial discretion") (*citing* Ruiz v. Estelle, 161 F.3d 814, 827 (5th Cir. 1998)). *See also* R&G Mortgage Corp. v. Fed. Home Loan Mortgage Corp., 584 F.3d 1, *8 (1st Cir. 2009) (timeliness requirement, *albeit* less strictly applied in motions to intervene as of right, still is a matter of appreciable discretion; timeliness requirement still retains "considerable bite"); Canadian Nat. Ry. Co. v. Montreal,

13

Maine & Atlantic Ry., Inc., 272 F.R.D. 44, 45 (D. Me. 2010) ("District courts have substantial discretion

to grant intervention under either subsection (a) or (b)").

In addition, "while cases granting applications to intervene often declare that intervention

provisions are to be construed liberally, *see, e.g.,* Clinton, 255 F.3d at 1249 (Tenth Circuit follows "a

somewhat liberal line in allowing intervention"), the application of Rule 24 to particular motions is not

always as generous as such general statements might suggest."  Federal Civil Rules Handbook, at p. 707

(citations omitted).  The editors of Federal Practice and Procedure similarly state:

> These statements [concerning liberal construction of intervention] should not be understood
> . . . as meaning that every possible doubt is to be resolved in favor of allowing intervention
> whenever it is sought.  Liberality 'does not equate with rights of indiscriminate intervention'
> and the rule continues to set bounds that must be observed.

7C Federal Practice and Procedure Civil 3d § 1904, at 269 (citations omitted).

In Clinton, the Tenth Circuit set forth the pertinent inquiry concerning a determination as to

timeliness of a Rule 24 motion to intervene.

> The timeliness of a motion to intervene is assessed "in light of all the circumstances, including
> the length of time since the applicant knew of his interest in the case, prejudice to the existing
> parties, prejudice to the applicant, and the existence of any unusual circumstances . . . ."
> "The analysis is contextual; absolute measures of timeliness should be ignored. . . ."  "The
> requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor,
> but rather a guard  against prejudicing the original parties by the failure to apply sooner.
> Federal courts should allow intervention 'where no one would be hurt and greater justice could
> be attained.

255 F.3d at 1250 (internal citations omitted); *see also* NAACP, 413 U.S. at 365-66 (timeliness is

determined from all the circumstances).  In Clinton, the Circuit Court ultimately reversed the district

court's denial of intervention, reasoning in part, that the case was not ready for resolution, no scheduling

order was issued, no trial date was set, and no cut-off date for motions was set. Id. at 1250-51.

Other circuit courts provide similar inquiries regarding the timeliness of a motion for intervention.

For example, the First Circuit Court advises courts to weight four factors in measuring – length of delay in

seeking intervention, prejudicial impact of such delay on existing parties, prejudice to intervenor if denied,

14

and other factors affecting fairness in an individual case. Stated differently, the Court examines the progress of the case, the length of time intervenor knew her interest was imperiled, any foreseeable prejudice to existing parties if intervention is granted or to intervenor if denied, and any idiosyncratic circumstances that weigh for or against intervention. Geiger v. Foley Hoag LLP Ret. Plan, 521 F 3d 60, 65 (1st Cir. 2008).

The Fifth, Seventh and Ninth Circuit Courts provide the following guidance. Because Rule 24 does not provide a specific deadline for intervention, the question of timeliness is determined from all the circumstances. Heaton v. Monogram Credit Bank of Georgia, 297 F.3d 416, 423 (5th Cir. 2002). Any substantial lapse of time weighs heavily against intervention. United States v. State of Wash., 86 F.3d 1499, 1503 (9th Cir. 1996). The Seventh Circuit advised that timeliness means intervenor applicant must "act with dispatch." Atl. Mut. Ins. Co. v. Nw. Airlines, Inc., 24 F.3d 958, 961 (7th Cir. 1994).

The Eighth Circuit emphasizes that it denies intervention when no adequate explanation is offered for the delay in moving to intervene. Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad., 643 F.3d 1088, 1094 (8th Cir. 2011). Moreover, a would-be intervenor's failure to justify its delay in light of its prior knowledge of the case may justify denial of intervention. Planned Parenthood of the Heartland v. Heineman, 664 F.3d 716, 718 (8th Cir. 2011), cert. denied, 133 S.Ct. 198 (2012).

