**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

     Plaintiff,

 vs.           No. CIV 11-1132 RB/LFG

BOK FINANCIAL CORPORATION,
dba Bank of Albuquerque,

     Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Defendant BOK Financial Corporation's ("Defendant" or "BAQ")[1] "Opposed Motion to Sanctions [sic] the EEOC for failure to comply with its Disclosure Obligations and Certifications," filed December 21, 2012.  The Court considered the motion [Doc. 111], response [Doc. 142], and reply [Doc. 171].  After careful consideration of the pertinent law, pleadings, and exhibits, the Court determines that oral argument is unnecessary, and grants the motion, in part, for the reasons described below.

### <u>Background</u>

EEOC brought "this public enforcement action against Defendant to enforce Title VII . . . and the Age Discrimination in Employment Act." [Doc. 142, at 2.] EEOC seeks relief on behalf of three women, Elizabeth Morantes ("Morantes"), Yolanda Fernandez ("Fernandez"), and Betty

---

[1]EEOC was allowed to amend its complaint to add two other entities – Bank of Albuquerque, National Association, d/b/a Bank of Albuquerque, and BOKF, NA, d/b/a Bank of Albuquerque.  Future Orders will include the names of all Defendants.  However, this Order addresses a motion filed by the single Defendant.

Brewer ("Brewer").[2] [Id.; Doc. 1.] EEOC states that it requests, *inter alia*, backpay for Morantes and Fernandez. [Doc. 142, at 2.]

Defendant's motion for sanctions is brought under Fed. R. Civ. P. 26(g) and concerns alleged violations of a party's obligation to conduct a reasonable investigation before certifying that the information being provided to the opposing party is correct. BAQ's specifically alleges that EEOC provided false information while certifying it was accurate. The purported false information concerns EEOC's backpay[3] calculation for Fernandez only. Defendant asserts that, even assuming liability and a two percent raise for Fernandez in 2008, her backpay damages approximate $6,000 to $8,000. [Doc. 111, at 8; Ex. 8.] This approximation is significantly different than the backpay calculation EEOC provided on numerous occasions, an amount closer to $81,500.

Defendant argues that the Court is obligated to impose mandatory sanctions on EEOC, in accordance with Rule 26(g)(3), for EEOC's failure to accurately report the required damage calculation, which it certified under Fed. R. Civ. P. 26(g) on at least three different times in sets of initial and supplemental disclosures. Defendant also asserts that EEOC should be sanctioned under Rule 37(c)(1) for compounding its initial violation of Rule 26(g) by "affirmatively obstructing later discovery by Bank of Albuquerque concerning the extent of Fernandez's alleged damages." [Doc. 111, at 2.] Additionally, Defendant notes that on September 24, 2012, when BAQ sought damages

---

[2] "EEOC further states it seeks relief for "other as yet unidentified women who were aggrieved by the alleged discrimination." [Doc. 2, at 2 n.2.] Subsequent to EEOC's responsive pleading [Doc. 142], the District Court adopted the undersigned Magistrate Judge's recommendation to deny EEOC's request for leave to file an amended complaint, adding class allegations, etc. Thus, there is no class action relief being pursued in this lawsuit.

[3] The Court refers to the damages calculation at issue as one for backpay. It may, at times, be considered or referred to by the parties as back pay and front pay.

information from the EEOC, via written discovery, EEOC refused to respond.[4] [Doc. 111, at 5; Doc. 75, Ex. 2, at 32.] All of these failings increased BAQ's costs and fees, and prolonged pretrial proceedings in violation of the Civil Justice Reform Act, 28 U.S.C. § 171, *et seq.*

EEOC contends that while there are differences in the parties' backpay calculations for Fernandez, such differences "invariably happen[] in every employment case. Differences over back-pay, however, are for a jury to decide; they are not a basis for sanctions." [Doc. 142, at 2.] Essentially, EEOC seeks to convince the Court that these differences are "no big deal," and denies Defendant's accusation that EEOC's initial disclosure calculations were false or made without reasonable inquiry in accordance with Rule 26(g).

## **Discussion**

### I.   **RULE 26(g)**

Rule 26(g) ("Signing Disclosures and Discovery Requests, Responses, and Objections") requires that every disclosure made under Rule 26(a)(1) (required initial disclosures) or (a)(3) (pretrial disclosures), and every response to discovery be signed by at least one attorney of record. "By signing, an attorney or party certifies that to the best of the person's knowledge, information and belief formed after a reasonable inquiry," the disclosure is complete and correct when it was

---

[4]The Court considers all pertinent circumstances in analyzing Defendant's request for sanctions for alleged violations of Rule 26(g). Indeed, on November 20, 2012, the Court explicitly advised EEOC of its improper communications with nonparty employers, when EEOC directed such employers not to comply with Defendant's properly issued subpoenas. [Doc. 69.] (EEOC now provides a different explanation regarding what it communicated to the nonparty employers along with its reasons for doing so. [Doc. 142, at 6 n.4].) The Court stated that while it could issue an order to show cause why sanctions should not be awarded on this ground alone, the Court elected not to do so. However, the Court cautioned EEOC about its improper communications and advised EEOC that it risked sanctions if it continued to engage in such conduct. [Doc. 69, at 11.] With respect to Defendant's allegation that EEOC failed to properly respond to discovery requests, the Court addressed this matter earlier as well. On January 25, 2013, the Court granted in part and denied in part Defendant's motion to compel discovery responses, and in doing so, awarded attorney's fees to Defendant as a sanction against EEOC for its meritless objections that unnecessarily prolonged discovery proceedings. [Doc. 147, at 40.]

made, a discovery response is consistent with the rules and warranted by existing law, such response is not interposed for any improper purpose, and such response is neither unreasonably nor unduly burdensome or expensive, considering the needs of the case, prior discovery, etc. Fed. R. Civ. P. 26(g)(1)(A) and (B).

The 1983 advisory committee notes to Rule 26(g) explain an attorney's duties under this rule.  The comments provide that "Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37."  Further, Rule 26(g) "is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions."  Rule 26(g) provides a "deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection."  In other words, when an attorney certifies the legitimacy of the request, he or she is affirming that the request is reasonable and necessary and proportional to the needs of the case.  When the attorney signs a response, he or she certifies she or he made a reasonable inquiry into the accuracy of the information or documents that were produced.

Rule 26(g) further contemplates sanctions when an attorney provides improper certification.

> **Sanctions for Improper Certification.**  If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g)(3).

However, Rule 26(g) and the certification duty is not meant to discourage or restrict necessary and legitimate discovery.  "The rule simply requires that the attorney makes a reasonable

inquiry into the factual basis of his response, request, or objection." If an attorneys violates Rule 26(g) standards, that rule "*mandates* that sanctions be imposed." (emphasis added.) The nature of those sanctions "is a matter of judicial discretion to be exercised in light of the particularly circumstances." Fed. R. Civ. P. 26(g) advisory committee's notes (1983 amendments).

A number of courts have addressed Rule 26(g) requirements and the sanctions provision. Perhaps the best discussion of a party's obligations under Rule 26(g) appears in the seminal decision, Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354 (D. Md. 2008), authored by Judge Paul W. Grimm, a nationally respected former Chief Magistrate Judge, and now Article III Judge of the Baltimore, Maryland United States District. In Mancia, Judge Grimm examined the parties' discovery responses and objections. In that case, the defendants' failure to particularize their objections to discovery requests and, instead, reliance on "knee jerk" rote objections, suggested probable violations of Rule 26(g) and of the attorneys' duty to conduct a "reasonable inquiry" before setting forth objections. The duty to make a "reasonable inquiry" under Rule 26(g) is satisfied if the attorney's investigations and conclusions drawn therefrom "are reasonable under the circumstances." Id. at 357. The same objective standard similar to that imposed by Rule 11 applies. Id. "Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances." Fed. R. Civ. P. 26(g) advisory committee's notes (1983 amendments).

Judge Grimm explained that historically, significant discovery abuse led to the need for more "aggressive judicial control and supervision" of discovery. Indeed, the Civil Justice Reform Act and the subsequent amendments to the Federal Rules of Civil Procedure in 1993, were enacted, in part, to curb discovery abuse. Judge Grimm further noted that sanctions for discovery abuses were warranted because sanctions act as a deterrent. Id. In Mancia, the Court emphasized that:

> Rule 26(g) charges those responsible for the success or failure of pretrial discovery – the trial judge and the lawyers for the adverse parties – with approaching the process properly: discovery must be initiated and responded to responsibly, in accordance with the letter and spirit of the discovery rules, to achieve a proper purpose (*i.e.*, not to harass, unnecessarily delay, or impose needless expense), and be proportional to what is at issue in the litigation, and if it is not, the judge is expected to impose appropriate sanctions to punish and deter.

Id. at 360.

> A lawyer ... who is evasive or incomplete in responding to discovery, or pursues discovery in order to make the cost for his or her adversary so great that the case settles to avoid the transaction costs, or who delays the completion of discovery to prolong the litigation in order to achieve a tactical advantage, or who engages in any of the myriad forms of discovery abuse that are so commonplace is, ... hindering the adjudication process, and making the task of the "deciding tribunal not easier, but more difficult," and violating his or her duty of loyalty to the "procedures and institutions" the adversary system is intended to serve.  Thus, rules of procedure, ethics and even statutes make clear that there are limits to how the adversary system may operate during discovery.

Id. at 362-63 (internal citations omitted).

While Rule 26(g) violations mandate sanctions, a court must still approach the question with caution and circumspection in determining if an attorney or party violated the rule without "substantial justification."  *See, e.g.,* Grider v. Keystone Health Plan Central, Inc., 580 F.3d 119, 139-140 (3d Cir. 2009) (court compelled to reverse imposition of sanctions under Rule 26(g) where trial judge failed to analyze the "substantial justification" standard expressly articulated in Rule 26(g)).  In Tolerico v. Home Depot, 205 F.R.D. 169, 175-76 (M.D. Pa. 2002), the court explained that:

> "Substantial justification" for the failure to make a required disclosure has been regarded as justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.  The test of

6

> substantial justification is satisfied if there exists a genuine dispute
> concerning compliance.

The question is whether the attorney who signed the certification made a "reasonable inquiry" into the facts supporting the disclosure. An attorney's signature certifies that "the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to [her] that are responsive to the discovery demand." Stated differently, the Rule 26(g) certification, like the assurance attributed to Abraham Lincoln, is that the attorney's word is the attorney's bond. "The certification speaks as of the time it is made. The duty to supplement discovery responses continues to be governed by Rule 26(e)." Fed. R. Civ. P. 26(g) advisory committee's notes (1983 amendments).

A court need not find bad faith on the part of the attorney or party before assessing sanctions under Rule 26(g). St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 516 (N.D. Ia. 2000). It is sufficient to conclude that the attorney made the certification without substantial justification. If a violation of Rule 26(g) is found without substantial justification, imposition of sanctions is mandatory. Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. 614, 638 (D. Colo. 2007) (internal citation omitted). Therefore, the Court must do more than just find a violation; it must conclude that there was no substantial justification for the violation.

In S2 Automation LLC v. Micron Tech., Inc., 2012 WL 3656454, at *31 (D.N.M. Aug. 9, 2012) (unpublished), the New Mexico District Court advised that the inquiry in determining whether an attorney complied with Rule 26(g) obligations can be fact intensive. Indeed, the advisory committee notes to Rule 26(g) provide that the standard of substantial justification is "heavily dependent on the circumstances of each case." In S2 Automation, the Court stated that it may be necessary to examine the following relevant circumstances:

(i) "[t]he number and complexity of the issues"; (ii) "[t]he location, nature, number and availability of potentially relevant witnesses or documents"; (iii) "[t]he extent of past working relationships between the attorney and the client, particularly in related or similar litigation"; and (iv) "[t]he time available to conduct an investigation."

Id. (citing 6 J. Moore, Moore's Federal Practice, § 26.154[2][a], at 26–615 (3d ed. 2012)).

## II.    ANALYSIS

### A.    Computation of Backpay Damages for Fernandez:

In order to determine whether EEOC violated provisions of Rule 26(g), e.g., failed to make reasonable inquiry about the Fernandez's approximate backpay damages without substantial justification, the Court examines  how the parties arrived at the differing computations, what evidence supported the calculations, discovery of such information, and all other related circumstances.  As noted above, this is a fact-intensive inquiry.

In 2007, Fernandez, an assistant branch manager for a BAQ branch bank, earned $38,172.37 in total compensation, according to her 2007 W-2 form, including incentive compensation of $6191.17.  [Doc. 111, at 3; Ex. 5.]  BAQ terminated Fernandez, effective March 14, 2008, for an alleged banking policy violation. [Doc. 111, Ex. 4.] The termination notice, dated March 2008, indicates that Fernandez's semi-monthly salary/rate was $1,458.41/$16.82 (hour).  [Id.] This notice further states that Fernandez's annual salary in 2008, would have been approximately $35,000 ($1,458.41 x 24). [Id.]

According to BAQ, by July 20, 2008, Fernandez was making an annual salary of $36,920.00 at Destination Maternity Corp., a subsequent employer.  Thus, because Fernandez's annual salary as of July 2008 was higher than her 2008 salary with Bank of Albuquerque, Defendant argues that Fernandez cannot receive backpay damages for any period after Fernandez voluntarily resigned from Destination Maternity on January 31, 2009.  BAQ contends that Fernandez's damages can only be

8

the difference between what she would have earned at BAQ, less her earnings at Destination Maternity, until Fernandez's earnings at Destination Maternity exceeded her projected Bank of Albuquerque salary. BAQ provides possible scenarios, with a percentage increase or some incentive pay, and a resulting range of backpay damages from $5,694.31 to $8,394.31. [Doc. 111, at p. 8, Ex. 8.]

EEOC's representation of damages are startlingly different. It contends that the 2007 and 2008 BAQ salaries, based on Fernandez's W-2 forms, compel higher damage calculations. For 2007, the EEOC estimates the annual salary was $39,909.73 (from "social security wages"), rather than $38,172.37 (from "wages, tips, etc."). [Doc. 142, at 3.] For 2008, EEOC looked at Fernandez's actual earnings of $8,323 on her W-2, for the 10-11 weeks of 2008, prior to her termination on March 14, 2008, and arrived at an hourly rate of $19.27. In reaching this figure, EEOC calculated that Fernandez had 54 paid work days in 2008, at 8 hours per day, that resulted in the hourly rate of $19.27. EEOC added $3 to the hourly rate (a factor of 15.5%) to account for an estimated benefits package, thereby arriving at an hourly rate of $22.27, to estimate the 2008 annual salary of $46,321.60. [Doc. 142, at 5, Ex. A.]

The Court acknowledges that the parties arrived at different figures for Fernandez's 2007 and 2008 annual salaries at BAQ and that the parties used two different figures from Fernandez's W-2s.[5] Further, the Court cannot determine the validity of EEOC's 2008 projections, including the addition of $3.00 to the hourly rate for an estimated benefits package. Nor does the Court know when the EEOC first advised BAQ of this computation, including estimated benefits or if the EEOC

---

[5]The social security wages, as identified in an employee's W-2 represent total income; and that is the correct amount that should be considered. BAQ's reliance on "wages, tips, etc." is misplaced.

provided the detailed breakdown of its damages calculation to BAQ, prior to briefing the issue in its response to the motion.

Fernandez's projected 2008 annual salary at BAQ impacts the backpay calculation. However, more importantly, for purposes of this motion, the Court has significant concerns over how EEOC calculated Fernandez's alleged total backpay damages, from 2008 through present.  In addition, the Court is troubled by the circumstances surrounding EEOC's disclosures of backpay damages to BAQ, in view of requirements that a party make its initial disclosures as to damages calculations early in the litigation and without the need for a discovery request, and in light of the requirement that a party must supplement its discovery disclosures and responses under Fed. R. Civ. P. 26(e).

In reaching the conclusion that EEOC violated provisions of Rule 26(g)'s certification requirements, the Court first examines Fernandez's work history at BAQ and her subsequent/current employment.  The Court next reviews EEOC's damage calculations, as briefed in its response. Finally, the Court looks at the discovery proceedings with respect to EEOC's disclosures of Fernandez's alleged backpay damages and EEOC's certification of disclosures and responses.

### 1.    *Fernandez's Work History*

Fernandez was employed at BAQ for more than three years before she was terminated on March 14, 2008. [Doc. 142, Fernandez Aff., at ¶ 1.] Fernandez was unemployed for about six weeks, until Destination Maternity hired her on April 28, 2008, as an Assistant Manager.  Fernandez earned an hourly rate of $11.00 and an annual salary of $22,880.  On July 20, 2008, Destination Maternity promoted her to a Store Manager, at an annual salary of $36, 920.  She held that position until January 30, 2009, when she resigned to accept a position with Rio Grande Credit Union ("RGCU"). [Id., Fernandez Aff., at ¶ 2.]

10

Fernandez took a cut in pay in accepting the Teller Supervisor position at RGCU, but explained she wished to return to her banking career, work closer to home, and perform work that was physically less demanding than her job at Destination Maternity. [Id., Fernandez Aff., at ¶ 3.] She immediately started work on February 2, 2009 at RGCU, and her 2009 annual salary there was $28,999.88.  [Id., Fernandez Aff., at ¶ 4.]

In mid-2009, Fernandez encountered serious family illnesses, and her sister died unexpectedly.  The following year, Fernandez's husband also died of cancer, and due to these personal losses, Fernandez resigned her full time job at RGCU "to grieve, take care of my husband's estate, to help care for my mother who was ill with diabetes and heart conditions, and to continue care for my father, [who became ill with lung cancer in November 2009, and was worsening.]" Fernandez's father died in June 2010, and she remained off work until September 14, 2010.  [Id., Fernandez Aff., at ¶ 5.] Thus, she was voluntarily unemployed for 7.5 months in 2010.

That entire period of unemployment was unrelated in any way, to her separation from employment at BAQ.  On September 14, 2010, she returned to work at RGCU on a part time basis at an hourly rate of $13.55.  She felt she could only do part time work, based on her family circumstances.  Again, the decision to take part time work was a personal decision, unrelated to any alleged conduct by BAQ.

As of January 22, 2013, the date Fernandez signed the attached  affidavit, she states that she continues to work as a Teller II at RGCU, on a part time basis, at an hourly rate of $13.55 per hour. [Id.] She further states she works about four days per week, from between 28-30 hours per week. Full time work was available to Fernandez but, due to circumstances unrelated to BAQ, she opted not to work full time.  She did not apply for either of the two vacant Teller Supervisor positions at

RGCU in 2011, because she was only aware of one position, and she did not have adequate caregiver assistance for her mother to apply for the other.  [Id., Fernandez Aff., at ¶ 6.]

In sum, Fernandez was out of work for six weeks in 2008, before obtaining employment with Destination Maternity.  She worked at Destination Maternity until the end of January 2009.  She obtained full time employment at RGCU, from February 1, 2009, for about eleven months.  She earned more money at Destination Maternity, but again, due to circumstances unrelated to BAQ, chose to accept a lower paying jog at RGCU.  Fernandez resigned from RGCU in January 2010, for personal and family reasons, and therefore, was off work for about 9-10 months.  In mid-September to the present, she returned to work on a part time basis at RGCU, a period of about two years and four months.

BAQ does not agree with all of the specifics concerning Fernandez's above-described work history.  Some of those difference are discussed in subparagraph 3 below.

### 2. *EEOC's Damages Calculations for Fernandez from 2008 through 2011*

As stated, EEOC arrived at Fernandez's projected annual salary at BAQ of $46,321.60[6] for 2008.  BAQ then multiplied this annual salary by 3.2 years, specifically noting that it reduced the number of total years by .8 (10 months) for the period Fernandez did not work in 2010, due to family illnesses and deaths.  By multiplying the projected annual salary by 3.2 years to reach the total income Fernandez would have earned at BAQ for work from 2008 through 2011, EEOC assumes that Fernandez worked full time for those 3.2 years subsequent to her employment with BAQ.  However, the facts demonstrate that she did not, and the decision not to work was unrelated

---

[6]EEOC, at one point, inadvertently stated that the annual salary was $42,321.60 ("$22.27/hr x 40 hrs/wk x 52 wks/yr = 42,321.60") [Doc. 142, at 5], thereby causing the Court to check its calculation, which actually should have resulted in $46,321.60 for the projected 2008 salary at BAQ.

to any act or omission by Defendant.  In other words, EEOC calculated as lost pay, amounts as if Fernandez was working and would have continued to work full time.  This is a significant defect in EEOC's calculation that EEOC could not have overlooked or ignored.  Out of those 3.2 years, for example (from September 14, 2010 to January 2013), Fernandez elected and continues to elect to work part time at RGCU.

Notwithstanding this glaring problem with EEOC's calculation, EEOC estimated that from 2008 through 2011, Fernandez would have earned a total of $148,229.12 for <u>full time work</u> ($46,321.60 x 3.2 years), had she remained at BAQ.  EEOC then deducted $21,684.36 in earnings from Destination Maternity for 2008, and $4,914.54 in earnings from Destination Maternity in 2009. Fernandez deducted RGCU earnings of $25,704.60 in 2009, $7,163.71 in 2010, and $7,758.08 in 2011.  The total deduction for these interim earnings was $67,225.29.  After subtracting that figure from $148,229.12, EEOC computed backpay to be $81,003.83 ($148,229.12 minus $67,225.29). When EEOC certified this information, it represented to Defendant that after a reasonable inquiry, this was a true and correct representation of projected damages for Fernandez.

EEOC updated that calculation in late October 2012, when it served "responses to Defendant's first set of interrogatories. . . .," including a revised calculation of Fernandez's backpay. It is not clear if EEOC served these amended responses in accordance with requirements of Rule 26(e).  EEOC did not identify these responses as supplemental responses. [Doc. 142, Ex. D.] EEOC stated the following in its amended response to Interrogatory No. 11:

> As for back pay, the EEOC states that . . . Fernandez loss [sic] the benefit of sick time, vacation time, long term disability, and Defendant's contribution to [her] retirement fund (where [she] contributed 6% and the company matched $2 for every dollar [she] contributed).  As such, Ms. Fernandez's back pay is currently calculated at $161,628.51, which includes mitigated earnings from 2008 to present of $95,988.06; benefits she would have obtained but

for Defendant's discriminatory conduct, in the amount of $6,985.00;
and interest of $8,873.29.

[Doc. 142, Ex. D, at 19 (in response to Interrogatory No. 11).] The Court does not know, from this description, how exactly EEOC arrived at the calculation of $161,628.51 from the original figure of $148,229.12 ($148,229.12 + 6,985.00 + 8,873.29 = $164,081.47, not $161,628.51), or how it arrived at the mitigated earnings from 2008 "to present" of $95,988.06, instead of the earlier $67,225.29, other than it appears that EEOC added in RGCU part time earnings through early January 2013.[7]   According to EEOC, Fernandez is entitled to backpay of about $81,498 ($161,628.51 - 95,988.06 + 6,985.00 + 8,873.29 = $81,498.74) under the amended computation, instead of the original estimate of $81,003.83.

As stated above, of most significant concern in EEOC's calculation is its unfounded presumption that Fernandez would have worked full time with BAQ for all ensuing years, had she not been terminated in March 2008.  The facts do not bear out Fernandez's full time work after she left BAQ.  Thus, EEOC urges us to imagine that even though she did not actually work full time during those years after BAQ no longer employed her, she would have worked full time had she stayed at BAQ.  In reaching its revised figure of approximately $81,500 in backpay, benefits and interest, EEOC relied on a full time annual salary with BAQ from 2008 through late 2012.  This is unsupported by Fernandez's subsequent part time employment from September 14, 2010 to January 2013.

### 3.    *History and Discovery Regarding Fernandez's Backpay Calculations*

The undersigned Magistrate Judge earlier observed that "EEOC had administrative control of at least some of the three individuals' complaints for more than four years, or as early as 2008."

---

[7]Interestingly, the revised backpay figure is almost identical to the first calculation.

[*See* Doc. 150, at 4.] As early as EEOC's December 16, 2010 determination, EEOC found reasonable cause to find that respondent discriminated against Fernandez and a "class of women." [*See* id.] Thus, EEOC and its attorneys, along with counsel Sylvertooth, who acted as an EEOC investigator in about 2008-2010, were well aware of Fernandez's charges, the circumstances of her employment, and some of her employment subsequent to being terminated.

According to Defendant, it produced information to EEOC in 2008, concerning Fernandez's compensation during the EEOC investigation of Morantes's charge. [Doc. 111, Ex. 4.] At some point during the time frame EEOC held a conciliation as to Morantes's charges, that Fernandez attended, although, according to Defendant, Fernandez failed to file a lawsuit before the expiration of her deadline to do so. On January 13, 2011, Defendant states it requested documents from EEOC showing whether Fernandez or any of the pertinent individuals worked full time or part time during the relevant time frame. [Doc. 111, Ex. 1.]

On January 21, 2011, EEOC responded that it did not understand Defendant's request. Mr. Sylvertooth, then acting as an EEOC investigator, informed BAQ that it (BAQ) had an opportunity to discuss mitigation of damages with each charging party during conciliation efforts. Moreover, according to Sylvertooth, he advised BAQ of the charging parties' mitigating measures. Sylvertooth further informed BAQ that to the extent respondent's counsel wanted supporting documents from the file, the request would be denied. [Doc. 111, Ex. 1 (Jan. 21, 2011 email from Sylvertooth to BAQ counsel).] Thus, it is clear that EEOC resisted providing documentation to support its damage claims.

It is unknown why EEOC refused to produce documents pertaining to backpay damages in the parties' attempts to conciliate the matter. While conciliation efforts and strategies might be subject to confidentiality concerns, alleged backpay damages and how those calculations were

15

derived would not be protected and would be critical to settlement attempts.  EEOC's refusal to provide the allegedly supporting documents is simply inexplicable.

In December 2011, after conciliation efforts failed, EEOC filed this lawsuit on behalf of Fernandez and the other two women. [Doc. 1.] By filing the lawsuit, EEOC had mandatory initial disclosure obligations.  Rule 26(a)(1)(A)(iii) mandates that a party, "without awaiting a discovery request," provide to opposing parties, "a computation of each category of damages claimed by the disclosing party" and all documents or other evidentiary material, unless protected from disclosure by a privilege, on which each computation is based.  The initial disclosure provision dovetails with the exclusionary sanction of Rule 37(c)(1), so that a party is not permitted to use documents it failed to disclose initially or supplement.  Baicker-McKee, Janssen, and Corr, <u>Federal Civil Rules Handbook</u> (2013 ed.), at p. 751.  Initial disclosures must be in writing, signed, and served.  The signature constitutes certification that the disclosure is complete and accurate under Rule 26(g)(1). <u>Id.</u>, at p. 753.

On June 18, 2012, EEOC provided initial disclosures to BAQ, including the following information:

> <u>Fernandez</u>
> Back pay and front pay: at time of discharge (3/14/08): (rate of pay $22.27/hr. x40 x52=$46,321.60/yr. + expected raises each year and benefits). $46,321.60 x 3.2 = $148,229.12.
> Less interim earnings through 2011: $67,225.29 (deduct time period 1/10-10/10 - not working due to deaths in family) = $81,003.83
> Pain and suffering, embarrassment, loss of reputation and emotional distress to be determined by the jury.

In these initial disclosures, EEOC stated it sought front pay for Fernandez to be determined "(or reinstatement); loss benefits to date; compensatory damages and punitive damages and injunctive relief."  "Backpay represents the difference between the actual earnings and the amount that the

individual would have earned absent the discrimination, plus pre-judgment interest." [Doc. 109, Ex. 2, at 6.] While the initial disclosures stated that documentation, not privileged or protected, on which such computation was based were available for inspection and copying, there is no statement by the EEOC as to what documents these were or if they were produced for inspection.  Indeed, it appears that these were the very documents earlier requested, but that EEOC declined to produce.

EEOC noted it had not completed its backpay analysis and that some of the information relating to the analysis was in the possession of Defendant.  EEOC reserved the right to supplement its damages calculations.  The initial disclosures were signed by EEOC Senior Trial Attorney, Guy Knoller, who later retired.  Attorneys Sylvertooth and Medina entered appearances on behalf of the EEOC in July 2012.

Notably missing from the first Fernandez backpay calculation is an explanation for the 3.2 year (full time) multiplier.  Nor is there mention about Fernandez's present part time work as of the date of Attorney Knoller's June 2012 certification.

On July 5, 2012, EEOC provided a first supplement of its initial disclosures. [Doc. 111, Ex. 6, at 7.]  Fernandez's backpay calculation was exactly the same as that provided in the initial disclosures, with the exception of an explanatory footnote about the .8 of a year Fernandez did not work.  However, EEOC provided some supporting documentation, including a January 15, 2009 letter of resignation, signed by Fernandez, and submitted to Destination Maternity.  EEOC also provided salary information from Destination Maternity for 2008 and 2009.  However, no documents were provided for Fernandez, as of this date, about salary information from early 2009- 2012.

On July 17, 2012, EEOC provided a second supplement to the initial disclosures.  Both Rule 26(g) supplements were signed and certified by Attorney Knoller. [Doc. 109, Ex. 3, at 7.]  The

computation for Fernandez remained the same.  It does not appear that additional documentation was provided to Defendant regarding the manner in which EEOC calculated backpay damages.

On September 24, 2012, BAQ served EEOC with written discovery seeking damages information. [Doc. 75, Ex. 2, at 32.] In response, EEOC Attorney Sylvertooth provided some information, but also declined to provide information based on multiple objections.  Attorney Medina's name appears on the responses as well.   BAQ requested all documents and communications pertaining to each charging party's subsequent employer, including check stubs, account statements, tax forms, W-2s. [Doc. 75, Ex. 2, at 31.] BAQ further requested similar documents for each charging party's "source of income," if that income was not already included in the previously described document request. [Id., at 32.]

EEOC's October 29, 2012 responses included objections, some of which were based on confidentiality concerns of documents used in conciliation.  EEOC objected to producing tax forms, 1099s, and account statements that were private and confidential and that contained information other than earnings.  EEOC objected to producing documentation of unemployment or social security benefit information.  EEOC then stated it would provide the responsive documents "by the least intrusive means, which identify the subsequent employers of Ms. Fernandez . . . ." [Id.] It is unknown what was produced.

EEOC found the similar document request for other source of income information to be "completely incomprehensible and unintelligible."  Because EEOC could not figure out the relationship between the two requests or what the second request sought, EEOC stated there were no responsive documents. [Id., at 33.]

EEOC should have provided this type of information to BAQ, relating to backpay damages for Fernandez, without any request at all.  It should have been part of initial disclosures.  The Court,

18

in earlier granting Defendant's motion to compel this type of information, found EEOC's objections specious and, accordingly, grounds to award attorney's fees to Defendant. [Doc. 147.]

EEOC's objections to information that should have been produced earlier and without any request at all were not made for "proper purposes." The objections caused needless delay and expense to BAQ. *See* Fed. R. Civ. P. 26(g)(1)(B). This is particularly true in view of the lengths BAQ had to go to in order to obtain accurate subsequent employer information for Fernandez and EEOC's attempted obstruction of those efforts.

Apparently, because EEOC did not automatically provide all of the mandatory damages-related disclosures at this point, on October 10, 2012, BAQ served Rule 45 subpoenas on Fernandez's subsequent or current employers seeking her employment and earnings records, including W-2s, information about hours worked, and employment status changes. EEOC, without court authorization and without seeking a protective order, wrongfully instructed recipients of the subpoenas duces tecum not to obey the court authorized subpoenas and not to produce the requested information.

EEOC ultimately, and after the fact, sought to quash the subpoenas, incorrectly alleging that it did not receive proper notice of the subpoenas. [Doc. 42.] Moreover, on October 23, 2012, in its motion to quash, EEOC stated "numerous avenues were available to the Defendant to obtain this relevant information . . . , but issuing third-party subpoenas to Fernandez's . . . current and former employers, hoping for the opportunity to engage in a fishing expedition," was not one of them. [Doc. 42, at 13.]

What EEOC failed to note is that it moved to block Defendant's access to the information at every turn. Indeed, this was information EEOC should have automatically produced without the need for a request. EEOC was obstructive in not producing the relevant information to BAQ months

19

earlier.  Just six days later, on October 29, 2012, EEOC again could have provided the requested information in discovery responses.  Instead, EEOC boldly resisted discovery, asserting meritless objections.  So, on the one hand, EEOC stated BAQ had many avenues to get the relevant information, and on the other hand, EEOC interfered or resisted in every way it could in providing basic, mandatory disclosures.  At times, EEOC informed BAQ it could get the information through depositions, but during Fernandez's deposition when she was unable to answer many questions regarding her backpay damages, EEOC suggested that she need not respond.

For example, in Fernandez's November 16, 2012 deposition [Doc. 11, Ex. 2, attached portions of Fernandez Dep. Transcript], Fernandez provided vague or non-responsive answers to proper questions.  With EEOC's attorney's attempts to coach her into not responding at times, the damages information remained elusive.  Fernandez testified that she did not really know what records existed concerning the jobs she applied for after BAQ terminated her.  When asked if she provided any such materials to EEOC pertaining to her job search, EEOC counsel objected and instructed her not to answer if she provided that information to an EEOC attorney. [Ex. 2, at p. 122.] Fernandez testified that she "jotted down notes" regarding her efforts to obtain employment and that she thought she gave them to EEOC Attorney Knoller. [Ex. 2, at p. 123.] BAQ counsel asked Attorney Medina for the documents; Attorney Medina stated she would provide the notes if they were covered by a discovery request and the EEOC could locate them.  Again, the documents should have been produced without the need for a request.

The vague, deceptive, or simply inaccurate responses continued.  Fernandez testified that as a manager at Destination Maternity, she made about $30,000 to $32,000 a year. [Doc. 93, Ex. 3, Fernandez Dep. at 125.] The correct response, as documented by employment records, was $36,920.00. [Doc. 111, at 6; Ex. 7.]

Fernandez also testified that she took the job with Destination Maternity in June 2008, some three months after her termination with BAQ. [Doc. 93, Ex. 3, at 124.] Instead, she began working at Destination Maternity on April 28, 2008, just six weeks after BAQ terminated her.  Who better than Fernandez to know the accurate responses to these questions, or her attorneys who had been working with her claims since perhaps as early as 2008?

In response to questions in her deposition, Fernandez testified that she believed it was appropriate to request full time back pay, even if she requested part time work at the credit union. Her attorneys clearly were apprised of this issue, *i.e.,* the question of how to calculate her alleged backpay damages in light of her years of part time work.  Yet, EEOC counsel repeatedly signed and certified disclosures that damages should be calculated on a full time basis.  In addition, Fernandez testified that she believed it was fair to compute her alleged backpay damages in terms of the difference in what she made at Destination Maternity and RGCU, even though she voluntarily took a job with a lower salary at RGCU. [Doc. 93, Ex. 3, at 124.]

When asked if EEOC personnel, other than an EEOC attorney, advised Fernandez of her duty to mitigate damages, EEOC counsel objected on the basis of a privilege.  Fernandez then responded, "I don't know."  BAQ counsel inquired if anyone at EEOC, earlier than May 2011, informed Fernandez she needed to find work to mitigate a claim for damages.  Fernandez was vague, if not evasive, stating that when she met with EEOC personnel, they did not talk "about damages or amounts or any of that." [Doc. 111, Ex.  2, at 161.] Fernandez believed that anything she told EEOC was privileged, even beginning as early as March 2008.  Counsel for EEOC did not state otherwise at the deposition. [Id., at 210.]

Documentation of discovery efforts and depositions in this case demonstrate that EEOC repeatedly refused to provide evidence supporting Fernandez's alleged backpay and related

21

computations.  On November 19, 2012, the date of EEOC's reply in support of its motion to quash subpoenas, Attorney Silvertooth certified that EEOC already produced all of the documents relevant to mitigation.  "The EEOC has already produced all relevant mitigation information to the Defendant.  Defendant, however, seeks other information that is not relevant to this case." [Doc. 65, at 9-10.]

This was not accurate.  As of November and December 2012, Defendant still was in the process of being forced to get relevant information from Fernandez's subsequent and current employers.  BAQ had to depose a corporate representative from RGCU in order to get accurate information concerning Fernandez's possible promotion opportunities and her working hours.  While Fernandez provided an affidavit in January 2013, stating under oath that she currently worked about 4 days per week and between 28-30 hours a week [Doc. 142, Fernandez Aff.], pay statements from May into August 2012 show that Fernandez worked only two to three days a week during three of those pay periods (18.75 hours; 25.83 hours; 22.03 hours; 50.65 hours). [Doc. 111, Ex. 10.]

The RGCU representative testified at a deposition in late November 2012, that Fernandez passed up several opportunities for comparable re-employment as a supervisor/manager at RGCU. She did not apply for available positions. [Doc. 111, Ex. 9.]

Moreover, contrary to EEOC's assertion that it had produced all relevant information regarding mitigation as of November 19, 2012, Defendant finally obtained employment records from Destination Maternity in December 2012, with the accurate information of dates of employment and salary.  Indeed, as far as the Court can determine, it was not until EEOC's January 2013 response to this motion for Rule 26(g) violations that EEOC provided detailed explanations as to how it arrived at its damages calculations for Fernandez.

22

**B.**   __EEOC Certifications Regarding Fernandez's Estimated Backpay__:

This hotly disputed battle over producing Fernandez's full earnings records and information regarding calculations related to her backpay damages should never have occurred.   EEOC was required to supply that information promptly and to have supplemented any incomplete or inaccurate information.  The information should have been automatically disclosed.

As noted by the editors in __Federal Civil Rules Handbook__, at p. 752, parties must make their initial disclosures based on the information readily available.  *See* Fed. R. Civ. P. 26(a)(1)(E) (party is not excused from making its disclosures because it has not fully investigated the case).  The Court sees no reason why EEOC's lengthy contact with Fernandez during its investigation did not make "readily available" the documents regarding Fernandez's backpay damage calculations, including full and accurate salary information, W-2s from subsequent employers, hours of work (part time vs. full time), promotional opportunities with other employers, etc.  Clearly, EEOC had documentation of backpay damage calculations for purposes of conciliation, but Sylvertooth refused to produce that information to BAQ when requested.

EEOC supplied no explanation why it did not promptly produce all such information, nor did it describe the requested information that perhaps was not in its possession or control.  Instead, the record is full of EEOC's objections to producing such information based on unfounded privileges, improper attempts to preclude discovery of relevant pay records from subsequent employers, unexplained calculations, and incomplete testimony by Fernandez as to her own earning and employment data.

EEOC's attorneys' signatures on multiple disclosures and responses to written discovery requests related to damages calculations for Fernandez, certify, that to the best of those attorneys' knowledge and information, the documents/responses were complete, correct and served for proper

purposes. *See* Fed. R. Civ. P. 26(g)(1)(A) and (B).  The Court concludes that such disclosures and responses were not complete, not always correct, and not served for proper purposes in every case.

Instead, the Court determines that some of EEOC's disclosures, responses, and objections were provided and imposed for purposes of blocking Defendant's access to discoverable information, and that conduct resulted in causing needless expense for the opponent and delay.  In addition, the Court finds that EEOC did not make careful and reasonable inquiries before providing damages calculations when such calculations did not take into account Fernandez's two plus years of subsequent part time work.  Thus, the calculations, based on projected full time work, that EEOC repeatedly provided to BAQ, were significantly overstated, inaccurate, and of no assistance to the parties in attempts to resolve this matter.

In view of EEOC's inaccurate disclosures, evasive responses, and objections to producing basic damages calculations, along with Fernandez's vague and incomplete deposition testimony, the Court concludes that EEOC's attorneys did not make reasonable efforts to assure that Fernandez provided all the information and documents available to her that were responsive either to discovery or part of mandatory initial disclosures.  Moreover, based on Fernandez's deposition testimony, it appears that EEOC did not adequately inform Fernandez of her duty to mitigate damages – a duty set forth in EEOC's own Enforcement Guidance documentation, stating that a "[c]omplaining party has a duty to mitigate his/her damages.  A complaining party may not recover damages for any harm that she could have avoided or minimized with reasonable effort."  EEOC Enforcement Guidance: Compensatory and Punitive Damages Available under § 102 of the Civil Rights Act of 1991. Fernandez, for example, stated she did not discuss with EEOC anything "about damages or amounts or any of that."

24

EEOC's use of the 3.2 year multiplier of full time work confirms that EEOC provided the damages calculations without any real reflection or concern for its obligations under the rules governing discovery.   EEOC clearly was aware of Fernandez's part time work.   It provides no explanation or justification why it would calculate backpay based on full time hours, when Fernandez did not work full time for years.   EEOC's  investigations into backpay damages for Fernandez and its conclusions drawn therefrom are not objectively reasonable under the circumstances.  *See* <u>Mancia</u>, 253 F.R.D. at 357 (duty to make "reasonable inquiry" under Rule 26(g) is satisfied if "the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances.")

There is no "substantial justification" for EEOC's continued attorney certifications that backpay damages calculations were accurate as to Fernandez's claims, when those computations were undoubtably exaggerated and inaccurate.   The Court concludes that EEOC did not provide justification "to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request."   In other words, the Court decides that substantial justification, under Rule 26(g) is not satisfied because there is no genuine dispute concerning EEOC's lack of compliance with respect to providing full and accurate backpay calculations for Fernandez.   EEOC failed to comply with its disclosure requirements.   In addition, EEOC served responses and objections to appropriate discovery requests for improper purposes.

In reaching this decision, the Court examined all of the pertinent circumstances, including the complexity of estimated backpay damages for Fernandez.   Such calculations, if based on accurate and full information, should have been straightforward, not complex.   The documents and information related to Fernandez's subsequent and current employment were limited in nature and easily available.   Pleading practice, *e.g.,* EEOC's motion to quash, was unnecessary.   EEOC, and

specifically Attorney Sylvertooth, appeared to have a longstanding working relationship with Fernandez, beginning possibly as early as 2008.  EEOC had ample time, years in fact, to work on its investigation into charges by Fernandez, including alleged backpay damages.

The Court concludes that this is the type of discovery abuse that Rule 26(g) was enacted to curb.  EEOC's attorneys did not appropriately "pause and consider" whether, based on a "reasonable inquiry" or "substantial justification" there was a factual basis for its discovery responses and objections to backpay information or for providing the inaccurate backpay disclosures it did.  Thus, Rule 26(g)(3) mandates an appropriate sanction on the attorney, the party, or both.

## III.    RULE 26(g) SANCTION

As the Court already observed, the nature and amount of sanctions "is a matter of judicial discretion to be exercised in light of the particularly circumstances."  Due process mandates that the court refrain from imposing harsh sanctions, such as dismissal or its equivalence, for a discovery violation, except when the violation is "predicated upon 'willfulness, bad faith, or [some] fault of petitioner' rather than inability to comply."  Archibeque v. Atchison, Topeka & Santa Fe Ry., 70 F.3d 1172, 1174 (10th Cir. 1995).

Here, the Court determines, in its discretion, to impose sanctions in the amount of $4,000 for EEOC's violations of Rule 26(g) certification requirements, made without substantial justification.  The Court finds such sanctions reasonable under a totality of the circumstances.  It assesses these sanctions against the party, EEOC, to deter future discovery responses and objections, and to prevent incomplete or unsupported disclosures that are not warranted by existing law, and/or that are asserted for improper purposes of causing unnecessary delay and needlessly increasing the costs of the litigation.  These sanctions must be paid by EEOC to Defendant within twenty (20) after entry of this Order.

**<u>Conclusion</u>**

The Court grants Defendant's Motion for Rule 26(g) Sanctions against EEOC, as described herein, but denies its requests that Fernandez be dismissed from this litigation or that further attorneys' fees "associated with the inclusion of Fernandez in the present case" be awarded.

IT IS SO ORDERED.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge