IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

          Plaintiff,

   vs.                                  NO. CIV 11-1132 RB/LFG

BOK FINANCIAL CORPORATION
dba Bank of Albuquerque,
BANK OF ALBUQUERQUE, N.A.,
dba Bank of Albuquerque, and
BOKF, N.A., dba Bank of Albuquerque,

          Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on "BOKF, NA's Opposed Motion for Sanctions for Failure to Respond and/or Obstruction of Deposition Testimony of the EEOC, Sylvertooth, and Snyder." [Doc. 199]. The Court considered the Motion, Response in Opposition [Doc. 212], and Reply [Doc. 221], along with all exhibits. Oral argument is not necessary.

BOKF, National Association (formerly Bank of Albuquerque, National Association, hereinafter "BAQ"), moves for sanctions for EEOC's failure to respond and/or obstruction of deposition testimony. EEOC asserts, *inter alia*, that BAQ failed to make a good faith effort to resolve this dispute before filing the motion,[1] and that all of EEOC's conduct and objections during depositions were appropriate. [Doc. 212.]

## Discussion of Instructions Not To Answer and Objections Raised

It has long been the law in the Tenth Circuit Court of Appeals and elsewhere that instructions

---

[1]BAQ set out a certification of good-faith attempt to confer in their motion, and the Court concludes BAQ made a good-faith attempt to resolve the matter before filing the motion.

not to answer during the course of a deposition are improper, save for some exceptions.  *See, e.g.*, Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995) (counsel may not instruct a deponent not to answer unless necessary to preserve a privilege, enforce a limitation on evidence directed by court, or suspend deposition in order to present motion).  *See also* Beller ex rel. Beller v. U.S., 221 F.R.D. 679, 681 (D.N.M. 2003) (*citing* American Hangar, Inc. v. Basic Line, Inc., 105 F.R.D. 173, 174 (D. Mass. 1985)).

Because deposition testimony is taken subject to objection, Fed. R. Civ. P. 30(c)(2), a defending party may state the objection, but the deponent is required to answer.  In Dabney, our circuit stated:

> Under the plain language of Fed. R. Civ. P. 30(d)(1), counsel may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to suspend a deposition in order to present a motion under Fed. R. Civ. P. 30(d)(3).[2]

Id. at 266.  Thus, any instruction given by EEOC's attorney to its deponent not to answer questions during deposition is improper unless it comes within one of the three limitations.

### A.    D'Ontae Sylvertooth's ("Sylvertooth")[3] Deposition

BAQ states that Sylvertooth's deposition was taken on February 12, 2013, at which Sylvertooth was defended by his EEOC supervisor, Rita Kittle ("Kittle"), and attorney Loretta Medina ("Medina").  According to BAQ, Kittle repeatedly instructed Sylvertooth not to answer questions. [Doc. 199, at 6.]  BAQ submitted portions of Sylvertooth's deposition for purposes of

---

[2]Rule 30 was amended and reorganized subsequent to the Dabney decision.  The pertinent parts of the rule now fall under Rule 30(c).

[3]For some of the pertinent time frame, Sylvertooth acted as an EEOC investigator; he subsequently became an attorney, and, after the lawsuit was filed, entered an appearance on behalf of EEOC. [*See* Doc. 26 (July 30, 2012 Sylvertooth entry of appearance).]

providing specific examples of EEOC's improper instructions to Sylvertooth not to answer questions.

> Q.  [By Dorwart, defense counsel]  What's your – what was your mobile phone number during the time period that you investigated the Morantes case?
>
> MS. KITTLE:  [EEOC's attorney].  I'm going to object to that question.  I think it's personal.  It's private.  It's irrelevant.  He's here as an investigator of EEOC, and I don't think you're entitled to know his private phone number . . . .
>
> MS. KITTLE:  I'm going to direct the witness not to answer that question.
>
> MS. DOWART:  [Defense counsel].  You're instructing the witness not to answer the question what his mobile phone number [was] while investigating – [?]
>
> MS. KITTLE:  I am.  That's private information.  You are not entitled to that.

[Doc. 199-1, Sylvertooth dep., at 16-17.]

Essentially, Kittle instructed Sylvertooth not to answer because the question, in her mind, was irrelevant.  The problem is that Dabney specifically precluded an instruction not to answer under that circumstance.  "It is inappropriate to instruct a witness not to answer a question on the basis of relevance."  Dabney, 73 F.3d at 266.

Rule 30 allows Kittle to state her objection for purposes of the record, but the examination proceeds and Sylvertooth responds to the question, subject to the objection. Fed. R. Civ. P. 30(c)(2). Moreover, if Kittle felt so aggrieved by the question, she could have recessed the deposition and, in accord with the District of New Mexico's  magistrate judge policy, sought an immediate telephonic hearing on this matter.  If the magistrate judge was not available, the deposition could have been terminated and Kittle could have sought a protective order under Rule 26(c).  Fed. R. Civ.

P. 30(d)(3)(A).

BAQ supplied another example of EEOC's improper instructions to Sylvertooth concerning

the job position of an employee of Defendants.

> Q.  During the first phone call when you think you asked Ms. Luttrell
> what her position was, did you ever consider that you might have an
> issue with speaking to a Bank of Albuquerque manager?
>
> MS. KITTLE:  I'm going to object to the form of the question, calls
> for the mental impressions of the investigator, it's deliberative
> process, and I will direct the witness not to answer.

[Doc. 199-1, at 29.]  The problem with the additional instruction not to answer is that the Court

previously found, on two occasions [Doc. Nos. 114, 147], that EEOC had not properly claimed the

privilege of deliberative process.  On the date of the deposition, February 12, 2013, no affidavit from

the EEOC Commissioner had been signed.  Thus, the deliberative process objection was improper,

as was the directive not to answer.

In seeking to obtain information of why the investigator found it appropriate to interview

Defendants' management-level employee, defense counsel Erica Dorwart ("Dorwart) asked:

> Q.  Did the EEOC ever instruct you regarding contact with managers
> at any point in time while you were an investigator?
>
> MS. KITTLE:  I'm going to object to the form of the question, it calls
> for internal EEOC communications.   Direct the witness not to
> answer.

Defense counsel repeated the question, and EEOC counsel stated:

> MS. KITTLE: I'm going — I directed the witness not to answer the
> question.   You're asking for internal EEOC communications, that's
> deliberative process.  I'm going to direct the witness not to answer
> the question.

[Doc. 199-1, at 29-30.]

There are two problems with this instruction.  First, the question did not ask for the particular

instruction given by EEOC to the investigator.  Rather, it simply asks for the fact of whether an instruction was given.  Secondly, as noted above, at the time Kittle instructed Sylvertooth not to answer based on deliberative process, this Court already rejected EEOC's claim of privilege. Moreover, on February 13, 2013, the date of this deposition, the EEOC director had yet to execute an affidavit properly invoking privilege.

To further understand this line of inquiry, the Court explains that BAQ sought to explore why EEOC interviewed a managerial level employee in the absence of bank counsel.  Managerial level employees have speaking authority for an employer, and their statements may bind the employer.  *See* Rule 16-402 NMRA (attorney not prohibited from communicating directly with employees of a corporation about pertinent subject matter, "except for persons having a managerial responsibility on behalf of the organization").  *See also* Weeks v. Indep. Sch. Dist. No. I-89, of Okla. County, Okla., 230 F.3d 1201, 1208-09 (10th Cir. 2000) (upholding district court's disqualification of attorney for engaging in ex parte conduct with opposing party's managerial "speaking level" employee, and also observing that Fed. R. Evid. 801(d)(2)(D) provides guidance in determining whether an employee has such speaking authority), *cert. denied*, 532 U.S. 1020 (2001).  Thus, BAQ's counsel was entitled to be present for interviews of managerial level employees.  Yet, when BAQ sought to obtain information regarding this issue, Defendants were again thwarted.

> Q.  So, in 2007, you were aware that an employer had a right to have a representative present when a managerial level employee was interviewed?
>
> MS. KITTLE:  I'm going to object to the form of the question. You're calling for his mental impression, that's deliberative process, and direct the witness not to answer.

[Doc. 199-1, at 31.]  This directive to not answer, again, violates this circuit's holding in Dabney. The deliberative process privilege was not applicable on February 13, 2013, as it had not been

properly invoked, based on this Court's prior findings.  Indeed, objections by EEOC to the Court's

finding that the privilege was not properly invoked were overruled by the trial judge.  [Doc. 180.]

Therefore, Kittle's instruction was improper.

        Defense counsel continued its best efforts to determine if EEOC's investigators had been

trained concerning managerial level interviews.

> Q.  And were you ever given any instruction when you underwent
> training at the EEOC regarding when you were obligated to notify an
> employer that you were meeting with a managerial level employee?
>
> MS. KITTLE: I'm going [to] object to the form of the question.
> You're calling for internal EEOC communications, that's deliberative
> process.  Direct the witness not to answer.

[Doc. 199-1, at 39-40.]  This question essentially called for a yes or no answer.  It sought factual

information; no privilege protects against disclosure of facts.  *See* <u>Upjohn Co. v. United States</u>, 449

U.S. 383, 395 (1981) (holding that privilege "only protects disclosure of communications" not "the

underlying facts").  Moreover, the question did not call for deliberative process.  Even if the

privilege was applicable, which this Court determined it was not, the question simply asked for facts.

Kittle's instruction not to answer was wrongfully given.

        As yet another example of an improper instruction not to answer, Sylvertooth stated that an

investigator can't "jump to a conclusion without getting the information that you need." [Doc. 199-

1, at 56.]  As a result of that answer, the bank's attorney asked.

> Q.  So, as an EEOC investigator, it would be improper to jump to a
> conclusion regarding the ultimate outcome?

Kittle again interrupted, and stated:

> I'm going to object to the form of the question.  You're now asking
> for mental impressions and that's deliberative process and direct the
> witness not to answer.

[Id., at 56-57.] Kittle's instruction not to answer was wrongfully given.  Sylvertooth already stated

that when investigating a matter, you can't "jump to a conclusion without getting the information

that you need."  Thus, the follow-up questions went directly to Sylvertooth's testimony.  It was not

invoking any deliberative process privilege, as none existed on February 13, 2013; and, to the extent

it required Sylvertooth to express an opinion, it was a question that sought to clarify what he earlier

said without objection.

     The bank's counsel also asked Sylvertooth:

> Q.  Was the focus of your investigation of the Morantes matter on sales goals?
>
> MS. KITTLE:  I'm going to object to the form of question.  You're calling for his mental impressions, that's deliberative process.  Direct the witness not to answer.
>
> MS. DORWART:  And I'm gong to remind Counsel that we've had an order from the Court in this case regarding deliberative process and the EEOC's issues to raise that and we're here pursuant to and after that Court's order.
>
> MS. KITTLE:  I'm going to remind Counsel that we have an order in the – on this deposition that says, "BOK may not inquire into thought process, mental impression, or recommendations that were made. They may freely obtain information concerning facts obtained by the investigators, steps taken, documents obtained, explanations concerning inconsistencies in documents, as well as any and all other nonprivileged information relating to the parties' claims and defenses."

[Id., at 71.] Thus, EEOC clearly knew that the Court allowed the bank to obtain factual information

concerning the steps EEOC had taken and documents obtained.  Accordingly, the question of

whether the focus of EEOC's investigation was on sales goals is well within the Court's order

authorizing it to make such inquiries.  Kittle's instruction was improper.

     With reference to documents that were prepared, BAQ's attorney asked:

> Q.  Did you ask Ms. Minoo Mostafavifar to create this spreadsheet
> for you?

Kittle again instructed the deponent not to answer:

> MS. KITTLE:  I'm going to object to that question.  It calls for
> internal EEOC communications, deliberative process, and direct the
> witness not to answer.

[Id., at 84.] The questions asked for a fact, not any deliberative process even if the deliberative process was applicable.  No privilege protects against factual disclosures.  *See* Upjohn Co., 449 U.S. at 395.  Kittle's instruction again was improper.

In an effort to have Kittle withdraw the instruction, the following exchange occurred concerning the creation of the spreadsheet:

> MS. DORWART:  That's a step in the investigation and I'm going to
> ask the EEOC to reconsider these ridiculous objections to questions
> regarding steps in the investigation.

> MS. KITTLE:  It's not a step in the investigation.  You are asking
> whether he directed her to do this.  Whether he directed her to do this
> is part of the deliberative process.  You can ask what you already
> asked about it, what it is, what it – you know, what it says, what it
> contains.  It was a step that was made.  You've already got that.
> Whether he directed it, is – is deliberative.

[Id., at 84-85.]  Kittle's dubious explanation about whether this was or was not a step in the investigation, which was a question the Court previously authorized, makes no sense.  If the spreadsheet was prepared as part of a step in the investigation, BAQ was permitted to examine the deponent about the steps taken.  Kittle's instruction directing deponent to not answer was wrongfully given.  *See* Upjohn Co., 449 U.S. at 395.  *See also* Shepard's Discovery Proceedings in Federal Court § 28.04 (3d ed.) (privilege protects disclosure of confidential communications; it does not protect disclosure of underlying facts).

Additional information concerning the accuracy of the spreadsheet appears on page 89 of

8

Sylvertooth's deposition transcript.

> Q.  Did you ever ask anyone at the EEOC to provide documents to Minoo Mostafavifar during the course of the Morantes investigation?
>
> MS. KITTLE:  I'm going to object to that question.  You're calling for internal communications within the EEOC with respect to the investigation, that is part of the deliberative process, and direct the witness not to answer.

[Doc. 199-1, at 89.]  As indicated above, the question did not ask for opinion, but whether documents were provided.  It simply called for facts relating to the investigation.  The instruction not to answer based on privilege was improper.

The Court previously ordered that the bank may "freely obtain information concerning facts obtained by the investigators."  [Doc. 114.]  As a follow up to the Court's order, BAQ asked:

> Q.  (By Dorwart) What evidence do you have showing that Pat Piper knew of a sales manipulation for Adam Schaer as of February of 2009?
>
> MS. KITTLE.  I'm going to object to the form of the question.  You're now probing his mental processes, that is deliberative process, and direct the witness not to answer the question.  You're asking him to compile the evidence for you.  He's not going to do that today.

[Doc. 199-1, at 131.]  Kittle was correct that BAQ was seeking evidence.  However, the rules of discovery freely allow this.  Much like contention interrogatories, which are proper at the close of discovery, it is entirely proper for a party to ask what facts support the contentions that were made.  "Contention interrogatories ask a party: to state what it contends; to state whether it makes a specified contention; to state all facts upon which it bases a contention; to take a position and explain or defend that position with respect to how the law applies to facts; or to state the legal or theoretical basis for a contention."  Discovery Proceedings in Federal Court § 16.04, at 283.

The Court recognizes that this is a deposition, not a contention interrogatory.  But, if the law

relating to interrogatories allows one party to disclose all the facts that support a contention, it is clear that the same question can be asked in a deposition. *See, e.g.,* Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."); Anaya v. CBS Broad., Inc., No. 06–CIV–0476, 2007 WL 2219458, at *6 (D.N.M. May 16, 2007) (unpublished) ("Requests for opinions or contentions that call for the application of law to fact—'contention interrogatories'—are proper.").

In addition, the information sought by BAQ related to facts, not mental impressions or opinions. It was not deliberative process because, as of February 13, 2013, the deliberative process privilege had not properly been invoked. Attorney Kittle's instruction was improper.

The same type of question and the same objection appear again when BAQ asked Sylvertooth what evidence existed as of February 2009 that Kyle Hazelrigg was aware of a sales manipulation issue for Adam Schaer, an alleged comparator. [Doc. 199-1, at 132.] This question, again, much like a contention interrogatory, was appropriate and well within the scope of discoverable information that the Court authorized. Kittle's instruction not to answer, based on mental impression or deliberative process, was improper.

Similarly, BAQ sought information from investigator Sylvertooth concerning evidence that Adam Schaer had engaged in sales manipulation. [Id.] Kittle stated, "If it's [the question or the evidence] during the investigation, it's his deliberative process." Kittle is mistaken. The Court authorized the bank to obtain information concerning the facts obtained during Sylvertooth's investigation. The question sought facts obtained, not the investigator's mental impressions. EEOC was making claims that Ken Patterson was aware of sales manipulation by another employee, Adam Schaer. It was perfectly appropriate for BAQ to ascertain whether there were any facts to support those contentions. Kittle's instruction to Sylvertooth not to answer was improper.

10

In attempting to ascertain the existence of evidence specific to age discrimination claims, BAQ's attorney's asked Sylvertooth:

> Q.  (By Dorwart)  Did you and Ms. Herrera ever talk about the fact that there were 11 employees over 40 who were disciplined and 12 employees under 40 who were disciplined?
>
> MS. KITTLE:  I'm going to object to that question.  It calls for internal communications, deliberative process, and the mental impressions of the employees who were having the discussion.  That is deliberative process and direct the witness not to answer.

[Id., at 142.]  This question first asks for a "yes" or "no" answer, or the existence of a fact.  Was there or was there not such a discussion?  Kittle did not allow a response and, instead, objected.  The objection was premature and the directive that Sylvertooth not answer was improper.

Dorwart also asked Sylvertooth about documents he prepared.  [*See id.*, at 148-49.]  The question appears well within the scope of authorized discovery, "They [bank] may freely obtain information concerning facts obtained by the investigators, steps taken, documents obtained, explanations concerning inconsistencies in documents . . . ."  [Doc. 114, at 12.]

In this exchange, Dorwart was trying to determine Sylvertooth's hand-written statement concerning the untimeliness of a charge.

> Q.  (By Ms. Dowart).  Do you see where you wrote -- is that your handwriting that says "untimely?"
>
> A.  Yes.
>
> Q.  Does it say untimely because the witness states that she left the bank in 2006?
>
> MS. KITTLE:  I'm going to object to the question.  You're calling for his mental impressions, that's deliberative process.  Direct the witness not to answer.

[Doc. 199-1, at 149.]

While indeed this question may have called for Sylvertooth's mental impressions, it also sought information from the investigator concerning what he did and raised the question of inconsistency, that is, whether the EEOC's charge was or was not timely filed.  If the investigator determined that the charge of discrimination was untimely because the charging party had separated from the bank in 2006, and yet the EEOC filed suit on her behalf well after the applicable time limits, it was an appropriate question.  Kittle's instruction not to answer was improper.[4]

The Court concludes that these multiple instructions not to answer were not justified; EEOC's attorney's conduct was sanctionable; EEOC interfered and obstructed the discovery process; and violated the Court's prior order which specifically authorized Sylvertooth's deposition. *See* Dabney, 73 F.3d at 267 (record supports trial court's conclusions that counsel's instructions not to answer deposition questions were unjustified and that it was not an abuse of discretion to sanction counsel).  The Court will sanction EEOC's counsel for the unjustified instructions not to answer.

**B.    James A. Snyder's ("Snyder") Deposition**

Snyder was an EEOC investigator during some of the pertinent time frame.  EEOC counsel Loretta Medina ("Medina") defended Snyder's deposition on February 13, 2013.  She instructed him not to answer 21 times.[5]

Dorwart made her best effort to reduce repetitive objections by Medina during Snyder's

---

[4]Kittle instructed deponent Sylvertooth not to answer questions at least 33 separate times.  The instructions appear on pages 17, 29, 30, 31, 37, 40, 51, 71, 77, 84, 89, 96, 97, 123, 124, 131, 132, 137, 152, 155, 158, 160, 161, 162, 165, 171, 172, 174, 180, 186, 188, 189, 190, and 191 of Sylvertooth's deposition transcript. [Doc. 199-1.]

[5]Medina's instructions to Snyder not to answer questions appear on pages 41, 42, 46, 48, 60, 62, 78, 81, 88, 112, 116, 122, 125, and 138. [Doc. 199-5.]

deposition, but to no avail.  For example, this exchange occurred near the beginning of Snyder's

deposition.

>Q. (Dorwart to Snyder) And why did you have occasion to look at the case log two months?

>MS. MEDINA: I'm going to object to the extent this asks you for any communications with the EEOC attorneys, not just me, but any EEOC attorney working on the case.  If you can answer the question without revealing attorney-client privileged communication, you may do so.

>Q.  (Dorwart) And that will be the same throughout this deposition, so that we save time.  Ms. Medina, you don't need to do that for each question.  I'm not asking for conversations with our attorneys.

>. . .

>Q. Did any personnel at the EEOC, ***outside of counsel,*** ever tell you that there was a Court order requiring you to appear for your deposition?

>MS. MEDINA: Again, do not respond with any attorney-client information.

>Q.  I don't think we need to do that all day long.  I'm being specific with my witness saying, "outside of counsel."

>MS. MEDINA: Well, the witness has a right to representation.  I'll make my objections short.

>Q. (Dorwart) Will you note every time that she instructs him not to answer based on privilege so that we have a record of that today.  Because we can have a standing instruction, I'm not asking you for information that you received from counsel communications.

[Doc. 199-5, at 19, 21] (emphasis added).  Attorney Medina's instructions are nonsensical in view

of Dorwart's clear questions and exclusion of attorney-client communications.   Medina's

instructions are obstructive and constitute impermissible coaching.  Moreover, interestingly, when

Snyder finally heard the question repeated three times, he was able to answer that a non-attorney did

tell him he was to be deposed.  But, the delay in getting to that simple answer, after a straightforward question, is inexplicable.

Medina continued to advise Snyder to answer questions without revealing attorney-client communications, regardless of how Dorwart framed the questions. [Id., at 24-25, 26.] She went so far as to advise Synder that he could answer, "but don't reveal any deliberative communications (an improper objection as already noted), thought process, or analysis.  Just keep your answer factual, please." [Id., at 39.] With comments and instructions like this, it is no wonder that the depositions took longer than probably necessary.

Additional examples of Medina's instructions to Snyder not to answer questions follow:

> Q. (Dorwart): And is this the 291 – what did you recommend as far as the outcome in the 291 Form?
>
> MS. MEDINA: I'm going to object and instruct the witness not to answer the question that asks him what he recommended as that is violating the Court's order at Docket 114 inquiring into thought processes, mental impressions, or recommendations made in the case.

[Id., at 41.] The instruction not to answer was improper.  It is not clear what privilege attorney Medina attempts to invoke.  Snyder was an investigator, and, therefore, attorney client privilege is inapplicable.  The Court already determined that the deliberative process privilege was not yet properly invoked.  Thus, it could not be raised.

Finally, in order to get a response from Snyder about this matter, Dorwart had to ask him to read the recommendation from the form into the record.  Snyder thus read that he recommended dismissal/closure of the subject charge. [Id., at 42.] Medina immediately interjected, stating she objected to "any questions about — further about the recommendation made, if any, by Snyder.  There's also lack of foundation and deliberative process objection here." [Id., at 42-43.]  The more Medina made improper objections, the more often Snyder asked if he could confer with Medina

14

before answering a question. [*See id.*, at 42, 43.]

When Dorwart again asked Snyder to read part of an exhibit into the record, attorney Medina found it objectionable. For example, after asking Snyder to read part of an exhibit into the record, Medina stated "for whatever reason, the record speaks for itself. Counsel wants you to read from the record. I'd ask you to not add anything other than to read what is on the document." [Id., at 43-44.] Dorwart stated:

> Q. Counsel, you can object to the form, but if we keep going like this, I will call Judge Garcia. This is absolutely ridiculous. I'm asking him, "Can you please read aloud the paragraph under 2 on Exhibit 393."
>
> MS. MEDINA: But, Counsel, you are also trying to get the mental impressions, thought process, and recommendations in this case, which are not allowed to get to. So I'd be happy to call Judge Garcia if you don't stop asking the questions you're supposed to ask. The questions you're supposed to ask are about investigative steps, documents, inconsistencies in documents – I don't hear you asking about any; inconsistencies – and nonprivileged information.

[Id., at 44.] Medina was mistaken. Defense counsel should have contacted the Court.

Additional examples of Medina's improper instructions to Snyder not to answer appropriate questions follow:

> Q. (Dorwart) Is it fair to say that you knew as of November 9, 2009, that Mr. Rodriguez had been placed on a probationary period?
>
> MS. MEDINA: I'm going to object and instruct the witness not to answer. Again, you're getting into thought process, mental impression, or recommendations, deliberative process, privileged.

[Id., at 46.] Defendant was asking Snyder about what he, the investigator, knew of facts at a certain point. The question was proper. None of Medina's objections have merit.

> Q. (Dorwart) What did you say to Ms. Herrera?
>
> A. I can't recall.

15

> MS. MEDINA: I'm going to instruct you not to answer if you recall any thought process, mental impressions, or recommendations.

[Id., at 48.] Snyder already answered the question. Medina's belated instruction or objection was improper.

> Q. (Dorwart) Can you tell, based upon the content of the documents, which documents came first?
>
> MS. MEDINA: And you can answer if you can answer factually without revealing any thought process, mental impressions, or recommendations.
>
> Snyder: Yes.

[Id., at 58.] It is not clear whether Medina is intentionally attempting to thwart the deposition or if there is damaging evidence that EEOC is desperately trying to keep from the light of day. Certainly, her instructions and objections give the impression that the EEOC is vigorously trying to avoid revealing certain information.

[Id., at 58.]

EEOC's obstructionist conduct continues to the point that when Snyder finally is allowed to answer, if permitted to respond at all, he apparently remembers nothing.

> Q. Prior to the charge being dismissed on November 9, 2009, did you and Mr. Sylvertooth [before Sylvertooth became an attorney] speak about Fernandez's charge?
>
> MS. MEDINA: I'm going to ask that the witness not answer that question to the extent it asks for communications that reveal mental impressions, recommendations, or processing of the charge.
>
> Q. Are you instructing the witness not to answer whether Mr. Sylvertooth and Mr. Synder spoke before the dismissal of the Fernandez charge?
>
> MS. MEDINA: I'm instructing him to not answer that question if it reveals any mental impressions, recommendations, or thought process of either investigator.

Q.  Counsel, you can object to the form, and I think you all can
reserve those issues, but this is getting a little ridiculous about, "Did
you speak to Mr. Sylvertooth before the charge was dismissed."

Q. Mr. Synder, before the charge was dismissed on November 9,
2009, did you speak to Mr. Sylvertooth about the Fernandez matter?

MS. MEDINA: Same objection.

A.  I can't recall.

[Id., at 60-61.] The same process and response are repeated just a page later. [Id., at 62.] Medina's

instructions and objections are improper and obstructive.

When asked by defense counsel what the process for reopening a dismissed charge was,

Medina interjected, stating "I'm just going to instruct you because the Title VII confidentiality

provisions not to mention any particular charging parties or respondents.  You're being asked a

question about procedure that you can answer without revealing that." [Id., at 62.] The instruction

makes no sense, and the Court cannot discern what privilege, if any, Medina attempts to assert.  The

instruction was improper.

Another example of an improper instruction not to answer is found in the following

exchange:

Q. Was there any document in the file that reflects a trend towards
terminating female employees over the age of 40?

MS. MEDINA: And I'll just instruct the witness to answer that
factually as to documents in the file without adding any mental
impressions, analysis, or recommendations to what's in the file.

Q. Counsel, it's getting old, object to the form.

MS. MEDINA: Counsel, you need to behave professionally in this
matter.  I made my objection.  It's on the record.  We can move on.

[Id., at 116.] The problem is the deposition was not moving at all due to Medina's improper

17

interruptions, during which she provide the same coaching over and over again.  The question was a proper one as well as key to the claims and defenses in the case.  Essentially, it called for a "yes" or "no" response.  But, by this point, Snyder had to again have the question re-stated, at which point, he answered that he did not see any documents that reflect that.  [Id..] There was no need for Medina's objections or instructions.

The Court finds Medina's instructions and objections caused unnecessary delay, increased the time necessary for taking deposition, added to the costs, and are sanctionable.

**C.**     **Section 30(b)(6) Deposition of Rita Byrnes Kittle**

Attorney Sylvertooth defended Kittle's deposition.  At that time, Sylvertooth acted as counsel, rather than EEOC's investigator.  The problems with Kittle's deposition are essentially twofold: (1) objections that had no merit, or that the Court deemed had no merit in previous orders, were raised again and again, and Kittle refused to answer proper questions; and (2) Kittle was not a knowledgeable or adequately prepared Rule 30(b)(6) witness.

**1.**     *Objections to Deposition Questions*

The problems BAQ raises in this portion of the motion mirror the concerns it identified in Sylvertooth's deposition.  Indeed, attorney Sylvertooth's defense of 30(b)(6) deponent Kittle fared even worse than her defense of Sylvertooth.  (*See discussion supra.*)  In the material submitted in support of the Motion for Sanctions, Defendants documented 48 instances in which Sylvertooth instructed Kittle not to answer.[6]  Those instructions were inappropriate as noted below, although to avoid endless repetition, the Court will not discuss each improper instruction.

---

[6]Sylvertooth's instructions to Kittle not to answer questions appear on pages 40, 41, 42, 43, 51, 56, 57, 58, 62, 70, 81, 83, 84, 85, 86, 87, 88, 89, 117, 138, 139, 154, 156, 161, 162, 124, 192, 210, 213, 221, 223, 239, 240, 241, 252, 255, 256, 263, 371, and 379. [Doc. 199-2.]

Dorwart noted that EEOC designated Kittle under Topic 1, "Communications between EEOC personnel and any individual listed on the EEOC's Rule 26 disclosures in this matter." [Doc. 199-2, Kittle Dep., at 55.]   It is clear that Dorwart was seeking to obtain information which investigator Sylvertooth obtained from charging party, Betty Brewer. [*See* id.]

The Court previously found [Doc. Nos. 114 and 147] that conversations between Ms. Brewer and EEOC investigator Sylvertooth were not attorney-client privileged because at the time the conversations occurred, Sylvertooth was not an attorney.  He could not give legal advice, and was functioning solely as an investigator. [*See discussion and findings in* Doc. 147.][7]

> Q.  (By Dorwart).  Ms. Kittle, would you please tell me about any conversation you and Mr. Sylvertooth have had regarding communications between Mr. Sylvertooth and Ms. Brewer.
>
> MR. SYLVERTOOTH:  I'm going to object to that on attorney-client privilege.  Instruct the witness not to answer.

[Doc. 199-2, at 55.]

---

[7]Sylvertooth did not become an attorney until later. He entered his appearance as counsel in this case in July 2012, long after working on the investigation of the charging parties' complaints.  The Court expressed concern early on that Sylvertooth's entry of appearance as counsel in a case where he was likely to be a witness, raised possible problems under New Mexico's Rules of Professional Conduct.  An attorney cannot serve as counsel in the same case where he is a witness.  Rule 16-307(A) NMRA. *See* Committee Commentary to Rule 16-307 ("Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client[;]" and "The tribunal has proper objection when the trier of fact may be confused or misled by a lawyer serving as both advocate and witness.") The Court raised such concerns before Sylvertooth's deposition, and it is now clear that his work as an investigator, and the preliminary work Sylvertooth took in this case before filing suit, makes it likely that he will be a witness.  Indeed, in the recently filed Pretrial Order [ Doc. 223], Defendants listed Sylvertooth as a witness for trial.  As the jury is required to assess the credibility of all witnesses, Sylvertooth's dual role, as trial counsel and as the investigator and now witness, places him in a professional responsibility conflict.  One would have hoped that EEOC recognized this problem on its own, or that at the very least, when the Court expressed concern, EEOC would have withdrawn Sylvertooth as counsel of record. It is disappointing that EEOC ignored this obvious conflict.  The Court will not.  Sylvertooth must withdraw as counsel promptly.  If he fails to voluntarily act, the Court will remove him as an attorney in this case.

Dorwart then sought to clarify that she was not asking for attorney-client protected information.

> Q. (By Dorwart) *Outside of the alleged attorney-client privilege*, tell me about every conversation you have had between you and Mr. Sylvertooth about communications Mr. Sylvertooth had with Ms. Brewer
>
> MR. SYLVERTOOTH: I'm going to object to that, to attorney-client privilege as well. Instruct the witness not to answer.

[Id., at 56] (emphasis added).

The problem with this instruction has been discussed repeatedly. There was no attorney-privilege at the time these conversations occurred. Therefore, Sylvertooth's instruction to the 30(b)(6) deponent not to answer violated the circuit's decision in Dabney as well as the famed American Hangar case. Just as important, the instruction violated this Court's orders. Moreover, Dorwart did her best to limit the information requested to that which was not privileged. Still, EEOC counsel gave the same unjustified instruction not to answer.

Dorwart tried again to clarify so as to obtain relevant information.

> Q. Can you tell me nothing about the communications between Mr. Sylvertooth and Ms. Brewer that is not attorney-client privileged?

[Id., at 57.] Kittle declined to testify, stating:

> I can - - I know there are notes from those conversations that would – I don't know all the facts in these files. This is not a memory test. If you want to show me the notes, I'm happy to provide what explanation I can of those. And, yes, there were communications between Sylvertooth and Brewer when he was the investigator on the charge.

[Id.] In other words, after saying there were conversations that were clearly not attorney-client privileged, Kittle professes not to be able to provide any information unless she has notes to review.

20

Q.  And what is the content of any communication between Mr. Sylvertooth and Ms. Brewer that you can testify to today as you sit here, without a note in front of you?

A.  I don't know any of the content without looking at the memos.

Q.  Tell me about any communication between you and Mr. Sylvertooth regarding communications between Mr. Sylvertooth and Ms. Morantes.

MR. SYLVERTOOTH:  I'm going to object to that on attorney-client privilege.  Instruct the witness not to answer.

[Id., at 58.]  As before, this instruction was entirely inappropriate.  The Court previously found that attorney-client privilege did not protect the discussions between any of the women and Sylvertooth during the period of time he worked as an investigator.  Attorney-client privilege was inapplicable, and the government deliberative privilege had yet to be properly invoked.  Notwithstanding the Court's two orders rejecting those claims of privilege [Doc. Nos. 114, 147], Sylvertooth still instructed Kittle not to answer, by asserting the same attorney-client privilege previously rejected.

Kittle was called to testify about the claims of discrimination EEOC was investigating.  She was asked:

Q.   What were the contents of Ms. Morantes's charge of discrimination?

A.  Oh, I don't —

MR. SYLVERTOOTH:  [object as to] form.

A.  I don't know that.  I can look at the charge and tell you what it says.

Q.  (By Dorwart).  What did Ms. Morantes communicate to the EEOC regarding her allegations of discrimination against the respondent in this matter?

A.  Well, I would need to look at the charge of discrimination to tell you that.

21

Q.  Without looking at a document, can you tell me in what way Ms. — strike that.  Without looking at a document, can you tell me what Ms. Morantes said to EEOC personnel regarding discrimination by the respondent in this case?

A.  I can't tell you that without looking at the documents.

Q.  Tell me every communication that you had with Mr. Sylvertooth regarding communications between Mr. Sylvertooth and Ms. Morantes.

MR. SYLVERTOOTH:  I'm going to object under attorney-client privilege.  Instruct the witness not to answer.

[Doc. 199-2, at 61-62.]  The questions called for factual information exchanged between Ms. Morantes and investigator Sylvertooth.  It was not privileged.  Sylvertooth engaged in this same pattern of wrongful instructions by advising Kittle 48 times not to answer based on privileges that this Court rejected.[8]  Even when Dorwart sought to limit the question by clarifying that the inquiry did not seek attorney-client information, Sylvertooth wrongfully instructed the witness not to answer.  This obstructionist behavior by EEOC and its attorney thwarted reasonable discovery.

Another problematic example is found in the following exchanges.  Dorwart asked about conversations that Kittle had with Sylvertooth just before the deposition.

Q.  (By Dorwart)  What facts did you gather from Mr. Sylvertooth?

A.  I gathered some facts about conversations he had with Ms. Brewer, and –

---

[8]EEOC has an amazing amount of chutzpah to argue that "[i]n relatively few instances, counsel for EEOC instructed the witness not to answer based on attorney-client privilege, attorney work product doctrine, the governmental deliberative process privilege, or this Court's Order . . . ." [Doc. 212, at 5.] Indeed, Sylvertooth instructed Kittle not to answer questions 48 times; Kittle instructed Sylvertooth not answer questions 33 times, and attorney Medina instructed deponent Snyder not to answer questions 21 times.  The claim that these 102+ instructions constitute "relatively few instances," requires a Coleridgian "suspension of belief."  This phrase, introduced by Samuel Taylor Coleridge in Ch. XIV of Biographia Literaria, describes a voluntary withholding of scepticism on the part of a reader to incredible events.  John A. Cuddon, A Dictionary of Literary Terms and Literary Theory, at 1044 (3d. ed. 1991).

> Q.  When –
>
> A.  Ms. Morantes, and Ms. Fernandez.
>
> Q.  And when did you speak to Mr. Sylvertooth?
>
> A.  Yesterday.

[Id., at 49-50.] To obtain the facts Sylvertooth relayed to Kittle concerning his conversations (when he acted as investigator) with Ms. Brewer, Ms. Morantes and Ms. Fernandez, Ms. Dowart asked:

> Q.  And what did Mr. Sylvertooth say to you?
>
> MR. SYLVERTOOTH:  I'm going to object to that on the same basis, attorney-client privilege.  Instruct the witness not to answer.

[Id., at 51.]  Apart from the fact that attorney-client privilege was not applicable in reference to Sylvertooth's investigative conversations with the charging parties, it is clear that Ms. Dowart asked only for the facts Sylvertooth obtained.  What did these women tell the investigator?  No privilege protects against disclosure of facts.  See Upjohn Co., 449 U.S. at 395.  Notwithstanding well established law, Sylvertooth instructed the deponent not to answer, and that instruction, as the nearly 49 other instructions wrongfully given, violates the circuit's directive in Dabney and American Hangar.

Dorwart sought to explore how BAQ could protect confidential documents that ended up in the possession of Ms. Morantes, and, ultimately, in the possession of EEOC.

> Q.  Have you and Mr. Sylvertooth discussed Ms. Polanco's possession of confidential Bank of Albuquerque clients documents?
>
> MR. SYLVERTOOTH:  I'm going to object to that on attorney-client privilege.  Instruct the witness not to answer.

[Doc. 199-2, at 88.]  This was another area the Court previously addressed and permitted BAQ to explore through discovery.  Notwithstanding the Court's authorization, Sylvertooth again improperly

instructed the witness to remain silent.

In addition, there were multiple conversations between investigator Sylvertooth and Ms. Morantes.  Ms. Dowart sought to obtain information about those calls.

> Q.  (By Dorwart).  What did Mr. Sylvertooth tell you regarding Ms. Morantes's status calls?
>
> MR. SYLVERTOOTH:  I'm going to object to that, to attorney-client privilege.  Instruct the witness not to answer.

[Id., at 85.]  This pattern repeats throughout the deposition pages submitted by BAQ.  Time after time, Sylvertooth instructs the witness not to answer, the witness complies, and, consequently, non-privileged discoverable information is denied to the examining attorney.

At times, Sylvertooth and Kittle became confused as to who should assert objections during Kittle's deposition.  For example, Dorwart asked Kittle:

> Q.  What did Scott Swanson do that you believe constitutes a sales manipulation?
>
> MR. SYLVERTOOTH:  Objection, beyond the scope.  Calls for a legal opinion.  Calls for a legal conclusion.
>
> A.  (Kittle).  That's work product.  If I have a thought on it that's in my brain, that's where it's going to stay.
>
> Q.  (Dorwart)  Are you refusing to answer the question as to what Mr. Swanson did that you believe constituted sales manipulation?
>
> A.  (Kittle) I think that's attorney work product.
>
> Q.  And are you refusing to answer the question based upon your belief that that's attorney work product?
>
> A.  (Kittle) It's attorney work product, yes.
>
> Q.  And are you therefore refusing to answer the question?
>
> MR. SYLVERTOOTH:  I'm going to object to that, asked and answered.  She – she's testifying as Ms. Kittle, not as a 30(b)(6)

designee on that topic, or on that matter.

MS. DORWART:  The Court's going to decide how she's testifying. And she was notified as to Topic 17, which is "The alleged comparators and the acts or omissions committed by each and the facts supporting the alleged disparate treatment of each comparator to the following."

MR. SYLVERTOOTH:  Yes, but that does not constitute what she believes.  As an attorney, that does not constitute what she believes. The facts, she's gave [sic] you several times today.  We've been here for six hours and 40 minutes, or 30 minutes, and you took the last hour asking the same question.  When the EEOC told you we did not prepare her on that.  That's harassing.  That's a waste of time.  You have five people in here for seven hours just because you want to waste seven hours of time.

[Id., at 354-56.]

Not only was it inappropriate for Kittle to voice her own objections to questions, Sylvertooth's explanation that Kittle was testifying as Kittle, not the Rule 30(b)(6) designee, is incomprehensible.  Moreover, Dorwart was correct.  The Court authorized discovery concerning the alleged comparators and the acts or omissions committed by each, and the facts supporting the alleged disparate treatment of each comparator.  Thus, if Scott Swanson is EEOC's comparator, it was perfectly appropriate for Dorwart to ask what Mr. Swanson did that EEOC believes constitutes a sales manipulation.

EEOC was on notice that this was an area its 30(b)(6) deponent should be prepared to discuss; and rather than present the evidence, Sylvertooth and Kittle both asserted objections, and never provided the evidence concerning what it is that Mr. Swanson did that constituted a sales manipulation such that he could be compared to one of the charging parties.  Kittle's refusal to answer was improper; Sylvertooth's directive that she not answer was wrongful.

During Kittle's deposition, a number of questions were directed to issues about inclusion of

Yolanda Fernandez as a purported class member.  In questioning Kittle, Dorwart referred to EEOC

Bates document 700632, that reads:

> A.  "Class Members:  In order to ascertain who could be considered a class member, Veronica and I went through the list to determine what females were over the age of 40.  Betty Brewer was the best candidate for the class member, as she was impacted by the individuals involved.   Yolanda Fernandez had a charge of discrimination that was dismissed as no cause.  Unfortunately, we cannot now say that she is a class member."

[Id., at 373.]  Notwithstanding this internal EEOC document noting that Yolanda Fernandez's

complaint of discrimination had been dismissed with a no cause finding and that EEOC could not

say then that she was a class member, EEOC subsequently included her in a purported class.  Not

surprisingly, Dorwart sought to examine this decision.

> Q.  What changed as to whether Ms. Fernandez could be a class member or not after this particular Exhibit 390 was prepared?
>
> MR. SYLVERTOOTH:  I'm going to object to that under the deliberative government privilege.  Instruct the witness not to answer.
>
> Q. (By Dorwart to Kittle)  Are you accepting your attorney's advice not to answer?
>
> A.  I am.
>
> Q.  And who were the individuals involved with Betty Brewer?
>
> MR. SYLVERTOOTH:  I'm going to object to the question under the governmental deliberative process as well.  Instruct the witness not to answer.
>
> Q. (By Dorwart to Kittle)  Are you accepting your attorney's advice not to answer the question?
>
> A.  I am.

[Id., at 373-74.]

Dorwart continued to try to obtain information why Yolanda Fernandez ended up as a purported class member, when EEOC already found that her claim of discrimination was dismissed for no cause.  As of August 9, 2010, Ms. Herrera concurred with investigator Sylvertooth's recommendation that Yolanda Fernandez not be included in the class because her claim of discrimination had been dismissed with no cause.  In further trying to explore why that recommendation, which was adopted by Ms. Herrera, was not followed, Dorwart again asked why Fernandez was a purported class member.  [Id., at 376.]

Sylvertooth instructed Kittle not to answer citing government deliberative privilege.  As previously noted, the Court had twice before rejected EEOC's claim of this privilege because, as of the date of the deposition, February 14, 2013, the privilege was not properly claimed.

BAQ also complains about the charade in which 30(b)(6) deponent Kittle contends that the information Sylvertooth provided to Kittle about his investigative actions (which were not privileged or protected) were now protected due to Sylvertooth's role serving as Kittle's attorney in the deposition.  As an example of this, the following exchange occurs:

> Q. [By Dorwart].  I want to talk about conversations Mr. Sylvertooth had with Ms. Herrera during the investigation of the Fernandez charge.  Has Mr. Sylvertooth told you anything about conversations that he had with Ms. Herrera during the investigation of the Fernandez charge?
>
> MR. SYLVERTOOTH:  I'm going to object on attorney-client privilege.  Instruct the witness not to answer.
>
> * * *
>
> Q.  Why is it, Ms. Kittle that you are willing to tell me about conversations that you had with Ms. Herrera, and conversation that you had with Ms. Snyder, but you're refusing to respond to questions regarding Mr. Sylvertooth, who was an EEOC investigator in this case?

27

MR. SYLVERTOOTH:  [object as to] form.

A.  He's my counsel.

[Id., at 70, 71.] BAQ counsel clearly informed Sylvertooth and Kittle this was inappropriate and that

BAQ would take up this issue with the Court. [Id., at 71.]

At this date, well after the close of discovery, BAQ is likely no closer to finding out what

evidence supports the contentions than it was at the outset of this case.  EEOC's objections during

Kittle's deposition are sanctionable.

### 2.      *EEOC's Failure to Name Appropriate Rule 30(b)(6) Representative*

Kittle's responses to basic and key inquiries raise the question of whether she was a proper

Rule 30(b)(6) designee.  As explained by the editors of the Federal Civil Rules Handbook,

> Rule 30(b)(6) allows a party to notice the deposition of a corporation,
> partnership, association, governmental agency, or other entity and to
> specify the areas of inquiry.  The named organization must then
> designate one or more representatives to testify as to the areas of
> inquiry.

Steven Baicker-McKee, William M. Janssen & John B. Corr, Federal Civil Rules Handbook, 829-

830 (2013 ed.).  The obligation of the noticing party is to specify the areas of inquiry with

reasonable particularity.  McBride v. Medicalodges, Inc., 250 F.R.D. 581, 584 (D. Kan. 2008) (for

Rule 30(b)(6) (to function properly, areas of inquiry must be designated with painstaking

specificity).

In this case, BAQ provided EEOC with the specific areas of inquiry, and EEOC selected its

deponent.  At that point, EEOC had a duty to make "a conscientious, good-faith effort to designate

a knowledgeable representative.  Federal Civil Rules Handbook, 829-830 (*citing* Ecclesiastes 9:10-

11-12, Inc. v. LMC Holding Co., 497 F.3d 1135, 1146-47 (10th Cir. 2007)). Indeed, EEOC knows

full well its obligations to provide a knowledgeable Rule 30(b)(6) deponent.  In EEOC v. Swissport

Fueling, Inc., 2012 WL 1648416, at *13 (D. Az. May 10, 2012) (unpublished), the district court

stated:

> It is clear to the Court after a review of the 30(b)(6) notice and the deposition testimony provided that Berta Echeveste was not an adequately knowledgeable or prepared witness for the areas of testimony designated in the 30(b)(6) notice.  Although she was able to provide some answers, she did not have adequate knowledge, familiarity or preparation in many of the areas of inquiry to adequately respond.

Kittle was not adequately prepared or knowledgeable for the areas designated in the Rule

30(b)(6) notice.  Time after time, she disclaimed knowledge of information without review of

specific documents.  For example, throughout the deposition, Kittle refused to answer basic

questions. Kittle contended that Sylvertooth was her attorney and that information he obtained, even

when it was factual information about his earlier investigative role and actions that he conveyed to

Kittle when acting as an investigator, was now protected by attorney-client privilege.   This

explanation defies logic.  It is interposed only to obstruct the discovery process and thwart BAQ's

rightful entitlement to discoverable information.

Kittle repeatedly declined to provide information or professed to know little more than

passing information.

> Q.  [By Dorwart]  Do you know what Ms. Brewer's allegations of discrimination against respondent are?
>
> A.  I know generally it's a hostile work environment allegation.
>
> A.  Beyond knowing generally that Ms. Brewer is alleging a hostile work environment, do you know what specific facts Ms. Brewer is alleging?

[Doc. 199-2, at 73-74.] Kittle responds in general terms based on the pleadings, but claims to have

no specific information unless she looks at notes which she does not have before her; and she

steadfastly refuses to answer questions concerning information that Sylvertooth provided in his capacity as investigator. [Id.] For example in response to Dorwart's question regarding what steps EEOC took with respect to Ms. Brewer after EEOC identified her a potential victim of discrimination, Kittle responded that she did not know without consulting written documents which she did not have before her. [Id., at 81.]

A piece of key information in this lawsuit is whether there are similarly situated comparators; that is, individuals similarly situated to the charging parties who were given preferential treatment.  This is clearly relevant, non-privileged, discoverable information.  Kittle, EEOC's designated Rule 30(b)(6) deponent, did not know much about this critical area of inquiry.

> Q.  Who does the EEOC allege is a comparator for Brewer?
>
> A.   I don't know that without looking at the documents, but the comparators are all identified in the EEOC's supplemental discovery responses that were served last week and the summary judgment responses.
>
> Q.  Who does the E – what is the comparative act the EEOC alleges for Ms. Brewer?
>
> A.  I don't know that specifically without looking at the document. That information is contained in the supplemental discovery responses and the summary judgment responses.
>
> Q.  What is the alleged act that the EEOC alleges was comparative to Ms. Morantes – Fernandez?
>
> A.   I don't know that without looking at the documents.   The information is all contained in the supplemental discovery responses and the summary judgment responses.
>
> Q.  What is the alleged act the EEOC alleges compares to the discrimination against Ms. Morantes?
>
> A.  I don't know that without looking at the documents.  That information is all contained in the supplemental discovery responses that were served last week, as well as the summary judgment

responses.

Q.  What is the alleged act that the EEOC alleges is comparative to the counseling for Morantes?

* * *

A.  I don't know that off the top of my head, without looking at the documents.  All of that information is contained in the EEOC's supplemental discovery responses that were served last week, as well as the summary judgment responses.

[Id., at 96-97.]

It is improper when responding to discovery requests to simply refer to other pleadings or other discovery responses. *See, e.g.,* Vazquez-Fernandez v. Cambridge Coll., Inc., 269 F.R.D. 150, 156 (D.P.R. 2010); Trueman v. New York State Canal Corp., 2010 WL 681341, *3 (N.D.N.Y. Feb. 24, 2010) (unpublished) ("Answers to interrogatories that incorporate other documents by reference are strongly disfavored. Reference to depositions, other answers to the interrogatories, other document production, the complaint itself, or any other documents are improper and thus unresponsive."). *See also* Trabon Eng'g Corp. v. Eaton Mfg. Co., 37 F.R.D. 51, 60 (N.D. Ohio 1964) (observing that answers to interrogatories that refer to other answers are insufficient).

Apart from Kittle not being prepared for her deposition, or at least not being forthcoming about the facts, her responses that all of this information was previously provided are false. Information often was not provided due to EEOC's obstruction, improper assertion of inapplicable claims of privilege and other obviscation.

This line of questioning continues without BAQ being able to get a single bit of information from the 30(b)(6) deponent who was to be well versed in the topics notified.  Kittle's responses by simply referring to other discovery is improper.  Indeed, in subject matter after subject matter, deponent Kittle professed "I don't know that . . ."  "The EEOC I'm sure knows that." "I'm sure it's

31

in the file."  "I'm sure I can find it in the documents."  "I don't know that off the top of my head . . . ." "I don't know that without looking at the documents."  "I would [have to] look at the complaint to see what relief is sought."  "I'm sure there are documents, that's where I would start."  "I can't tell you that."  Kittle was not aware if there was a proposed consent decree in the case but said "there may be."  She did not know "the precise answer without looking at the complaint," but she "assumed" EEOC sought injunctive relief as that was ordinarily requested.  "I don't know the specific comments made" to the charging parties, but "I believe [the facts are] in our original responses to discovery, and in the responses to summary judgment . . . ."  [Doc. 199-2, at 102, 103, 104, 105, 113, 114.]

EEOC's failure to provide a knowledgeable and adequately prepared Rule 30(b)(6) designee is sanctionable.

## BAQ's Request for Relief

BAQ observes that there is a "panoply of sanctions" that the Court might impose for EEOC's consistently egregious conduct in this case, including ordering EEOC to pay Defendants the reasonable costs and fees in bringing the motion, requiring EEOC to present an adequately prepared Rule 30(b)(6) witness at a place of Defendants' choosing, requiring EEOC to pay Defendants' travel costs related to the depositions, and/or requiring EEOC to pay one attorney's fees necessitated by the retaking of the deposition[s]. [Doc. 199, at 13, 16.]

BAQ requests, at a minimum, that the Court order EEOC to re-present its witnesses and that EEOC pay full attorneys' fees, costs, and travel costs associated with the second depositions.  BAQ also asks that it be allowed to conduct "reasonable follow up" questioning associated with EEOC's alleged efforts to thwart the deposition discovery of the EEOC, Sylvertooth, and Snyder.  BAQ lists a number of motions for which BAQ seeks reasonable fees and costs. [Doc. 199, at 17.]

**Sanctions**

As stated throughout this opinion, EEOC's counsel's objections and instructions during the three depositions of Sylvertooth, Snyder, and Kittle were wrongful, obstructive, and sanctionable. On countless occasions, EEOC counsel instructed deponents not to answer proper questions or raised wrongful objections.  In addition, EEOC did not follow up by filing a required motion for protective order after advising deponents not to answer proper questions as required by Dabney, Beller, and American Hangar.  Moreover, EEOC did not identify and present a proper Rule 30(b)(6) deponent.  Kittle either was not knowledgeable as to the areas identified or not properly prepared, or both.

The Court assesses the following sanctions on EEOC:

(1) EEOC must pay the reasonable costs and Defendants' attorneys' fees in relation to all three depositions of Sylvertooth, Snyder and Kittle, including travel expenses for defense counsel;

(2) EEOC must pay Defendants' reasonable costs and fees in preparing and filing this motion and reply;

(3) EEOC must pay for the Court Reporter's reasonable costs of re-deposing Sylvertooth and Snyder to be re-deposed;

(4) EEOC must re-designate a proper, knowledgeable Rule 30(b)(6) deponent and must pay for the court reporter's reasonable costs to conduct the re-deposition of that representative; and

(5) counsel for both parties should cooperate in re-scheduling these three depositions, but the depositions should take place no later than May 21, 2013.  The intent of the re-depositions is not to open up general discovery, but to permit Defendants to get responses and answers to reasonable and related follow-up questions, to those that EEOC did not or would not answer in earlier

33

depositions.     Within ten (10) days of entry of this Order, Defendants' counsel should provide the Court with an affidavit detailing reasonable costs and fees, related to the above sanctions.  EEOC will be afforded ten (10) days to challenge any fee request.  Once the Court considers the affidavit and response, it will issue a follow-up order, directing payment of those costs and fees to Defendants within a certain time period.

EEOC should promptly withdraw Sylvertooth as counsel of record in this case due to his status as a witness.  If EEOC does not address this matter on its own, the Court will act to remove Sylvertooth as an attorney in this case.

IT IS THEREFORE ORDERED that Defendant's motion for sanctions for failure to respond or obstruction of deposition testimony is granted as described herein.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge