# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

 vs.                                              No. CIV 11-1132 RB/LFG

BOK FINANCIAL CORPORATION
dba Bank of Albuquerque,
BANK OF ALBUQUERQUE, N.A.,
dba Bank of Albuquerque, and
BOKF, N.A., dba Bank of Albuquerque,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant BOKF, N.A.'s ("BAQ" or Defendants) Opposed Motion to Extend Deadline for Filing Further Motions Concerning Production of ESI Documents, ("Cautionary Motion to Extend" or "present motion"), filed February 28, 2013. [Doc. 191.] Plaintiff Equal Employment Opportunity Commission ("EEOC") filed a response in opposition [Doc. 206], and BAQ filed a reply [Doc. 217]. This discovery dispute[1] primarily

---

[1] In discussing this dispute, the Court utilizes definitions of terms provided by The Sedona Conference®. The Sedona Conference "is a nonprofit, 501(c)(3) research and educational institute dedicated to the advanced study of law and policy in the areas of antitrust law, complex litigation, and intellectual property rights." The Sedona Conference, The Sedona Conference, The Sedona Conference, https://thesedonaconference.org/.

concerns the format[2] in which documents were to be produced, *i.e.,* electronically stored information ("ESI").[3]  Oral argument is not necessary.

## Procedural Background

In order to fully address the present discovery dispute, the Court summarizes the following procedural background.  As early as June 2012, the parties could not agree on the format of documents that they would produce during discovery. [Doc. 14, Joint Status Report ("JSR"), at 9.] EEOC's proposal in the JSR regarding how documents should be produced states:

> All requested documents that are maintained by the party in electronic format should be produced in usable electronic format with metadata[4] preserved. The parties will discuss with respect to each production whether the preferred format for [production will be native format[5] or some other usable electronic format]. Documents

---

[2]The Sedona Conference defines the term "format" as "[t]he internal structure of a file, which defines the way it is stored and used.  Specific applications may define unique formats for their data (e.g., 'MS Word document file format').  Many files may only be viewed or printed using their originating application or an application desigend to work with compatible formats."  The Sedona Conference Glossary: *E-Discovery & Digital Information Management*, at 23. (3d ed., Sept. 2010 version).

[3]ESI is "information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy (i.e., on paper)."  The Sedona Conference Glossary, at 20.  *See also* Fed. R. Civ. P. 34(a)(1)(A) (discussing ESI).

[4]"Metadata, which is commonly described as 'data about data,' is defined as '[s]econdary data that organize, manage, and facilitate the use and understanding of primary data.' " United States v. Haymond, 672 F.3d 948, 952 n. 10 (10th Cir.), *cert. denied,* 132 S.Ct. 2789 (2012).  "Metadata can describe how, when, and by whom ESI was collected, created, accessed, modified, and how it is formatted.  Can be altered intentionally or inadvertently." The Sedona Conference Glossary, at 34.

[5]"Native format" is described in the following terms.  "Electronic documents have an associated file structure defined by the original creating application.  This file structure is referred to as the 'native format' of the document.  Because viewing or searching documents in the native format may require the original applications (for example, viewing a Microsoft Word document may require the Microsoft Word application), documents may be converted to a neutral format as part of the record acquisition or archive process.  'Static' format (often called 'imaged format'), such as TIFF or PDF, [see definitions below] are designed to retain an image of the document information to be manipulated unless agreed-upon metadata and extracted text are preserved.  In the conversion to static format, the metadata can be processed, preserved, and electronically associated with the static format file.  However, with technology advancements, tools and applications are increasingly available to allow viewing and searching of

> will be produced in separate pdf[6] files that reflect the way they are maintained in the normal course of business (i.e. that pages kept stapled or clipped together will be produced as a single pdf file.

[Doc. 14, at 12 (EEOC exceptions).] BAQ provided the following proposal:

> All requested Discovery Items should be produced in Native Format with the exception of hard copies which are discussed below. "Hard Copies" means documents which only exist in paper format. "Native Format" means electronically stored information in its original format or file type produced in the original form, content and, if applicable, software application in which the file, document, information and/or data was created, without alteration, and preserving all data related thereto. Plaintiffs' counsel had agreed during the Rule 26 Conference to scan hard copies and produce hard copies in Adobe PDF format. Likewise, Proper Defendant's counsel has agreed to scan hard copies and produce hard copies in Adobe PDF format.

[Doc. 14, at 16 (BAQ exceptions).] How this difference in language impacted the parties' subsequent discovery and production is not entirely clear.

On September 24, 2012, BAQ served on EEOC its first combined discovery requests. [Doc. 75, Ex. 1.] In the introduction of its discovery requests, BAQ stated that "All DOCUMENTS should be produced in their original Native Form and in all versions, drafts, and/or hard copy print outs thereof." [Id., at 2.] BAQ further defined "Native Form" to mean "electronically stored information in its original electronic format or file type produced in the original form, content and software application in which the file, document, information and/or data was created, without alteration, and preserving all data related thereto." [Id., at 4.]

---

documents in their native format, while still preserving pertinent metadata." The Sedona Conference Glossary, at 35.

[6]"PDF (Portable Document Format): A file format technology developed by Adobe Systems to facilitate the exchange of documents between platforms regardless of originating application by preserving the format and content." The Sedona Conference Glossary, at 39.

EEOC's responses included introductory pages setting out various objections, general and specific. But, EEOC did not appear to raise any objections to the definitions of "documents" and "native form," although it is possible that the Court overlooked such objections, due to the many general objections EEOC asserted. [Doc. 75-2, at 2-4.]

In response to certain document requests that later became the subject of BAQ's motion to compel [Doc. 75], EEOC set forth various specific objections. It does not appear from these objections that EEOC expressly challenged production of documents in native form or as defined by BAQ. [*See* Doc. 75-2, at 27-42.]

On November 27, 2012, BAQ filed the pertinent underlying motion to compel, before the discovery motion filing deadline of December 24, 2012. [Doc. 75.] After complete briefing of that motion and subsequent to the close of discovery on December 3, 2012, the Court entered an Order[7] on January 25, 2013, granting BAQ's motion in part and denying it in part. [Doc. 147.] It does not appear from the briefing of the motion to compel that either party raised arguments about what format the documents should be produced in, *i.e.,* native format or ESI.[8]

The Court's January 25, 2013 Order required EEOC to produce certain requested documents to BAQ, but that Order did not address ESI or native format as the parties did not raise that matter in the motion to compel pleadings. [Doc. 147.] In its decision, the Court, at times, required EEOC to provide all requested documents, *e.g.,* related to damage calculations, either in response to

---

[7]Rather than review the factual allegations of this litigation, the Court refers to its January 25, 2013 decision [Doc. 147] for a summary of the background.

[8]Due to the parties' many discovery disputes, pleadings, and lengthy arguments and attachments, it is possible that the Court missed references to ESI in these pleadings.

4

document requests or as information that should already have been made part of initial disclosures. [*See* Doc. 147, at 17 (discussing interrogatory answers and related documents).]

In its Order, the Court noted there was some confusion concerning the document requests as to whether the documents sought were the subject of written requests, whether they came up during deposition testimony at which point they were requested, or whether they were listed in privilege logs. [Doc. 147, at 25-26.] To the extent the Court could decipher what documents had yet to be produced, it ordered EEOC to provide them to BAQ within 10 days after entry of the January 25, 2013 Order. The Court's Order, as mentioned, did not address the format of production.

### *BAQ's Position*:

BAQ asserts that EEOC produced some of the required documents on February 7 and February 11, 2013, but that its productions did not fully satisfy the Court's Order [Doc. 147]. It appears, although it is not clear, that the dispute over ESI arose during written communications between counsel or during D'Ontae Sylvertooth's ("Sylvertooth") February 12, 2013 deposition.

During Sylvertooth's deposition, he testified that he assumed certain spreadsheets provided to him in hard copy were available in electronic form at the EEOC. [Doc. 191-5, at 88.] This may have prompted the email correspondence about ESI discussed *infra*. At the Sylvertooth deposition, defense counsel Erica Dorwart ("Dorwart") requested the electronic form of the spreadsheet, stating it should have been produced along with paper files and should have been produced in response to the original document request. She requested all versions of this particular spreadsheet. [Id., at 88-89.] Sylvertooth also testified in his deposition about documents prepared by an EEOC temp employee, Minoo Mostafavifar regarding the Morantes investigation. [Id., at 89-90.]

On February 19, 2013, Dorwart wrote to EEOC attorney Loretta Medina ("Medina"), stating that "since the entry of this Court's order and the EEOC's limited new productions, I have requested

5

documents pursuant to the Court's Order 147. The documents are particularly critical as the testimony has revealed that electronic versions with all of their metadata are, in many cases, the original documents." [Doc. 206-1.] Dorwart listed the following categories of documents that she sought immediately: all electronic versions and/or variations of the Luttrell[9] affidavit; any documents pertaining to EEOC meetings with Luttrell; all communications with Luttrell, including electronic copies of such communications; all Amicus software metadata underlying the case log, file summary, and alleged notes of conversations with witnesses; all electronic versions and/or variations of Sylvertooth Memoranda regardless of the date(s), including, but not limited to certain deposition exhibits; all electronic versions of damages spreadsheets created by Morantes and/or Marcie Rocco; all BAQ client documents that Morantes continued to hold.

Medina wrote to Dorwart the next day stating she was working with an ESI specialist to determine what responsive ESI, if any, was in EEOC's possession with respect to the first six types of information Dorwart listed. [Doc. 206-1.] The issue again came up in Medina's February 24 and 26, 2013 emails to Dorwart. On February 24, 2013, Dorwart wrote Medina asking to speak to counsel about "EEOC's production of documents and recent depositions of Sylvertooth, Snyder, and EEOC [Kittle]." [Doc. 191-1, at 6.] Medina responded to Dorwart that it was unclear what documents Dorwart wanted to discuss but "if you are speaking of EEOC's indication last week that it was working with an ESI specialist to determine what responsive ESI, if any, is in EEOC's possession[,] EEOC is continuing its efforts in this regard." [Id., at 5.] On February 26, 2013, Medina again wrote Dorwart, stating that "as EEOC has now told you three times, EEOC is actively

---

[9]Judy Luttrell was a former Vice President Regional Human Resources Manager of BAQ. [Doc. 14.] The parties have disputed in previous motions whether EEOC should have communicated with Luttrell without permission of Defendants, or outside the presence of defense counsel.

working with an ESI specialist to determine what responsive ESI, if any, is in EEOC's possession and that is responsive to any of your Rule 34 requests for production of documents." [Id., at 4.]

In the initial motion, BAQ again argued that EEOC had not fully complied with the Court's January 25, 2013 Order. In an abundance of caution, BAQ stated it was filing the present motion for extension to protect its rights should EEOC not provide all of the required documents. The initial motion asked for the Luttrell documents, including her affidavit and precursor affidavits and electronic notes of meetings between Luttrell and EEOC. BAQ also requested EEOC's electronic or AMICUS notes of communications with witnesses as testified to by Sylvertooth during his deposition. BAQ asked for electronic versions of undated spreadsheets containing comparator information that BAQ contended should have been produced pursuant to discovery requests and the Court's Order. [Doc. 191, at 3-4; Doc. 217, at 3.]

As a result of the present motion, BAQ claims that EEOC made limited efforts to comply with the Court's January 25, 2013 Order, by providing, on March 5, 2013, AMICUS software metadata underlying the case log, file summary, and alleged notes of conversations with witnesses. BAQ argues that some of the information learned from the AMICUS production was pertinent and should have been produced earlier or prior to the dispositive motion deadline. [Doc. 217, at 3 n.4.]

BAQ continued to assert that EEOC's limited production of ESI was insufficient. For example, BAQ argued that EEOC failed to produce: (1) the Microsoft Word versions or variations of the Luttrell affidavit; (2) information regarding the Sylvertooth Memorandum, dated September 25, 2009; and (3) the Microsoft Word version and/or variations of the August 9, 2010 Sylvertooth Memoranda. [Doc. 217, at 4.]

In its reply, BAQ explains some of the reasons it believes the requested ESI documents are important. Part of BAQ's position relies on its assertion that EEOC's Rule 30(b)(6) designee was

7

unable to provide relevant testimony, was uncooperative, or was not adequately prepared. The Court already issued an opinion [Doc. 226], relating to the Rule 30(b)(6) witness, and does not re-address that matter in this opinion. One of the reasons BAQ seeks electronic information about purported comparators stems from BAQ's position that EEOC was uncooperative in identifying comparators and that EEOC allegedly deliberately withheld "any form of Mustafavifar spreadsheets" under improper privilege claims.[10] BAQ argues that not only did EEOC provide a belated production of the Mustafavifar spreadsheets, but that its Rule 30(b)(6) witness was unable or unwilling to discuss the comparators at her deposition.

BAQ further asserts in its reply that EEOC "misleadingly claims that [it] produced metadata equivalent to that associated with the native form documents via a Summation database compatible load file." [Doc. 217, at 6.] BAQ created a table summarizing what it describes as EEOC's "misleading electronic production and the problems with the EEOC's electronic production." [Doc. 217, at 6-8.]

### *EEOC's Position:*

EEOC's response characterizes BAQ's motion as an "extension of the pretrial discovery motions deadline that passed on December 24, 2012." [Doc. 206, at 1.] EEOC asserts that BAQ seeks "both an unnecessary and untimely extension of time" to file discovery motions related to the production of three categories of ESI documents that EEOC previously produced in "paper or 'hard copy' format." [Id.]

---

[10]For example, BAQ states that the Excel Spreadsheet of alleged comparators is much more valuable to BAQ than a static "tiff image, based upon its ability to sort and, potentially, upon embedded versioning and track changes." [Doc. 217, at 5, n.5.]

EEOC explains that the motion was unnecessary because, on at least three occasions before filing the present motion, EEOC informed defense counsel that although EEOC did not agree that it was required to re-produce documents in electronic format, EEOC would voluntarily search[11] for the requested ESI. [Doc. 206, at 2.] EEOC further asserts that it coordinated with an ESI specialist at EEOC to provide BAQ with the responsive ESI information. According to EEOC, the production of ESI was made to BAQ by its ESI specialist on March 5, 2013. [Doc. 206, at 2, Ex. B.]

EEOC claims it provided all of the requested documents to BAQ on multiple occasions by "electronic submission, in print copy format, and now in another electronic format that allows Defendant to electronically search the documents' 'ESI,' including the dates the documents were created and authors of the documents." [Doc. 206, at 2.]

More specifically, EEOC argues that it already produced the Luttrell affidavit "at least twice," once with its original production of documents electronically served on November 6, 2012, and again, in print format with the original EEOC file produced for inspection on February 13, 2013. [Doc. 206, at 2-3.] On March 5, 2013, EEOC produced the document for a third time in an "electronic, searchable format." EEOC contends it searched its electronic data and no other versions of this document or electronic notes relating to it exist.

With respect to production of EEOC's notes of communications with witnesses, or notes taken by Sylvertooth and stored electronically using AMICUS software, EEOC states it produced all of Sylvertooth's notes of witness interviews or witness contacts with EEOC's original responses to document requests in early November 2012. The same interview notes were made available a

---

[11]While EEOC characterizes its search for ESI as voluntary, based on the original document requests and EEOC's failure to object, the ESI should have been produced without any further motion practice. *See also* Fed. R. Civ. P. 34(a) (allowing party to request ESI).

second time for inspection and copying consistent with the Court's Order.  EEOC produced the documents a third time on March 5, 2013, when it produced them directly from the AMICUS program in electronic format.

Regarding the comparator spreadsheet, EEOC asserts that it produced the spreadsheet in hard copy format and provided it again on March 5, 2013, in a searchable electronic format. [Doc. 206, at 3.] With respect to BAQ's intent to search the three categories of documents for dates of creation and modification, EEOC states that the March 5, 2013 production was fully searchable for such dates and modification. [Id.]

### Discussion

**I.  TIMELINESS OF BAQ'S MOTION**

The Court does not find BAQ's motion to be untimely although it was filed after the motion filing deadline.  BAQ was following up to ensure that all documents were produced in accordance with the Court's January 25, 2013 Order.  Or, perhaps more accurately (since the Court's Order did not specifically require production of ESI), BAQ was following up on requests it made for ESI data during Sylvertooth's deposition and in response to Medina's promises to look into the existence of ESI that was responsive to the original document requests.  In addition, the Court observes that it was through no fault of BAQ that Sylvertooth's deposition (during which testimony about ESI came up) did not occur until February 2013.  Early on, well before discovery closed, BAQ sought to take Sylvertooth's deposition, but EEOC filed a baseless motion for protective order in October 2012. [Doc. Nos. 49, 114.] The depositions should have occurred as early as November 2012.

The Court rejects any argument by EEOC that BAQ seeks an untimely extension of time to file a discovery motion.  Moreover, EEOC's argument that BAQ is attempting to obtain ESI that it previously had not requested is unpersuasive.  Clearly, the document requests defined what BAQ

sought for production. EEOC did not object as to format in its responses. Medina agreed to provide ESI information as late as February 2013. To the extent that EEOC had responsive information in native format or in ESI, it should have been produced long ago. EEOC's belated communications with its ESI specialist, as late as February 2013, are inexplicable.

## II.    REQUIRED PRODUCTION

The Court does not require EEOC to produce any documents in the same formats it already provided to BAQ, nor does it require EEOC to produce what it does not have.

However, EEOC must make the following productions to BAQ within fifteen (15) days after entry of this Order, to the extent that such material exists, is available from EEOC's ESI specialist,[12] and/or was not been produced previously. If the information is not available, EEOC is required to provide certain written explanations to BAQ as described below. Once the complete production or information is provided, EEOC should file a certificate of service with the Court confirming the production.

1. Email between Sylvertooth and Mustafavifar (ESI000001), with metadata containing dates and indications, if any, as to associated attachments and text/body of email.

2. Luttrell Affidavit (ESI000003-ESI000004), original native file with its inherent information. If nothing other than a tiff[13] of the affidavit exists, EEOC should sign and certify this to be true.

3. Luttrell Affidavit (ESI000005-ESI000008), all related ESI or native format concerning this affidavit. If nothing other than the tiff or PDF exists, EEOC should sign and certify this to be true.

---

[12] While the Court might have earlier entertained an objection by EEOC that production of ESI was unduly burdensome had EEOC properly supported the objection, EEOC never raised that objection in response to the original document requests.

[13] "Tagged Image File Format (TIFF) is [a] widely used and supported graphic file format[ ] for storing bit-mapped images, with many different compression formats and resolutions." Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 161 n. 2 (3d Cir.) (internal citation omitted), *cert. denied,* 133 S.Ct. 233 (2012).

4. <u>Minoo Mustafavifar Spreadsheets</u> (ESI000009-ESI000032), any withheld or existing Excel worksheet/template (OLE) file. If nothing other than the tiff or photocopy of a paper file exists, EEOC should sign and certify this to be true.

5. <u>August 9, 2010 Sylvertooth Memorandum</u> (ESI000033-ESI000038), any withheld or existing MS Word document with all its inherent metadata. If nothing other than the previously produced printout of a Word document exists, EEOC should sign and certify this to be true.

6. <u>September 9, 2010 Sylvertooth Memorandum</u> (no data provided), original native file or MS Word document with its inherent metadata. If none exists, EEOC should sign and certify this to be true.

7. With respect to the above six documents or communications, EEOC should produce all related electronic documents and underlying metadata, including track changes, versioning, various authors, dates documents were modified, transmitted, and/or saved, unless to do so would violate a privilege that the Court already recognized.

8. To the extent that EEOC does not produce any native format documents, original Word documents and inherent metadata, or ESI in relation to the above six documents, EEOC should state why such information is withheld.

## Conclusion

The Court grants BAQ's motion in part, as described herein. The Court declines to sanction EEOC. The Court acknowledges BAQ's argument that it was prejudiced by EEOC's late production of certain ESI and that it did not have that information before its motion filing deadline. However, to the extent that the information was pertinent to BAQ's summary judgment motions, the only possible remedy is to seek appropriate relief from the District Judge, perhaps in the form of supplemental briefing or affidavits.

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge