# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,**

      **Plaintiff,**

**vs.**                                       **No. CIV 11-1132 RB/LFG**

**BOK FINANCIAL CORPORATION d/b/a
BANK OF ALBUQUERQUE;**

**BANK OF ALBUQUERQUE, NATIONAL
ASSOCIATION d/b/a BANK OF
ALBUQUERQUE; and**

**BOKF, NA d/b/a BANK OF ALBUQUERQUE,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

The Equal Employment Opportunity Commission (EEOC) brought this matter on behalf of Elizabeth Morantes, Yolanda Fernandez, and Betty Brewer, who worked as managers at four Bank of Albuquerque branches in Albuquerque and Rio Rancho, New Mexico. The EEOC alleges that Defendants[1] terminated the employment of Morantes and Fernandez and disciplined Brewer because of their age, gender, and age plus gender in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 626(b), (ADEA) and Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-5(f), (Title VII). The EEOC seeks injunctive relief, back pay, prejudgment

---

[1] Defendants contend that BOK Financial Corporation is an improper party. (Doc. 124 n.1). However, the EEOC named BOK Financial Corporation in the Amended Complaint. (Doc. 181). Therefore, BOK Financial Corporation is a proper party.

interest, compensatory damages, and punitive damages on behalf of the women.  (Doc. 181).

Defendants have moved for summary judgment on the claims brought on behalf of Morantes.

(Doc. 122).

## I.    Standard.

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED.

R. CIV. P. 56(a).  In cases where the moving party will not bear the burden of persuasion at trial,

it bears the initial responsibility of identifying an absence of evidence to support the non-moving

party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "If the movant meets this

initial burden, the burden then shifts to the nonmovant to 'set forth specific facts' from which a

rational trier of fact could find for the nonmovant."  *Libertarian Party of N.M. v. Herrera*, 506

F.3d 1303, 1309 (10th Cir. 2007) (quoting FED. R. CIV. P. 56(e) (2007 version)).  When applying

this standard, the court examines the record and makes all reasonable inferences in the light most

favorable to the non-moving party.  *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th

Cir. 2013).

## II.    Statement of Facts

On summary judgment, the Court must view the facts in a light most favorable to the

EEOC, the non-moving party.  *See Taylor*, 713 F.3d at 34.  Thus, reasonable inferences are

drawn and factual ambiguities are resolved in its favor.

Elizabeth Morantes was born in 1959 and has worked in the banking industry since 1981.

(Doc. 165-1, Deposition of Elizabeth Morantes at 32).  From 2001 until April 2008, Morantes

was the Branch Manager at Defendants' Juan Tabo branch in Albuquerque, New Mexico.

(Morantes Dep. at 35).  Morantes regularly exceeded the expectations of her supervisor, Mark

Sauters, and she received multiple awards for outstanding sales and service.  (Doc. 165-3,

Deposition of Mark Sauters at 135; 145; 165).  Morantes was very meticulous about her

documentation and she "did things by the book and was very serious about her position." (Doc.

165-5, Affidavit of Judy Luttrell).

Morantes's duties as Branch Manager included generating new business for the bank.

(Morantes Dep. at 98-99).  In July 2007, Morantes attended an "on site" meeting of the Young

American Football League ("YAFL") to solicit new accounts.  (*Id.*)  Teller Supervisor Cody

Gallegos-Polanco attended the 2007 YAFL on-site with Morantes and received teller referral

credits for the accounts she established and referred to Morantes.  (Morantes Dep. at 102;

Polanco Dep. at 65-66).  Prior to the on-site, Morantes wrote her branch information and "no

record" on signature card forms to facilitate the account-opening process.  (Morantes Dep. at

148).  Morantes had attended YAFL on-sites in 2005 and 2006 with tellers from her branch using

pre-filled forms without incident.  (*Id.* at 98-99).  During the July 2007 YAFL on-site, one of the

YAFL teams received a decline notification which required additional approval prior to opening

the checking account.  (*Id.* at 145, 149).  Morantes called Branch Operations Manager Shanna

Collotzi at approximately 7:00 p.m. the night of the YAFL on-site, and obtained authority to

open the account.  (*Id.*)

On January 30, 2008, Defendants issued a written reprimand to Morantes for: (a) opening

an account without obtaining proper regional authority during the July 2007 YAFL on-site; (b)

using pre-filled signature cards to open accounts at the 2007 YAFL on-site; and (c) giving Polanco teller referral credits for attending the 2007 YAFL on-site. (Morantes Dep. 148-49; Doc. 122-12, at 1). Morantes challenged the disciplinary action. (Morantes Declaration at ¶ 16). When questioned, Collotzi denied authorizing the declined account and insisted that Morantes had lied about placing a call to her. (Morantes Decl. at ¶ 18; Doc. 122-16, Sauters Dep. at 177). Morantes obtained phone records that proved that she had placed a call to Collotzi for one minute and fifteen seconds on July 13, 2007, at 7:12 p.m. (Morantes Decl. at ¶ 18; Sauters Dep. at 177-79). Sauters requested that the disciplinary action be removed from Morantes's file, but Defendants' senior management refused. (Sauters Dep. at 179).

Defendants' Manager of Consumer Banking Operations Pat Piper chastised Sauters for backing Morantes and scrutinized Morantes. (*Id.* at 179; Doc. 165-7 Deposition of Kyle Hazelrigg at 185-86). Branch Operations Manager Kyle Hazelrigg, Piper's "right hand man," focused on a note Morantes wrote about a call she placed to YAFL customer Susan McEntee on October 9, 2007. (Sauters Dep. at 133; Affidavit of Susan McEntee at ¶ 6). During the conversation, Morantes reminded McEntee that if she was going to close the account after the YAFL season ended that McEntee should wait until December 15, 2007, when financial records were due to YAFL. (*Id.*). Defendants' senior management interpreted this statement to mean that Morantes was coaching McEntee to keep the account open for the four months required so that Morantes could earn sales points for the account. (Hazelrigg Dep. at 185-86).

On April 10, 2008, Sauters and Defendants' Regional Service Manager Geri Weeks met with Morantes to discuss the October, 2007 call. (Morantes Dep. at 123, 125-26; Weeks Dep. at

144- 45.)  Morantes was unable to recall what the comment meant and asked Sauters to contact McEntee.  (Morantes Dep. at 136; Morantes Decl. at ¶23).  Sauters refused.  (Morantes Dep. at 136; Morantes Decl. at ¶23).  Consumer Branch Delivery Manager Jill Hall and Hazelrigg instructed Sauters to terminate Morantes.  (Sauters Dep. at 146-47).

On April 10, 2008, Defendants terminated Morantes's employment for allegedly violating the sales manipulation policy by requesting a client to keep her account open for a date certain in order to obtain sales points.  (Doc. 122-13).  After Morantes's termination, Defendants replaced her with Adam Schaer, a male under the age of forty.  (Hazelrigg Dep. at 209).

Morantes was allegedly terminated for violating Defendants' "zero tolerance" sales manipulation policy, which purportedly required the immediate termination of any employee who manipulated the system with intent to gain financially.  (Doc. 122-13; Doc. 124-14; Doc. 165-13, Deposition of Jill Hall at 74; Hazelrigg Dep. at 159).  However, the sales tracking guidelines "changed so often" that employees sometimes only knew what constituted a violation of the policy by learning that an employee had been terminated.  (Doc. 165-14, Deposition of Yolanda Fernandez at 197).  Defendants' zero tolerance policy was "subject to interpretation" and "depend[ed] on who's looking at what."  (Doc. 165-2, Weeks Dep. at 114).  Defendants had one set of rules for one group of employees and another set of rules for another group.  (*Id*. at 196).

After Morantes was terminated, Polanco compiled a folder containing examples of sales manipulation committed by Schaer, Morantes's younger male replacement.  (Polanco Dep. at 14).  In February 2009, Polanco gave the folder to Weeks.  (Polanco Dep. at 17-18, 186-87).  Polanco informed Weeks that Schaer opened accounts for clients who did not want them, and kept

accounts open to receive sales points, which were violations of the "zero tolerance"policy.
(Polanco Dep. at 17-18; Weeks Dep. at 94-95).  After Weeks took no action, Polanco reported
Schaer's sales manipulation to Sauters.  (Polanco Dep. at 14, 18-19; Sauters Dep. at 235-36).

On June 4, 2009, Sauters issued a written warning to Schaer for failing to obtain proper
identification and not for sales manipulation.  (Doc. 165-21, at 2).  On September 9, 2009, Schaer
was terminated for failing to obtain proper identification.  (*Id.* at 203-04; Ex. 22).  According to
Sauters, Schaer was terminated because Defendants' senior management was trying to cover their
tracks in the wake of the EEOC's administrative finding regarding Morantes.  (Sauters Dep. at
245-50).  Schaer was not terminated for sales manipulation, even though he had violated the
"zero tolerance" policy.  (Polanco Dep. at 19; Ex. 21).

Defendants treated other male branch managers more leniently than Morantes for alleged
sales manipulation offenses.  In July 2009, Collotzi accused Branch Manager Nathan Lopez of
sales manipulation.  (Doc. 165-23).  Lopez was not disciplined. (Doc. 165-24).  Branch Manager
Dustin Holmberg was placed on ninety days probation, and not terminated, for sales manipulation
and unethical sales practices resulting in a monetary gain. (Doc. 165-25).  Branch Manager Chris
Lasco was terminated on September 6, 2006 for sales manipulation after he was reported for
sales manipulation numerous times.  (Doc. 165-15; Sauters Dep. 162-64).  Branch Manager Nick
Hilton opened an account to meet his monthly sales goals and received a verbal warning.  (Doc.
165-16).  Branch Manager Victor Lopez received a written notice for transferring sales points to
another employee.  (Doc. 165-18).  Branch Manager Michael Ball was placed on ninety days
probation, but not terminated, for manipulating the system to receive sales points.  (Doc. 165-

19).  Additionally, Defendants' Human Resources Specialist Judy Luttrell observed that "[m]ost of the older females, management and non-management, were terminated for perceived performance issues."  (Doc. 165-5, Affidavit of Judy Luttrell).

## III.    Discussion

Title VII makes it unlawful for an employer to discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment on the basis of sex.  *See* 42 U.S.C. § 2000e-2(a)(1).  The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a).  The Supreme Court has held that this language in the ADEA requires that "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."  *Gross v. FBI Fin. Servs., Inc.,* 557 U.S. 167, 176 (2009).  A Title VII "sex plus" discrimination claim alleges that the plaintiff was subjected to disparate treatment based on her sex considered in conjunction with another characteristic.  *See e.g. Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1416 (10th Cir. 1987) (considering sex plus race in a hostile work environment case).  Courts have recognized that a plaintiff's discrimination claims may not be defeated on a motion for summary judgment based merely on the fact that certain members of a protected class are not subject to discrimination, while another subset is discriminated against.  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 109-10 (2d Cir. 2010); *see also Jefferies v. Harris County Cmty. Action Ass'n,* 615 F.2d 1025, 1034 (5th Cir. 1980) (explaining the history of "plus" claims and recognizing a claim for discrimination against black females).

7

When a plaintiff seeks to establish a case of discrimination using circumstantial evidence, the claims are analyzed under the three-step burden-shifting framework delineated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Simmons v. Sykes Enters., Inc.,* 647 F.3d 943, 947 (10th Cir. 2011). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802-04; *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 979 (10th Cir. 2008); *Jones v. Okla. City Pub. Schls.*, 617 F.3d 1273, 1278 (10th Cir. 2010) (holding that although *Gross* created some uncertainty regarding burden-shifting under the ADEA, it does not preclude the application of the *McDonnell Douglas* framework to ADEA claims). If the plaintiff meets this burden, the burden of production then shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment action. *McDonnell Douglas,* 617 F.3d at 802-03. If the defendant meets its burden of production by offering a legitimate rationale in support of its action, the burden shifts back again to the plaintiff to show that the defendant's proffered reason was a pretext for discrimination or retaliation. *Id.* at 804. In that the EEOC relies on circumstantial evidence with respect to Morantes's discriminatory treatment claims, her claims are subject to the *McDonnell Douglas* framework.

In order to establish a prima facie case of disparate treatment within this framework, the EEOC must show that (1) Morantes belongs to the protected classes; (2) she suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (citing *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005) (discussing elements

of the prima facie case)).  The first two elements are satisfied.  As a female over the age of forty years, Morantes belongs to the protected classes.  The second element is met as termination qualifies an adverse employment action.

With respect to the third element, Defendants argue that the EEOC must establish that Morantes was treated less favorably than other employees outside the protected classes.  However, this argument is inconsistent with Tenth Circuit case law.  In cases involving adverse action attributed to alleged misconduct or substandard performance, the Tenth Circuit defines the relevant element broadly to require a showing of "circumstances giving rise to an inference of discrimination."  *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004); *see Plotke*, 405 F.3d at 1101; *Hysten v. Burlington N. & Santa Fe Ry. Co.,* 296 F.3d 1177, 1181 (10th Cir. 2002); *Jones v. Denver Post Corp.,* 203 F.3d 748, 753 (10th Cir. 2000).  "While this broader requirement may be (and often is) satisfied by proof that the employer treated similarly situated employees more favorably, such proof is just one sufficient means to do this and should not itself be mistaken as an indispensable element of the prima facie case."  *Sorbo*, 432 F.3d at 1173.  Thus, the EEOC need not present evidence that Morantes was treated less favorably than others outside of the protected classes (i.e., males and persons younger than forty years of age) to establish a prima facie case.  *Id.*

The evidence of record that Morantes did not receive the counseling and probation given to male branch managers suspected of sales manipulation supports the EEOC's contention that she was treated differently than younger male branch managers.  The fact that Defendants suspected  Morantes engaged in sales manipulation is not a valid factor to negate the prima facie

9

case.  At the prima facie stage, "a plaintiff is only required to raise an inference of discrimination, not dispel the non-discriminatory reasons subsequently proffered by the defendant."  *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000).  The burden "is one of production, not persuasion; it can involve no credibility assessment."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000); *see also Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1469-70 (10th Cir. 1992) (stating that "the employer's reasons for the adverse action are not appropriately brought as a challenge to the sufficiency of the plaintiff's prima facie case") (alteration and internal quotation marks omitted).  It bears underscoring that a plaintiff's burden of establishing a prima facie case is not onerous.  *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).  Indeed, the Tenth Circuit has described the burden of articulating a prima facie case as "slight."  *Orr v. City of Albuquerque*, 417 F.3d 1144,1149 (10th Cir. 2005).  Taken together and construed in the light most favorable to Morantes, the facts of record create an inference that Defendants discriminated against Morantes based on her age, sex, and age plus sex.  *See Plotke*, 405 F.3d at 1100.  The EEOC has submitted evidence sufficient to establish a prima facie case of discrimination.

Once a plaintiff meets its burden of demonstrating a prima facie case of discrimination or retaliation, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment actions.  *McDonnell Douglas*, 411 U.S. at 802-804; *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003).  The employer's burden, however, is merely one of production.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  The employer "need not persuade the court that it was actually motivated by the

proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* Defendants have submitted evidence that they had a non-discriminatory reason for their actions; they suspected Morantes had engaged in sales manipulation. Defendants have satisfied their production burden of advancing a facially non-discriminatory reason for terminating Morantes.

After a defendant satisfies its burden of production to articulate a legitimate, non-discriminatory reason for the adverse actions, the burden shifts back to the plaintiff to show that the employer's proffered reasons are pretextual. *McDonnell Douglas*, 411 U.S. at 804. "A plaintiff can show pretext by revealing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable fact finder could rationally find them unworthy of credence." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002). The EEOC submitted evidence that similarly situated employees outside the protected classes received more favorable treatment than Morantes. The "zero tolerance" policy was applied selectively. Such inconsistencies support a finding of pretext. *See Kendrick*, 220 F.3d at 1230. The EEOC has produced sufficient evidence to show pretext with respect to the gender discrimination claims brought on behalf of Morantes. Additionally, the facts, construed in Morantes's favor, are sufficient to meet her burden of showing a triable issue as to whether her age was a "but for" cause of her termination for purposes of the ADEA. Under these circumstances, all of the claims brought on behalf of Morantes survive summary judgment.

11

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Partial Summary Adjudication on Claims

Brought at the Behest of Morantes (Doc. 122) is **DENIED**.


_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**