```
 1   profited from that activity and consistently we
 2   terminated folks who profited from those
 3   activities.
 4              (Exhibit 307 marked for identification).
 5       Q.     (BY MS. DORWART)  I'm going to hand you
 6   what I'm going to mark as Defendant's Exhibit 307.
 7   Does this appear to be a true and accurate copy of
 8   an e-mail from your e-mail at Bank of
 9   Albuquerque --
10       A.     Yes.
11       Q.     -- Bank of Oklahoma?  If you could read
12   the first paragraph.
13       A.     "Mark, Geri and I discussed the issues
14   Saturday morning and I understand you discussed
15   this with Geri late last week.  I disagree with
16   your decision to remove the disciplinary action
17   from the record and believe we're missing the point
18   of the wrongdoing on Liz' part.  Although, not --
19   not -- although, not appropriately documenting
20   Qualifile decisions was part of the problem with
21   these transactions, it was just a piece of the
22   issue.  Allowing a teller to accompany Liz on the
23   calls and then permitting the teller to track
24   referrals for this process was the most egregious
25   problem with Liz' behavior and sales leadership.
```

245:5-246:2 - Fed. R. Evid. 801-802 as the email is hearsay and hearsay within hearsay. Lack foundation for use to refresh recollection or have read into evidence under Fed. R. 803(5)(c).

Exhibit 12

```
 1   Not to mention that a number of these accounts did
 2   not meet the goal of being good for the bank."
 3       Q.    What were you trying to say?  What does
 4   that mean, a number of these accounts did not meet
 5   the goal of being good for the bank?
 6       A.    That these were not accounts that were
 7   going to lead to profitability for the bank and
 8   they did not meet the litmus test of those type of
 9   accounts that we reward sales points for.
10       Q.    And were those actually accounts that were
11   free checking?
12       A.    To my recollection, they were.
13       Q.    So who's the only person who profited from
14   the opening of those YAFL accounts?
15       A.    Liz Morantes.
16             MR. SYLVERTOOTH:  Form.
17       A.    And, well, didn't the teller profit too
18   from the standpoint of the fact that they got the
19   referral credit?
20             MR. SYLVERTOOTH:  Form.
21       Q.    (BY MS. DORWART)  Could you read the
22   second paragraph in that e-mail?
23       A.    "In regards to the claim that Liz
24   contacted Shanna for the Qualifile approval and
25   received a verbal approval, I would like to make a
```

Annotations:
- 246:10-11 - Fed. R. Evid. 611(c)-improper leading.
- 246:13-14 and 17-19: Fed. R. Evid. 611(c) improper leading and Argumentative.
- 246:21-247:10 Foundation and improperly reading from an exhibit that the foundation has not been laid for admission. Fed. R. Evid. 801-802.

**Professional Reporters**
800.376.1006
www.proreporters.com

```
 1   couple of points.  Clearly, a record that a call
 2   was made does not provide proof of what was
 3   discussed or decided.  Shanna has said all along
 4   that she does not recall the conversation.  If Liz
 5   was diligent in regards to the approval she should
 6   have requested the approval via e-mail.  The
 7   'pressure,' that was applied to discipline Liz was
 8   for the entirety of the issues surrounding the
 9   process of the opening of the -- opening the
10   accounts in question."
11        Q.   Does it appear, based on that e-mail, that
12   one of the problems with the Qualifile was not
13   utilizing e-mail to request the approval?
14        A.   Yes.
15             MR. SYLVERTOOTH:  Form.
16        Q.   (BY MS. DORWART)  And what did you mean by
17   the -- the pressure that was applied to Liz?
18        A.   I believe he mentions that in his e-mail.
19   Let me look.  I believe -- I'm reading from Mark's
20   e-mail to Geri, the last paragraph, start the last
21   sentence starting on this page.  "I believe Kyle
22   and Pat were involved and with Shanna's concurrence
23   pressured you to have me complete the write-up."
24        Q.   So it's fair to say that Mr. Sauters did
25   not draft that write-up; correct?
```

Annotations:
- 248:11-14 - Fed. R. Evid. 611(c) - Improper Leading.
- 248:16-23 - Answer contains hearsay - Fed. R. Evid. 801-802.