There is no bright line rule guiding how quickly an applicant must move to intervene. However, in Okla. v. Tyson Foods, the Tenth Circuit recognized as particularly important the length of time since the movant knew of its need to intervene. "When the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow intervention." Tyson Foods, 619 F.3d at 1232 (citation omitted). Stated differently, the timeliness inquiry focuses on how diligently the applicant acted once she received notice of an impending threat or the need to intervene.

**2.    *Morantes's Knowledge of the Litigation and Explanation for Delay:***

Here, the Court looks first at when Morantes and her attorney knew of the litigation, when Morantes moved for intervention, and her explanation for any delay in seeking to intervene. According to factual allegations, BAQ terminated Morantes on April 10, 2008. Morantes met with the EEOC on about April 11, 2008. She filed a charge on April 16, 2008. [Doc. 14, stipulations] (Morantes EEOC Charge No. 543-2008-00760). Morantes's privately retained counsel, the same who filed the motion to intervene, has been working with the EEOC in this matter since at least November 13, 2009.

Morantes does not challenge BAQ's assertion that her privately retained attorney, Brian A. Thomas, participated as her counsel since as early as November 13, 2009, nor could she. Attached to one of the pleadings is Attorney Thomas's letter to investigator Sylvertooth of the EEOC regarding "Liz Morantes adv. Bank of Albuquerque, Pending EEOC Charge." The letter from Attorney Thomas states:

> Please allow this correspondence to constitute my office's entry of appearance on behalf of Ms. Morantes. I will be personally representing her, and I would appreciate the courtesy of receiving a copy of any correspondence or pleadings directed to Ms. Morantes.
>
> Also, when the investigation is complete, I would appreciate receiving a full and complete copy of the investigative file. If there is a charge for those documents, of a form that needs completing, please send it over at your earliest convenience.

[Doc. 62, Ex. 3.] While it is unknown if EEOC provided the requested information to Morantes's attorney in 2009, there is no question that the would-be intervenor's attorney was aware of the discrimination charge in late November 2009, and that, according to his letter, private counsel was actively and personally representing Morantes as of that date.

Morantes does not dispute this fact and makes no claim that her privately retained attorney did not participate in EEOC's investigation of her charge and claims during 2009 through 2011, when EEOC finally filed this litigation. Indeed, based on the circumstances, it defies credulity to believe that Morantes's attorney did not know that the EEOC filed suit in late December 2011, or that counsel did not quickly learn of the litigation thereafter.

16

Even if counsel's knowledge of the actual filing of EEOC's lawsuit is in question, Morantes asserted that she knew the EEOC filed the lawsuit on her behalf by about January 4, 2012, when she saw a news report in the Albuquerque Journal concerning the EEOC litigation. [Doc. 45, at 8; Doc. 62, at ¶ 4.] Thus, at the latest, Morantes was aware of the EEOC litigation by January 4, 2012, about a week after EEOC filed its complaint. Accordingly, she knew of her interest in the case (the formal litigation) no later than January 4, 2012, and more than likely, years earlier. Once counsel was aware of the lawsuit, there is no reason counsel could not have accessed court records and the electronic docket reflecting all filings and pleadings in this case, along with case management deadlines.

Notwithstanding her knowledge of the lawsuit, Morantes waited approximately ten months before filing the motion to intervene in late October 2012. Morantes did not act "with dispatch," and the Court finds this to be a significant delay that weighs heavily against Morantes's request for intervention, unless she provides a convincing explanation for the delay. However, Morantes virtually provides no explanation for the delay in moving to intervene.[8]

Instead of explaining the delay, Morantes claims unconvincingly that discovery in this matter was "barely underway" when she filed her application to intervene. She also relies on a pending motion to amend that the Court recently denied [Doc. 150]. She claims Magistrate Judge Garcia erred in bolstering his recommendation to deny intervention on certain policy considerations. She explains at length why her interests and those of the EEOC in pursuing its lawsuit are fundamentally different. Morantes argues intervention at this late date would "hurt no one" and serve "greater justice." She urges that the EEOC cannot fully defend or adequately represent her in some matters and that EEOC has not protected her

---

[8]The parties have filed extensive pleadings in this case and the Court is unable to make an exhaustive examination of each and every pleading along with voluminous attachments. However, in reviewing the underlying motion to intervene briefing, along with Morantes's objections and reply, the Court did not find any explanation by Morantes as to any obstacles she encountered in applying for intervention much earlier in the lawsuit.

privacy rights by disclosing certain medical or employment records. She speculates that filing a motion to intervene earlier in the case or before the unsuccessful settlement conference might have wasted judicial resources. She concludes that intervention now would allow her to be certain that her rights are protected and indicated. Noticeably lacking from her 36 pages of objections and supporting reply is any persuasive explanation why she could not have filed and did not file a motion to intervene before late October 2012.

Moreover, Morantes's contentions are unconvincing as to EEOC's alleged failure to adequately protect her privacy interests with respect to EEOC's demand that Morantes provide required mandatory disclosures, including authorized medical releases, and production of Morantes's medical or employment records to BAQ[9] in accordance with D.N.M. LR-Civ 26.3. The EEOC's complaint seeks, *inter alia*, significant damages on behalf of Morantes. For example, EEOC requests Defendant "to make [Morantes] whole" with respect to backpay and front pay, and compensation for Morantes's past and future pecuniary losses allegedly resulting from the unlawful employment practices, including job search expenses, medical expenses, and other pecuniary losses. [Doc. 1.] EEOC was not excused from making the required disclosures in terms of medical releases for Morantes and employment records that related to her damages or efforts to mitigate damages. Moreover, the Court disagrees with Morantes's position that she was under no obligation to provide the medical releases and initial disclosure information to EEOC, the very party that brought litigation on her behalf. Thus, EEOC, did not act unreasonably or contrary to Morantes's privacy interests in producing required information.

---

[9]As noted by the Magistrate Judge, EEOC actually, improperly, advised non-party employers to not comply with BAQ subpoenas to produce Morantes's relevant employment records. [*See, e.g.,* Doc. 102.] EEOC did not fail to attempt to protect Morantes's privacy concerns. Instead, it acted overzealously and without authority in advising the non-party employers to not respond to the proper subpoenas. While Morantes's attorney may level criticism at the EEOC for its improper actions, Morantes's counsel is without basis to claim that EEOC did not <u>try</u> to protect her privacy interests.

Morantes also complains that as a non-party, she had no ability to demand a confidentiality order prohibiting wrongful dissemination of private records.[10]  For example, she contends that had the parties entered a protective order, BAQ would be required to protect employment, medical and financial records of Morantes through the litigation's close.  The Court observes that as early as June 26, 2012, EEOC and BAQ both contemplated provisions of a protective order. [Doc. 14, at 8, 12, 16.]  Unfortunately, the parties were unable to agree on all of the terms of a protective order, as well as many other issues throughout this litigation.  On December 18, 2012, the Court entered an order granting Defendant's opposed request for entry of a protective order. [Doc. 107.] Magistrate Judge Garcia noted EEOC's request that the order protect private information, including medical records, of the three individuals, including Morantes.  In the order, Judge Garcia clarified that medical records were not publically available merely because they were discoverable.  The Court directed that a supplementary protective order be entered to include medical records and that all copies of such records must be returned at the completion of litigation. [Doc. 107.]

In relation to the question of timeliness and Morantes's awareness of her interest in this litigation, her arguments about initial disclosures, privacy interests, and entry of a protective order all tend to confirm that Morantes and her attorney were aware of her interests and this lawsuit early on.  Morantes utterly fails to explain why she did not move to intervene as early as June 2012, when, if permitted, she clearly would have had input into all of these issues.  Instead, without any adequate explanation for the months of delay, Morantes waited until the end of October 2012 to file the motion.

Similarly, Morantes offers no explanation why she did not file a motion to intervene in early September 2012, when she indicated her intention to intervene, both to EEOC and to the Court.  She waited

---

[10]It is unclear whether Morantes was precluded from requesting a protective order be entered with respect to disclosure of private information.  On November 9, 2012, Morantes, through private counsel, filed an opposed motion for protective order regarding her deposition setting. [Doc. 61.]

about six weeks from that date before filing the motion.  The Court rejects the unpersuasive explanation that for some reason Morantes did not want to move to intervene before the settlement conference.

The Court finds that Morantes knew of the EEOC litigation on her behalf as early as January 2012, her privately retained attorney represented her as early as November 2009 in EEOC-related proceedings concerning her charges, Morantes unduly delayed by waiting ten months after the lawsuit was filed before attempting intervention, and that she failed to provide any convincing explanation why she delayed in applying for intervention.  Thus, Morantes did not timely bring a motion for intervention under Rule 24, whether analyzed as a matter of right or as a permissive intervention.

      *3.        Prejudice:*

In deciding the issue of timeliness, the Court also looks to questions of prejudice both to existing parties and the proposed intervenor.  Tyson Foods, 619 F.3d at 1232.  In Federal Practice and Procedure, § 1916, at pp. 541-49, the editors stated: "The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case.  If prejudice is found, the motion will be denied as untimely."  (citations omitted).  *See also* McDonald v. E.J. Lavino Co., 430 F.2d 1065, 1073 (5th Cir. 1970) (court stated that prejudice "may well be the only significant consideration when proposed intervenor seeks intervention of right").  In addition, the Court is mindful that "[t]he prejudice prong of the timeliness inquiry 'measures prejudice caused by the intervenors' delay– not by the intervention itself.' " Clinton, 255 F.3d at 1251 (internal citation omitted).

Under the circumstances of this case, the Court finds that intervention at such a late stage would cause existing parties significant prejudice in the form of undue delay.  This is true because discovery now is closed, with the exception of limited matters Judge Garcia approved for completion subsequent to the discovery deadline.  Moreover, when Morantes moved to intervene, discovery was midway or beyond and heavily litigated, contrary to Morantes's position that discovery had barely begun.  Morantes moved to

intervene two months after the deadline for amendment and joinder expired. She inexplicably waited six weeks after mentioning intervention to opposing counsel and the Court before filing her motion.

The question of any prejudice of the "intervention itself" is not the issue. Indeed, the trial setting would have to be vacated, and discovery would have to be reopened with new case management deadlines, new expert deadlines, and new motion filing deadlines. Intervention would cause substantial delay to the existing parties and significant additional costs due to that delay, when Morantes had ample notice of her interest in this litigation and yet failed to move to intervene in a timely manner.

In addition, the Court observes that the pretrial conference and trial were scheduled months before Morantes moved to intervene. The Scheduling Order deadlines for case management were established in late June 2012, four months before the intervention motion. Expert deadlines have passed. The settlement conference was held in mid-September 2012. [Doc. 31.] The Magistrate Judge issued two Reports and Recommendations on EEOC's motion to amend and Morantes's motion to intervene. The parties served significant written discovery and have deposed a number of witnesses.[11]

Judge Garcia held numerous conferences with existing parties' counsel over a variety of discovery disputes [*See, e.g.,* Doc. Nos. 29, 77, 128], conducted several *in camera* inspections of documents and issued orders of production [Doc. Nos. 88, 96, 102] and ruled on a number of discovery-related motions [Doc. Nos. 30, 69, 78, 101, 106, 107, 114, 137] since the completion of briefing on Morantes's objections. Seven extensive discovery-related motions are fully briefed or are in the midst of being briefed by the parties. [Doc. Nos. 93 (sanctions); 94 (protective order re: Rule 30(b)(6) deposition; 109 (strike witnesses); 110 (deem admitted request for admission); 111 (sanctions); 129 (compel); and 130 (extension). Three summary judgment motions are being briefed [Doc. Nos. 122, 123, 124]. This Court recently denied EEOC's motion to amend. At this late date, the parties and claims are fixed. Trial is fast approaching.

---

[11]Indeed, Morantes states that as of October 2012, parties exchanged at least two additional sets of written discovery and had taken approximately 15 depositions. [Doc. 141, at 10.]

Moreover, the Court is not convinced that Morantes will suffer significant prejudice if not allowed to intervene at this stage. EEOC is and has been prosecuting claims on behalf of Morantes – the same claims she intends to assert. A protective order is in place that addresses potential privacy concerns. EEOC seeks extensive damages, including an award of punitive damages, on behalf of Morantes and the other two women.[12]

To allow intervention at this stage would thwart the significant progress made in this case and greatly delay its resolution. The Court concludes that the balance of harms to the existing parties and the proposed intervenor weigh in favor of denying the motion to intervene.

### 4.    *Unusual Circumstances:*

Generally, the Court does not find that unusual circumstances weigh in favor of or against the proposed intervention. However, as noted by the Tenth Circuit in <u>Tyson Foods</u>, one factor that might favor denial is the undeniable conclusion that intervention at this stage would disrupt the efficient operation of the district court and negatively impact litigants in other cases. Significant court resources have been devoted to this extremely contentious litigation. Intervention would mean that more court resources would have to be devoted to the case. Notwithstanding this observation, the Court relies on the untimeliness of the motion and prejudice to existing parties as grounds to deny intervention.

### 5.    *Conclusion as to Timeliness:*

In reaching its conclusion that the motion for intervention is untimely, the Court emphasizes that it did not consider the time element in a vacuum. In other words, the Court's intent is not to punish the would-be intervenor for dilatory efforts and a mere lapse of time. Instead, the Court weighed the ten-month

---

[12]The Court is unpersuaded by Morantes's position that a "deep divide" exists between EEOC's purposes in vindicating rights, including a request for injunctive relief, and Morantes's "interest in fair compensation for the injuries authored by the Defendant." [Doc. 104, at 24.] While EEOC may seek relief in excess to that sought by Morantes, it still requests a substantial monetary award to "make [Morantes] whole." The Court finds Morantes's argument speculative and exaggerated that if EEOC were to settle today, it "would inviolably compromise her rights." [<u>Id.</u>]

delay in moving to intervene in light of all the circumstances, including the fact that Morantes and her attorney knew of the allegations and claims in this case, not just ten months from the date EEOC filed the lawsuit, but for years before that date during EEOC's investigation. Morantes did not move to intervene when it became clear she had complaints about how EEOC was protecting or inadequately protecting her interests, in relation to disclosures and privacy concerns. The Court also factored in considerations of prejudice as is discussed above. Under all of the circumstances of this case, it is clear that Morantes was in the position to seek intervention at a much earlier stage in this case but failed to do so for unexplained reasons. This is the type of case where courts generally are reluctant to allow intervention, *i.e.,* when the applicant appears to have been aware of the litigation but has delayed unduly in seeking to intervene. *See* Tyson Foods, 619 F.3d at 1232. Thus, in its sound discretion, the Court determines that Morantes's motion to intervene is untimely and, therefore, denies intervention on this ground alone.

**B.**     **Rule 16 Good Cause Requirement to Modify Scheduling Order**

The Court also briefly observes that Morantes failed to demonstrate "good cause" to modify the Magistrate Judge's Scheduling Order that set a deadline of August 31, 2012, for Plaintiff to "move to amend the pleadings and to join additional parties . . . ." [Doc. 14, at 1.] The Court acknowledges that the Scheduling Order does not specifically identify a deadline for applications to intervene, nor does Rule 24 provide a specific deadline for intervention requests.

However, several considerations support a conclusion that Morantes's motion for intervention was untimely with respect to the amendment/joinder deadline in the Scheduling Order and that she failed to demonstrate "good cause" to modify that deadline. First, part of Rule 16's intent in requiring the Court to set specific scheduling deadlines is to "assure at some point both the parties and the pleadings will be fixed, by setting a time within which joinder of parties shall be completed and the pleadings amended." Fed. R. Civ. P. 16(b) (Advisory Committee Notes to 1983 Amendments). Clearly, intervention of a party is related to fixing the parties and pleadings as contemplated by the Advisory Committee Notes to Rule 16(b).

23

Second, Advisory Committee Notes to Rule 24(a) evince some of these same considerations, *i.e.,* that intervention of right "may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." Fed. R. Civ. P. 24(a) (Advisory Committee Notes to 1996 Amendments). Thus, even Rule 24(a) contemplates that in determining timeliness of intervention, the Court considers the expeditious management of its docket.

It follows that if a party is able to ignore case management deadlines and intervene as a matter of right at virtually any point in the litigation before trial, the parties and pleadings are far from fixed. Moreover, such unfettered intervention significantly interferes with the Court's efficient conduct of a proceeding. As noted by the editors in Federal Practice and Procedure,

> The requirement of timeliness [under Rule 24] is not of fixed meaning and provides, in many cases, an opportunity even under subdivision (a) for the court to take some account of the practical situation and the effect on those already parties and on the economical disposition of judicial business of allowing intervention.

Wright, Miller & Kane, 7C Federal Practice and Procedure § 1902, at 263. In other words, the Court is unpersuaded by Morantes's mantra that the Magistrate Judge was prohibited from "considering judicial economy, efficiency, or other policy-based considerations" in recommending denial of the intervention motion. [*See, e.g.,* Doc. 104, at 6.]

Very few court decisions address the issue of whether Rule 16 scheduling deadlines apply to Rule 24 intervention or how those two rules might overlap. However, there is some guidance from a few courts in unpublished decisions. For example, in CHS/Cmty. Health Sys., Inc. v. Lexington Ins. Co., 2012 WL 3042949, *4 (M.D. Tenn., July 12, 2012) (unpublished), the district court noted defendant's opposition to intervention based on "risk of delay and procedural complication" in light of a described "tight and carefully tailored scheduling order," which the Court stated were legitimate concerns. *See also* Fourhorn v. City and County of Denver, 2009 WL 1148042, *1 (D. Colo. Apr. 27, 2009) (unpublished) (while no

deadline for intervention was set, district court observed that the right to intervene is not ongoing.  "Future attempts to intervene may be considered untimely as other case deadlines approach or expire.")

In Harris v. Vector Mktg. Corp., 2010 WL 3743532, *2 (N.D. Ca. Sep. 17, 2010) (unpublished), the district court reviewed Rule 16(b) scheduling deadlines which provided the last day to amend pleadings or add parties was April 14, 2010.  However, the proposed intervenors in that case, waited five months to file an application for intervention.  The court observed that the proposed intervenors' motion was properly considered a motion to amend the pleadings or a motion to add new parties.  Thus, the issue was whether the proposed intervenors established good cause to modify the scheduling order.  In Harris, the court concluded that the movant failed to demonstrate reasonable diligence, thereby failing to satisfy the Rule 16(b) good cause standard.  The motion to intervene was denied.

In Homebingo Network, Inc. v. Cadillac Jack, Inc., the district court similarly denied a motion to intervene, noting that the action proceeded for nearly a year before the applicant sought to intervene.  The court stated "[u]nder the applicable Rule 16(b) Scheduling Order . . . entered by Magistrate Judge Bivins, '[a]ny motion for leave to amend the pleadings or to join other parties must be filed on or before June 16, 2006.'" The proposed intervenor "tarried for four and half months after that deadline before seeking to intervene."  Moreover the movant failed to proffer an explanation of the timing and did not argue he was unaware of the "applicable Rule 16(b) deadline."  In denying the motion, the court further reasoned:

> The deadlines set forth in Rule 16(b) scheduling orders are firm settings that must be taken seriously by both the Court and the litigants.  To allow parties to circumvent long-expired deadlines merely by invoking the liberal leave to amend policy espoused by Rule 15(a) would be to "render scheduling orders meaningless and effectively . . . read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."

Homebingo, 2006 WL 3469515, at *1) (citations omitted).  While Homebingo addressed Rule 15(a)'s liberality policy, here, Morantes invokes a similar "liberal view toward allowing intervention" under Rule 24(a). [See Doc. 104, at 7.]

While only a secondary reason to overrule Morantes's objections and to deny intervention, the Court concludes that Morantes failed to demonstrate good cause for modifying the Court's Scheduling Order and specifically, the August 31, 2012 deadline to amend or add parties. As explained above, Morantes's attorney knew of Morantes's claims as early as 2009. He was involved in the proceeding before EEOC filed the lawsuit and did not deny that fact in the objections. Counsel provided no explanation why Morantes did not move to intervene earlier than late October 2012 or by the amendment deadline. The Court finds that Morantes was not reasonably diligent in seeking intervention under the circumstances of this case. The Court further notes agreement with unpublished decisions where courts emphasize the importance of scheduling order deadlines and the need for parties and pleadings to be fixed by a certain point. While the cases clearly are non-binding and unpublished, they are instructive.

IT IS HEREBY ORDERED that the Magistrate Judge's R&R is adopted to the extent that it is consistent with the Court's analysis herein.

IT IS FURTHER ORDERED that Morantes's objections to the Magistrate Judge's R&R are overruled and that Morantes's motion to intervene is denied.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE